```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   --------------------------------X
                                     :
 4   UNITED STATES OF AMERICA,       :
                                     :   18-CR-00204 (NGG)
 5                                   :
             v.                      :   225 Cadman Plaza East
 6                                   :   Brooklyn, New York
     KATHY RUSSELL,                  :
 7                                   :   August 17, 2018
                  Defendant.         :
 8   --------------------------------X

 9
              TRANSCRIPT OF CRIMINAL CAUSE FOR BOND HEARING
10               BEFORE THE HONORABLE LOIS BLOOM
                    UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Government:        MOIRA KIM PENZA, ESQ.
13                              TANYA HAJJAR, ESQ.
                                U.S. Attorneys Office, EDNY
14                              271 Cadman Plaza East
                                Brooklyn, New York 11201
15

16   For the Defendant:        AMANDA RAVICH, ESQ.
                                Sher Tremonte, LLP
17                              90 Broad Street
                                23rd Floor
18                              New York, New York 10004

19

20   Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
                                Typewrite Word Processing Service
21                              211 North Milton Road
                                Saratoga Springs, New York 12866
22

23

24

25


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
```

2

1  (Proceedings began at 12:20 p.m.)

2          THE CLERK:  Okay.  So we have a Criminal Cause for a

3  Bond Signing.  It's 18-CR-204, <u>United States v. Kathy Russell</u>,

4  who is appearing via telephone.

5          And please state your name for the record, counsel.

6          MS. PENZA:  Moira Kim Penza and Tonya Hajjar for the

7  United States.  Good afternoon, Your Honor.

8          MR. RAVICH:  Amanda Ravich for Kathy Russell.

9          THE COURT:  Good afternoon, Ms. Russell.  This is

10  Magistrate Judge Bloom.  Ms. Russell?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  This is Magistrate Judge Bloom.  Can

13  you hear me?

14          THE DEFENDANT:  Yes, sir.  Yes, I can.

15          THE COURT:  I'm a woman, so just say Judge, okay?

16          THE DEFENDANT:  Okay, Judge.

17          THE COURT:  Thank you.  Ms. Russell, the purpose of

18  today's proceeding is to supplement the bond that had

19  originally been entered in the Northern District of New York

20  and I have before me your attorney who has just recently

21  signed on the case and the Government is agreeing to these

22  separate conditions.  So I need to go over what these

23  conditions are.

24          It's a $150,000 bond which will be signed by a

25  friend of yours.  His name is Eric Mumford.  How do you know

3

1  Eric Mumford?

2          THE DEFENDANT:  He's been a good friend of mine for

3  over ten years.

4          THE COURT:  How do you know him?

5          THE DEFENDANT:  How do I know him?

6          THE COURT:  Yes.

7          THE DEFENDANT:  I met him about ten years ago with a

8  company that I worked with at one time.

9          THE COURT:  So that was before you worked with

10  NXIVM?

11          THE DEFENDANT:  No, it was during where I worked

12  with NXIVM.

13          THE COURT:  So was he somebody who was involved in

14  NXIVM?

15          THE DEFENDANT:  Not really, Your Honor.  He has come

16  and gone.  Mainly our interactions have been more on science

17  and so we developed our friendship, you know, from things like

18  that.

19          THE COURT:  There was a condition that Judge

20  Garaufis imposed which will prohibit you from working for any

21  entities associated with NXIVM, including the estate of Pamela

22  Cafritz.  Is Mr. Mumford involved in any ongoing way with

23  NXIVM or the estate of Pamela Cafritz?

24          THE DEFENDANT:  No, he is not.

25          THE COURT:  And the other requirements of the bond

4

1   are that you must remain in -- this bond is really confusing.

2   It's the Northern District and for attorney visits and court

3   purpose between the Eastern and Southern -- why don't we say

4   New York State and make our lives easier?

5            MS. PENZA:  Because, Your Honor, we don't believe

6   she should be permitted in the Western District of New York

7   and she should only be permitted in the Eastern and Southern

8   Districts for the purposes of court appearances or attorney

9   visits.  So we did not want to make it a blanket allowance for

10  her to be within New York State.

