

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MKM:TH/MKP
F. #2017R01840

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 25, 2018

<u>By ECF</u>

The Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Keith Raniere, <u>et</u> <u>al.</u>
     <u>Criminal Docket No. 18-204 (NGG) (S-1)</u>

Dear Judge Scanlon:

   The government respectfully submits this letter in response to the Court's September 24, 2018 order directing the government to file a supplemental letter with its best estimates for anticipated production dates as to every device listed in the chart appended to the government's letter, filed yesterday, in order for the Court "to set a reasonable discovery production deadline. (9/24/2018 Order.) The Court also directed the government to provide a description of the technical and labor constraints of a prompt production. (<u>Id.</u>)

   The government has provided, submitted under separate cover, a revised list of electronic data in its possession, noting, where applicable, the size of the data contained in each device and which defendants have already received a copy.

   The Federal Bureau of Investigation has commenced searches of the over 70 devices seized from the residence of Nancy Salzman (the "Salzman Residence") and from 8 Hale Drive, Halfmoon, New York. For nearly all of these devices, pursuant to FBI policy, the searches were initiated by forensic examiners with the FBI's Computer Analysis Response Team (CART).

   Seven CART examiners have assisted with the ongoing searches of these devices. For each device for which this process was feasible, CART examiners first undertook to image the device, that is, to make an exact copy of the data contained on the computer, with the use of specialized forensic imaging software that copies each bit of computer code—a series of ones and zeroes—in sequence, "bit by bit." The length of time to

create a forensic image of a drive varies based on a number of factors relating to the original drive, including bad sectors or read errors that may exist on it. To ensure that the original and the image are forensically identical, the CART examiner used a computer program to calculate a unique number, or "hash value" for the original and, later, for the image. The examiner then confirmed that the hash values for the originals matched the hash values for the forensic image, reflecting that the images were identical to the originals.

CART examiners then processed the data from each of the devices for review. From the bit-by-bit imaged copy, the CART examiner extracted all available data from the original hard drive media, including active data, deleted data, metadata, files, folders, and empty or unallocated space on the hard drive, making it available for further examination and review. This process can take from a few minutes to several weeks, depending on the amount of data on the drive. The content of the device was then uploaded to FBI's data review platform, on which the FBI case agents began reviewing the data consistent with the court-authorized searches. At times, depending on what is reviewed on a device, additional processing—such as data carving (recovering files in unallocated space)—is required.

Several of the 70 devices seized from the Clifton Park properties appear, through an initial search, to contain a significant amount of audio and video files, which are not text-searchable and must be reviewed individually, file by file. For example, devices with item numbers 1B89 and 1B55, both external hard drives, have been preliminarily identified as containing a significant number of audio and video files. Other devices may also contain such files or other files for which individualized review is particularly time-consuming; for instance, devices with item numbers 1B104 and 1B97 contain lengthy transcripts of meetings with the defendants.

Courts have recognized the unique obstacles posed by the process of imaging and searching digital media. See, e.g., United States v. Ganias, 824 F.3d 199, 213 (2d Cir.), cert. denied, 137 S. Ct. 569, 196 L. Ed. 2d 445 (2016) ("Files," in short, are not as discrete as they may appear to a user. Their interspersion throughout a digital storage medium, moreover, may affect the degree to which it is feasible, in a case involving search pursuant to a warrant, to fully extract and segregate responsive data from non-responsive data."); United States v. Ulbricht, No. 14-CR-68 (KBF), 2014 WL 5090039, at * 14-15 (S.D.N.Y. 2014) (noting the need for "some latitude" in the context of digital searches); United States v. Sierra, No. 11 CR. 1032 PAE, 2012 WL 2866417, at *3 (S.D.N.Y. July 11, 2012) ("It simply cannot be assumed that the process of searching voluminous discovery materials for potentially relevant material as to a [crime] will be quickly accomplished. Some discovery materials (e.g., the pole camera videos) are not text-searchable; and other materials [including audio recordings] may contain statements or other evidence the relevance of which is circumstantial . . . .").

These challenges apply with similar force to the task of estimating how long a search of a particular device will take, because a comprehensive review of each device is required to anticipate challenges in review and production of that device. See United States v. Hill, 459 F.3d 966, 978 (9th Cir. 2006) ("There is no way to know what is in a file without

examining its contents, just as there is no sure way of separating talcum from cocaine except by testing it."); United States v. Scarfo, 180 F. Supp. 2d 572, 578 (D.N.J. 2001) (acknowledging that law enforcement officers "must be afforded the leeway to wade through a potential morass of information in the target location to find the particular evidence which is properly specified in the warrant."). For this reason, the government is unable at this time to provide the Court with precise estimates regarding the timing and completion of its searches of these devices.

Lastly, as to the devices that, due to encryption or other technical issues, have been sent to the FBI laboratory in Quantico, the government has inquired but cannot provide any estimate of the likely production date. Accessing the data itself may take several months, because the devices are placed in a queue with evidence from other cases, including cases involving imminent threats to national security or otherwise, which the laboratory must prioritize.

As noted in the list submitted under separate cover, while the government's search is ongoing, the government has endeavored to make available full discovery copies of all of the electronic data in its possession to the defendants, and has done so with respect to a significant number of devices. For many such devices, defendant Nancy Salzman has objected to such a copy being made available to other defendants. Upon further review of each device, should Salzman determine that she does not object to it being made available in full to all defendants, the government can provide a copy of that device promptly.

Mindful of the trial date set in this case, the government will search these devices as expeditiously as possible, and provide the results of the searches promptly and on a rolling basis to all defendants. In light of the complexity of this case, see ECF Docket Entry No. 138, the government respectfully requests that the deadline for substantial production of the results of these searches be set for one month prior to trial.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Moira Kim Penza
Tanya Hajjar
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (NGG) (by ECF)
       Counsel of Record (by ECF)

3