11           THE COURT:  And she shall avoid all contact with any

12  current or former employees or independent contractors for

13  NXIVM including any and all affiliated entities which also

14  means anybody associated with the estate of Pamela Cafritz.

15  Is that correct, Ms. Penza?

16           MS. PENZA:  Yes, Your Honor.  And there's also an

17  asterisk.  In addition, she is to avoid contact with any

18  individual who is currently or who is formerly on the stripe

19  path subject to reasonable exceptions agreed upon by the

20  parties.  The stripe path is a term with which Ms. Russell is

21  familiar.  We've consulted with defense counsel about that.

22  That was one of the ranking systems within NXIVM and we've

23  used that as a proxy for people who had substantial ongoing

24  involvement with NXIVM.

25           THE COURT:  Ms. Russell, do you understand that

5

1   condition?

2           THE DEFENDANT:  Yes, Judge, I do.

3           THE COURT:  And you've gone over that condition with

4   your client?

5           MR. RAVICH:  I have and the Government and I have

6   agreed that certain exceptions will apply to which we both

7   agree that are reasonable.

8           THE COURT:  Have you sat down with Ms. Russell and

9   gone over those exceptions?

10          MR. RAVICH:  Not in person -- oh, we have not

11  hashed -- the Government and Kathy --

12          THE COURT:  If I don't know what something means

13  it's going to be hard for me to enforce a bond.

14          MS. PENZA:  Your Honor, let me be very clear.  The

15  Government has -- the Government's understanding with defense

16  counsel is right now the only exceptions that apply are

17  Ms. Russell's two sureters:  Mr. Mumford, who will be signing

18  this bond, and Ms. Abney, who is signing a bond up in the

19  Northern District of New York, both of whom have had

20  connections to NXIVM.

21          THE COURT:  Why are they both on this bond because I

22  only have Mumford's name?

23          MS. PENZA:  Ms. Abney is not signing this bond.  She

24  is signing this -- she is remaining on the separate bond and

25  that has been agreed upon in the Northern District of New

6

1   York.  She has secured $25,000.  She is unwilling to provide

2   any more.  The Government has also not had the opportunity to

3   interview her, but the Government is satisfied at the $150,000

4   bond here with the understanding that there is also $25,000

5   secured separately against Ms. Abney.

6           THE COURT:  Ms. Penza, I'm not trying to say that

7   you're incorrect, but I've never had a bond in one court and a

8   different bond in a different court.  Usually it's like

9   amending a pleading that one subsumes the other.  How is it

10  that I'm supposed to know looking at this bond that there is a

11  separate bond in the Northern District of New York that's

12  still in force and effect?

13          MS. PENZA:  I don't believe that it's -- so my

14  understanding -- and to be completely candid, I did understand

15  this to have been something that defense counsel had discussed

16  in general with the clerks of the court as something that is

17  possible.

18          THE COURT:  They're not who signs the bond.  The

19  clerks of the court do not sign the bond.  I am the proxy for

20  Judge Garaufis today.  Judge Garaufis has done every other

21  order in this case.  I am not going to go outside of my

22  comfort zone because a Northern District clerk or an Eastern

23  District clerk told you something was possible.  You don't

24  have a name.  They're not lawyers.  They're certainly not

25  judicial officers.

1          MS. PENZA:  Your Honor, can I just make clear that

2    the Northern District bond was entered in the Eastern

3    District, so it's --

4          THE COURT:  No, it wasn't.  It was entered?

5          MS. PENZA:  Well, Judge Garaufis --

6          THE COURT:  He upheld what had been set by the

7    magistrate judge in the Northern District.  So when

8    Ms. Russell appeared, Judge Garaufis said that the conditions

9    from the Northern District of New York would apply in the

10   Eastern District.  That happens all the time.  I set bail

11   here.  Somebody is removed to a different part of the country

12   and that judge in the other part of the country says, we'll

13   keep you out on the conditions that were set in the Eastern

14   District.  That doesn't mean that that bond was now entered in

15   the Eastern District.  That's incorrect.

16          Look, I don't want you --

17          MS. PENZA:  Your Honor, may I have a --

18          THE COURT:  I don't want you to do something here

19   that's going to turn around and bite you down the road.

20          MS. PENZA:  I appreciate that, Your Honor.  And I

21   actually do have -- I guess our -- one alternative, which I

22   think would work based on what I understand Ms. Russell's

23   other sureter is willing to do and given the limitations on

24   what is possible there is if Miss -- I have also not been in

25   this exact situation before, Your Honor.  I believe that if

8

1    Ms. Abney were to deposit cash in the amount of the $25,000,
2    which I -- that she would not necessarily need to sign this
3    bond.
4             THE COURT:  That's correct.  If she --
5             MS. PENZA:  And so I think that is the way --
6             THE COURT:  If she deposits $25,000 into the court's
7    Registry, then there would be something here saying cash
8    deposited in the Registry of $25,000 on the form and we
9    wouldn't care who deposited it.
10            MS. PENZA:  And I -- yes, Your Honor.  And I think
11   that is actually -- I don't know the logistics of the transfer
12   because $25,000 hs been deposited.  And so I think the
13   logistics of the transfer to the extent we can make sure that
14   that $25,000 has now been deposited here --
15            THE COURT:  Well, this is what I want to avoid.
16            Ms. Russell, I expect that you're going to fly
17   straight and you're going to abide by all the conditions.  But
18   if you don't, the Government can come after you for the full
19   amount of the bond and I do not want it to be that you have an
20   enforcement action in this district and then an enforcement
21   action in that district.
22            That makes no sense.  There is nothing left in the
23   Northern District of New York.  There's only this deposit in
24   the Registry of this amount to be held for this -- this
25   sureter.  Is that correct?

1          MS. PENZA:  That is what I understand, Your Honor.

2     And so that's why I do think that is the best solution.  And

3     then there will be one operative bond signed by Mr. Mumford

4     but with $25,000 in the court's Registry.

5          THE COURT:  And that the $25,000 the person who put

6     that in still has to have a receipt so they know how to claim

7     that money.  They don't care of it's in the Northern or in the

8     Eastern if Ms. Russell is vindicated.  All they want is to get

9     their $25,000 back.  They don't want any further involvement

10    in the case and they don't want to sign onto this bond for

11    $150,000.  Is that correct?

12         MS. PENZA:  That's correct.

13         THE COURT:  So how do we accomplish this?

14         MR. RAVICH:  So I guess the issue is transferring --

15    the money right now is deposited in the Northern District and

16    it would be a matter of transferring that money to the Eastern

17    District.  Is that --

18         MS. PENZA:  Your Honor, this is not something the

19    Government actually -- like that -- that logistical piece is

20    something that the Government -- like that should be handled

21    by defense counsel, like making sure that that happens.  But

22    if that -- I think we are on the same page as to what we

23    intended to have happen and like practically -- not

24    practically rather.  Like in theory what everybody agrees is

25    the right bond here and so I think that's what needs to have

1    happen.

2           So maybe we could -- if Your Honor permits maybe we

3    could take a brief adjournment and see if we can actually

4    solidify that.

5           THE COURT:  Ms. Russell, could you stand by and

6    we're going to call you back.  We'll put this on for second

7    call, okay?

8           THE DEFENDANT:  Yes, I will.  Thank you, Judge.

9           THE COURT:  Thank you.

10   (Off the record at 12:23 p.m.)

11   (Back on the record at 1:00 p.m.)

12   (Telephone connection made.)

13          THE COURT:  Ms. Russell, it's Magistrate Judge

14   Bloom.  Please stand by for second call.

15          THE CLERK:  Okay.  We have a Criminal Cause for a

16   Bond Signing, 18-CR-204, United States v. Kathy Russell.

17          Counsel, state your appearances once again, please.

18          MS. PENZA:  Moira Kim Penza and Tanya Hajjar for the

19   United States.  Good afternoon again, Your Honor.

20          MR. RAVICH:  Amanda Ravich for Kathy Russell.

21          THE COURT:  Ms. Russell, good afternoon again.  We

22   had a short adjournment so that we could figure out a couple

23   of logistical difficulties with the bond, so we think that we

24   have a solution for how we're going to accomplish getting this

25   bond signed.  And so Ms. Ravich has made a contact for you at

11

1   the Northern District of New York.  After we get off the line

2   here you'll speak with Ms. Ravich and she'll tell you who

3   you're supposed to see.  And once you're in the Northern

4   District of New York we're going to reconvene and go on the

5   record so that you could sign the bond in front of the

6   Northern District of New York court officer and then I can

7   while you're on the phone sign off on the bond.  But I cannot

8   have you verbally agree to all the conditions on the bond.  I

9   must have you sign onto the bond that is going to be the

10  operable bond.

11          So we are going to fax it to the Northern District

12  of New York.  You're going to go in, but while you're there

13  you're going to get on the phone.  We're going to have a

14  proceeding with you appearing by phone from the Northern

15  District of New York and that's how we'll get this

16  accomplished.  Do you understand?

17          THE DEFENDANT:  Yes, I do, Judge.

18          THE COURT:  So this matter is going to adjourn until

19  later this afternoon.  I want Ms. Ravich to keep Ms. Penza and

20  Ms. Hajjar in the loop of what time we can expect you to make

21  it to the Albany courthouse.  Remember, it is Friday

22  afternoon.  Not everybody is waiting for you, but I imagine

23  you're not that far away.  Let's try to do this as close to

24  2:00 as possible so that we can get this done and over before

25  the afternoon calendar starts, but that's an aspirational

12

1   goal.

2          Anything further before we get off the line today,

3   Ms. Russell?

4          THE DEFENDANT:  No, Judge.

5          THE COURT:  Okay.  Anything further on behalf of the

6   United States?

7          MS. PENZA:  No, Your Honor.

8          THE COURT:  Ms. Ravich?

9          MR. RAVICH:  No, Your Honor.

10         THE COURT:  Okay.  So we'll reconvene when

11  Ms. Russell makes it to the Northern District of New York.

12  And with that we are adjourned.  Thank you.

13         MS. PENZA:  Thank you.

14         MR. RAVICH:  Thank you, Your Honor.

15  (Off the record at 1:03 p.m.)

16  (Back on the record at 3:00 p.m.)

17         THE COURT:  Okay.  Where's our Albany?  Ms. Hajjar,

18  it was confirmed to me by the chief deputy here that we're

19  going to need an order from the judge, I believe a DJ from the

20  Northern District to get the money transferred.  So I told

21  them that we were going to have this procedure where I was

22  going to sign the bond and -- well, that -- that the defendant

23  was going to sign the bond and I was going to be able to sign

24  the bond.  So they're going to have both a copy of the

25  original bond in Northern District.  They're going to have a

13

1  copy of the new bond and you're going to have to seek an order

2  from the Northern District to get the electronic transfer of

3  the funds from that Registry to our Registry.

4          MS. HAJJAR:  Great, Your Honor.

5          THE COURT:  So I was told that there does need to be

6  a judge's order but that it will be something you'll be able

7  to accomplish.  Let's go.

8          MS. HAJJAR:  Thank you, Your Honor.

9          THE COURT:  We hope.

10  (Telephone connection made.)

11          THE COURT:  Hi, Ms. Rogers.  This is Magistrate

12  Judge Bloom in the federal court in Brooklyn.  How are you

13  today?

14          MS. ROGERS:  Fine.  And yourself, Your Honor.

15          THE COURT:  Great.  And thank you so much for

16  facilitating this.  We really appreciate the Northern

17  District's assist on this.

18          MS. ROGERS:  Oh, you're welcome.  And I do have

19  Kathy Russell sitting here in front of me.

20          THE COURT:  So if she can come on the line what I'm

21  going to do is I'm going to have the case called with her

22  appearing by telephone, but the part that I needed for you,

23  you've been faxed a copy of the bond.  Is that correct?

24          MS. ROGERS:  Yes, I'll -- yes, I have the bond right

25  here in front of me.  I'm going to hand -- show it to her now

14

1   so she can see it.

2          THE COURT:  So I'm going to go over the bond

3   conditions, give her her bail warnings, have her sign onto the

4   bond; and then I'm going to have you fax back or email back,

5   whichever is easier for you her signed copy of the bond so

6   that I could then sign it saying that she could be released on

7   those terms after I've given her her bail warnings and then

8   we're going to have to fax it up to the surety who's up in

9   Boston, okay?

10         MS. ROGERS:  Okay.  I understand.  And I will mail

11  you the original too.

12         THE COURT:  That would be fantastic.

13         MS. ROGERS:  Okay.

14         THE COURT:  You're really a lifesaver.  Thank you

15  for all your help.

16         MS. ROGERS:  Oh, you're welcome, Your Honor.

17         THE COURT:  Okay.

18         MS. ROGERS:  I'm going to hand the phone over to

19  Kathy Russell and I'm handing her the bond now.

20         THE COURT:  Thank you.

21         MS. ROGERS:  You're welcome.

22         THE DEFENDANT:  Hello --

23         THE COURT:  Ms. Russell, are you there?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Okay.  I'm going to have the case called

15

1  and we're going to go on the record. Thank you. Just stand

2  by.

3          THE CLERK: Okay. So Criminal Cause for a Bond

4  Signing. It's 18-CR-204, <u>United States v. Kathy Russell</u>.

5  Counsel, state your appearances, please.

6          MS. HAJJAR: Tanya Hajjar for the Government. Good

7  afternoon, Your Honor.

8          MR. RAVICH: Amanda Ravich for Kathy Russell.

9          THE COURT: Ms. Russell is appearing by telephone.

10 Can you state your name for the record, Ms. Russell?

11         THE DEFENDANT: Yes. Kathy Russell.

12         THE COURT: And where are you presently,

13 Ms. Russell?

14         THE DEFENDANT: I'm in the Albany federal

15 courthouse.

16         THE COURT: Thank you very much. So just as

17 background this matter was on for a modification of a bond

18 that was set when Ms. Russell was arrested in the Northern

19 District of New York. At that time there had been $25,000

20 deposited into the Northern District of New York Registry and

21 Ms. Russell was released on conditions set forth in the bond

22 entered by Judge Stewart of the Northern District of New York.

23         The case is pending before the Honorable Nicholas

24 Garaufis of this court under 18-CR-204. It's now an indicted

25 case and Mister -- and Judge Garaufis did not think that the

16

1  bond that was entered in the Northern District was sufficient.

2  And so Ms. Russell has gotten a friend of hers to sign this

3  bond but when we were meeting on the bond modification this

4  morning it became clear to me that there would not be a bond

5  still pending in th4e Northern District of New York with

6  $25,000 in the court Registry and a different bond pending

7  here.

8          So we arranged with the Northern District of New

9  York that there would be, first of all, communication between

10 the courts and that the cash previously deposited in the

11 Registry of the Northern District of New York in the sum of

12 $25,000 shall be transferred to the Registry of the Eastern

13 District of New York and that will eliminate the bond from the

14 Northern District of New York and your attorney, Ms. Ravich,

15 will work on getting that accomplished with the Northern

16 District.  Do you understand, Ms. Russell?

17         THE DEFENDANT:  Yes, I do, Your Honor.

18         THE COURT:  Okay.  So let me go over all the other

19 conditions.

20         This bond is a $150,000 promise that you will come

21 back to court whenever you are directed to do so.  In

22 addition, the following conditions are imposed.  You must

23 remain in and may not leave the Eastern and Southern Districts

24 of New York and the Northern District but, again, you are only

25 to travel between the Northern District where you live and the

17

1    Southern and Eastern Districts of New York for court

2    appearances and meetings with counsel.  Do you understand?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  That you are to avoid all contact with

5    the following persons or entities:  any current or former

6    employees or independent contractors of or for NXIVM including

7    any and all affiliated entities.  In addition, there is an

8    asterisk that says you are to avoid contact with any

9    individual who is currently or was formerly on the stripe path

10   subject to reasonable exceptions that are agreed upon by the

11   parties.  Do you understand?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  You are to surrender your passport.

14   I've been told your passport has already been surrendered.  Is

15   that correct?

16             THE DEFENDANT:  That's correct.

17             THE COURT:  And you shall not obtain any other

18   passport or any other international travel documents.  Do you

19   understand?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  You are placed under the supervision of

22   Pretrial Services.  You're subject to random visits by

23   Pretrial Services at your residence and/or place of work and

24   you must report to Pretrial Services as directed.  Do you

25   understand?

18

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  You are subject to the following

3   location restriction program with location monitoring as

4   directed by Pretrial Services.  You will have a curfew where

5   you are restricted to your home every day from 9:00 p.m. to

6   7:00 a.m. or as directed by Pretrial Services.  Do you

7   understand?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  You also have to avoid excessive alcohol

10  use.  You must remain at the authorized address approved by

11  Pretrial and you must maintain or actively seek employment.

12  Do you understand?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  So again, this $150,000 bond will be

15  signed by you and by your friend Eric Mumford, but I want you

16  to understand that the $25,000 that was previously deposited

17  in the Registry of the Northern District of New York shall be

18  transferred to the Registry of this district and that money

19  would also be subject to forfeiture if you do not appear as

20  directed to appear.  Do you understand that?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  So even though it's $150,000 bond, it in

23  actuality is more like $175,000 but you and Mr. Mumford are

24  only on the hook for the $150,000, the $25,000 will be in the

25  Registry and was deposited by a third person who will have a

1   receipt for that money which, Ms. Ravich, you're going to have

2   to arrange for that so that if this matter is adjudicated that

3   person will have the claim to the funds in the Registry.  Do

4   you understand, Ms. Ravich?

5            MR. RAVICH:  Yes, I understand.

6            THE COURT:  Okay.  Ms. Russell, did you understand

7   all of those conditions?

8            MS. RUSSELL:  Yes, I do.

9            THE COURT:  And will you come back to court whenever

10  you're directed to do so?

11           MS. RUSSELL:  Yes, Your Honor.

12           THE COURT:  And there are also standard conditions.

13  You cannot violate any federal, state or local law while on

14  release.  You must cooperate in the collection of the DNA

15  sample if the collection is authorized, that you must advise

16  the court Pretrial Services defense counsel and U.S. Attorney

17  in writing before making any change in address or telephone

18  number, that you must appear in court as required and

19  surrender for service of any sentence imposed as directed,

20  that you must refrain from the use or unlawful possession of a

21  narcotic drug or other controlled substance unless prescribed

22  by a licensed medical practitioner, and if you fail to report

23  to Pretrial Services as directed the Pretrial officer may

24  report to the court that you are not in compliance with the

25  order of release; and last, you cannot possess a firearm,

20

1  destructive device or other weapon.

2           Do you understand all of those standard conditions

3  of release?

4           MS. RUSSELL:  Yes, I do, Your Honor.

5           THE COURT:  And will you come back to court whenever

6  you're directed to do so?

7           MS. RUSSELL:  Yes, I will.

8           THE COURT:  And abide by all of these conditions as

9  set forth on the record?

10          MS. RUSSELL:  Yes, I will.

11          THE COURT:  The last is that I have to by law give

12  you the following bail warnings.  If for any reason you do not

13  come back to court when you're directed to report there will

14  be agents dispatched.  You will be found.  You'll be placed

15  under arrest and the likelihood is you will not be released

16  again pending your trial on these charges.  In addition, there

17  is a separate federal crime called bail jumping.  Bail jumping

18  is punishable by up to ten years in jail.  Even if you are

19  never convicted of the crime for which you stand accused today

20  you can be convicted of bail jumping.

21          Last, if you commit any other crime while you're out

22  on bail they can enhance the penalty for the crime you commit.

23  If you commit a felony in New York while out on bail they

24  could add ten years to the sentence because you committed the

25  crime while out on bail.  Do you understand all of those bail

21

1  warnings?

2          MS. RUSSELL:  Yes, Your Honor, I do.

3          THE COURT:  Then I'll ask you sign the bond that has

4  been faxed to the district where you are, the Albany

5  courthouse of the Northern District of New York.

6          MS. RUSSELL:  Okay.  I'm signing it now.  I've

7  signed it, Your Honor.

8          THE COURT:  Could I have the other Kathy back who

9  is --

10          THE CLERK:  Kathy Rogers.

11          THE COURT:  -- Kathy Rogers from the Northern

12  District?

13          MS. RUSSELL:  Yes.

14          THE COURT:  Thank you.

15          MS. ROGERS:  Yes, Your Honor.

16          THE COURT:  Good afternoon again, Ms. Rogers.

17          MS. ROGERS:  Hello.

18          THE COURT:  Ms. Rogers --

19          MS. ROGERS:  Yes.

20          THE COURT:  -- has Kathy Russell signed the bond

21  that was faxed up to your court?

22          MS. ROGERS:  Yes, she did.

23          THE COURT:  Okay.  Very good.  We appreciate all the

24  help that you've given to us today.  You could tell

25  Ms. Russell that that completes what she needs to do today.

1              MS. ROGERS:  Okay.

2              THE COURT:  Was there anything else, Ms. Hajjar

3    before we adjourn?

4              MS. HAJJAR:  No, thank --

5              MR. RAVICH:  Okay.  I had one question.  Do you want

6    her to date it by her name, Your Honor?

7              THE COURT:  No, I sign it below with the date.

8              MS. ROGERS:  Okay.  Okay.

9              THE COURT:  And you're going to fax it back to us

10   or --

11             MS. ROGERS:  I'm going to walk five steps to my desk

12   and I'm going to scan it in to Michelle.

13             THE COURT:  And email it back to us and then as soon

14   as I get it, you could tell Ms. Russell then I'm going to sign

15   it and then we're going to fax it up to the District Court of

16   Massachusetts for the sureter to sign in Boston.

17             MS. ROGERS:  Okay.  And then I will mail the

18   original out to your court tonight.

19             THE COURT:  You're fabulous.  Thank you so much.

20             MS. ROGERS:  You're welcome.

21             THE COURT:  Have a great weekend.

22             MS. ROGERS:  You, too.

23             THE COURT:  We again we really appreciate it.  Thank

24   you so much.

25             MS. ROGERS:  Oh, you're welcome, Your Honor.

1          THE COURT:  Okay.  Thank you very much.

2          MS. ROGERS:  You're welcome.

3          THE COURT:  Anything else, Ms. Hajjar?

4          MS. HAJJAR:  Just to put on the record, Your Honor,

5    that the -- that Judge Garaufis excluded time until the next

6    status conference, which is September 13th at 2:00 p.m. for

7    the purpose of plea negotiations with the consent of

8    Ms. Russell's prior counsel.

9          THE COURT:  So that's already excluded.  I don't

10   have to deal with that.  Anything further on behalf of

11   Ms. Russell today, Ms. Ravich?

12         MR. RAVICH:  No, Your Honor.

13         THE COURT:  So as I said earlier, you're going to

14   have to coordinate getting an order out of the Northern

15   District to have the Registry funds transferred to the Eastern

16   District, but I trust that you'll be able to accomplish that.

17         MR. RAVICH:  Yes, Your Honor.

18         THE COURT:  I've already signed an order for

19   acceptance of it.  I don't know that we'll need this because

20   with the court order from the Northern District it might

21   electronically go into the Registry of the court.  But just

22   make sure that that gets taken care of and I'm not putting a

23   time limit on that, but I'm trusting that you will make that

24   happen.

25         MR. RAVICH:  Yes, Your Honor.

24

1          THE COURT:  So with that, we are adjourned.

2          ATTORNEYS:  Thank you, Your Honor.

3          MS. ROGERS:  Thank you.

4          THE COURT:  Thank you.

5          MS. ROGERS:  You're welcome.  Bye-bye.

6          THE COURT:  Bye.

7   (Proceeding concluded at 3:13 p.m.)

8                          *  *  *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

1          I certify that the foregoing is a court transcript

2   from an electronic sound recording of the proceedings in the

3   above-entitled matter.

4

5

6                              _____

7                              Ruth Ann Hager, C.E.T.**D-641

8   Dated:  August 23, 2018

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25