UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-  v.  -

KEITH RANIERE, CLARE BRONFMAN,
ALLISON MACK, KATHY RUSSELL,
LAUREN SALZMAN, and NANCY SALZMAN,

Defendants.

No. 18-cr-204 (NGG)

**ORAL ARGUMENT REQUESTED**

**Date of service:  November 16, 2018**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
CLARE BRONFMAN, KATHY RUSSELL, AND NANCY SALZMAN'S
MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERNATIVE
<u>FOR A BILL OF PARTICULARS</u>**

Justine Harris
Amanda Ravich
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Defendant Kathy Russell*

David Stern
Robert Soloway
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-7700

*Attorneys for Defendant Nancy Salzman*

Alexandra A.E. Shapiro
Fabien M. Thayamballi
Shapiro Arato LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

Susan Necheles
Kathleen E. Cassidy
Hafetz & Necheles LLP
10 East 40th Street, 48th Floor
New York, New York 10016
(212) 997-7400

*Attorneys for Defendant Clare Bronfman*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 3

    A.    NXIVM and DOS ........................................................................................ 3

    B.    The Defendants and the Charged Enterprise ........................................... 6

    C.    The Non-DOS Defendants ......................................................................... 7

    D.    The Charges ................................................................................................ 9

LEGAL STANDARD ................................................................................................... 11

ARGUMENT ............................................................................................................... 13

I.    COUNT ONE MUST BE DISMISSED FOR FAILURE TO ALLEGE A
    PATTERN OF RACKETEERING ACTIVITY ................................................ 13

    A.    The Indictment Must Allege Sufficient Facts To Show That The
    Racketeering Acts Are Related And Continuous.................................... 13

    B.    The Indictment Does Not Adequately Allege Relatedness.................... 16

II.    ALTERNATIVELY, COUNT ONE IS IMPERMISSIBLY DUPLICITOUS, AND
    THE COURT SHOULD EITHER DISMISS OR ORDER THE GOVERNMENT
    TO ELECT WHICH RICO CONSPIRACY IT WILL PROSECUTE AT TRIAL ........ 21

III.    COUNT SEVEN AND COUNT ONE, OR AT LEAST SEVERAL OF ITS
    PREDICATE ACTS, MUST BE DISMISSED FOR FAILURE TO SPECIFY
    UNDERLYING OFFENSES OR ALLEGE THEIR ESSENTIAL ELEMENTS.......... 26

    A.    The Indictment Is Not Specific Enough To Provide Fair Notice Or Identify
    The Grand Jury's Charges ...................................................................... 29

    B.    The Charges Lack Essential Elements ................................................... 32

IV.    COUNT SEVEN MUST BE DISMISSED FOR LACK OF VENUE ............................ 34

V.    COUNT ONE IS UNCONSTITUTIONALLY VAGUE ................................................ 36

VI.    ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO A BILL OF
    PARTICULARS ...................................................................................................... 36

CONCLUSION ............................................................................................................. 39

# TABLE OF AUTHORITIES

**Cases**

*Apprendi v. New Jersey,*
    530 U.S. 466 (2000) ............................................................................................... 12

*Bourjaily v. United States,*
    483 U.S. 171 (1987) ............................................................................................... 26

*Boyle v. United States,*
    556 U.S. 938 (2009) ............................................................................................... 22

*Cohen v. Cohen,*
    993 F. Supp. 2d 414 (S.D.N.Y. 2014) ............................................................. 17, 23

*Descamps v. United States,*
    570 U.S. 254 (2013) ............................................................................................... 29

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) ................................................................................... 14, 20, 36

*Johnson v. United States,*
    135 S. Ct. 2551 (2015) .......................................................................................... 36

*Kotteakos v. United States,*
    328 U.S. 750 (1946) ......................................................................................... 24, 26

*Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,*
    879 F.2d 10 (2d Cir. 1989) .................................................................................... 15

*Reich v. Lopez,*
    858 F.3d 55 (2d Cir. 2017) .............................................................................. passim

*Rosenson v. Mordowitz,*
    No. 11 CIV. 6145 JPO, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012) .................. 17

*Russell v. United States,*
    369 U.S. 749 (1962) ......................................................................................... 12, 29

*Salinas v. United States,*
    522 U.S. 52 (1997) ........................................................................................... 13, 21

*The Confiscation Cases,*
    20 Wall. 92 (1874) ................................................................................................. 29

*United States v. Applins,*
    637 F.3d 59 (2d Cir. 2011) .................................................................................... 22

*United States v. Attanasio,*
   870 F.2d 809 (2d Cir. 1989) ........................................................................ 31

*United States v. Awan,*
   459 F. Supp. 2d 167 (E.D.N.Y. 2006) ...................................................... 12, 30, 31

*United States v. Barnes,*
   158 F.3d 662 (2d Cir. 1998) ........................................................................ 37

*United States v. Basciano,*
   599 F.3d 184 (2d Cir. 2010) ................................................................... passim

*United States v. Beech-Nut Nutrition Corp.,*
   871 F.2d 1181 (2d Cir. 1989) ...................................................................... 35

*United States v. Berlin,*
   472 F.2d 1002 (2d Cir. 1973) ...................................................................... 34

*United States v. Bortnovsky,*
   820 F.2d 572 (2d Cir. 1987) ........................................................................ 38

*United States v. Bowline,*
   593 F.2d 944 (10th Cir. 1979) ..................................................................... 25

*United States v. Brandon,*
   17 F.3d 409 (1st Cir. 1994).......................................................................... 25

*United States v. Bruno,*
   383 F.3d 65 (2d Cir. 2004) .......................................................................... 16

*United States v. Cabrales,*
   524 U.S. 1 (1998)....................................................................................... 35

*United States v. Cain,*
   671 F.3d 271 (2d Cir. 2012) ............................................................... 13, 14, 19

*United States v. Carnagie,*
   533 F.3d 1231 (10th Cir. 2008) ............................................................. 23, 24

*United States v. Coiro,*
   922 F.2d 1008 (2d Cir. 1991) ...................................................................... 36

*United States v. Coplan,*
   703 F.3d 46 (2d Cir. 2012) .......................................................................... 34

*United States v. Davidoff,*
   845 F.2d 1151 (2d Cir. 1988) ...................................................................... 37

*United States v. Dupree*,
   870 F.3d 62 (2d Cir. 2017) ...................................................... 32, 33, 34

*United States v. Eppolito*,
   543 F.3d 25 (2d Cir. 2008) ...................................................... 21, 22, 23

*United States v. Foley*,
   73 F.3d 484 (2d Cir. 1996) ...................................................... 13, 32

*United States v. Fruchter*,
   104 F. Supp. 2d 289 (S.D.N.Y. 2000) ...................................................... 15

*United States v. Gasperini*,
   No. 16-CR-441 (NGG), 2017 WL 2399693 (E.D.N.Y. June 1, 2017) .............................. 37, 38

*United States v. Geibel*,
   369 F.3d 682 (2d Cir. 2004) ...................................................... 22

*United States v. Giovannelli*,
   No. 01 CR. 749 (JSR), 2004 WL 48869 (S.D.N.Y. Jan. 9, 2004) ........................... 15

*United States v. Gonzalez*,
   686 F.3d 122 (2d Cir. 2012) ...................................................... 12, 32, 33, 34

*United States v. Goodman*,
   285 F.2d 378 (5th Cir. 1960) ...................................................... 26

*United States v. Gotti*,
   42 F. Supp. 2d 252 (S.D.N.Y. 1999) ...................................................... 16

*United States v. Hillie*,
   227 F. Supp. 3d 57 (D.D.C. 2017) ...................................................... 30

*United States v. Huber*,
   603 F.2d 387 (2d Cir. 1979) ...................................................... 1

*United States v. Ivic*,
   700 F.2d 51 (2d Cir. 1983) ...................................................... 13, 34

*United States v. Lee*,
   833 F.3d 56 (2d Cir. 2016) ...................................................... 12

*United States v. Malizia*,
   720 F.2d 744 (2d Cir. 1983) ...................................................... 1

*United States v. Marcus Schloss & Co.*,
   710 F. Supp. 944 (S.D.N.Y. 1989) ...................................................... 24, 25

iv

*United States v. Marlinga*,
   No. CRIM 04-80372, 2005 WL 513494 (E.D. Mich. Feb. 28, 2005) .................................... 25

*United States v. McGhie*,
   No. 04-CR-058 (NG), 2012 WL 12951537 (E.D.N.Y. May 25, 2012) .................................... 33

*United States v. Munoz-Franco*,
   986 F. Supp. 70 (D.P.R. 1997) ........................................................................................ 25, 26

*United States v. Murray*,
   618 F.2d 892 (2d Cir.1980) .................................................................................................... 22

*United States v. Newell*,
   658 F.3d 1 (1st Cir. 2011) ...................................................................................................... 22

*United States v. O'Brien*,
   560 U.S. 218 (2010) ................................................................................................................ 12

*United States v. O'Connor*,
   237 F.2d 466 (2d Cir. 1956) .................................................................................................. 38

*United States v. Palumbo Bros.*,
   145 F.3d 850 (7th Cir. 1998) ................................................................................................ 15

*United States v. Percoco*,
   No. 16-CR-776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017) .................................... 35

*United States v. Peterson*,
   357 F. Supp. 2d 748 (S.D.N.Y. 2005) .................................................................................. 35

*United States v. Pirro*,
   212 F.3d 86 (2d Cir. 2000) ............................................................................................ passim

*United States v. Ramirez-Martinez*,
   273 F.3d 903 (9th Cir. 2001) ................................................................................................ 26

*United States v. Regan*,
   713 F. Supp. 629 (S.D.N.Y. 1989) ...................................................................................... 17

*United States v. Rosenblatt*,
   554 F.2d 36 (2d Cir. 1977) ...................................................................................... 21, 22, 31

*United States v. Serrano*,
   No. 16 CR 169 (WHP), 2016 WL 3702744 (S.D.N.Y. June 9, 2016) .................................... 12

*United States v. Sessa*,
   125 F.3d 68 (2d Cir. 1997) .................................................................................................... 13

*United States v. Shumpert Hood*,
  210 F.3d 660 (6th Cir. 2000) ................................................... 26

*United States v. Sturdivant*,
  244 F.3d 71 (2d Cir. 2001) ..................................................... 22

*United States v. Swafford*,
  512 F.3d 833 (6th Cir. 2008) ................................................. 23

*United States v. Szur*,
  No. S5 97 CR 108 (JGK), 1998 WL 132942 (S.D.N.Y. Mar. 20, 1998)................................. 38

*United States v. Thompson*,
  141 F. Supp. 3d 188 (E.D.N.Y. 2015) ................................... 12, 29, 30, 31

*United States v. Tzolov*,
  642 F.3d 314 (2d Cir. 2011) ................................................... 35

*United States v. Urso*,
  369 F. Supp. 2d 254 (E.D.N.Y. 2005) ................................... 12

*United States v. Vanwort*,
  887 F.2d 375 (2d Cir. 1989) ................................................. 22, 24

*United States v. Vendetti*,
  No. 10-CR-360, 2013 WL 5522434 (W.D.N.Y. Oct. 3, 2013) ............................... 17

*United States v. Viserto*,
  596 F.2d 531 (2d Cir. 1979) ................................................... 24

*United States v. Walsh*,
  194 F.3d 37 (2d Cir. 1999) ..................................................... 12, 29

*United States v. Wilson*,
  493 F. Supp. 2d 364 (E.D.N.Y. 2006) ................................... 37

*United States v. Young & Rubicam, Inc.*,
  741 F. Supp. 334 (D. Conn. 1990) ........................................ 15

## Constitutional Provisions and Statutes

U.S. Const. art. III, § 2, cl. 3 ................................................... 35

U.S. Const. amend. VI ............................................................. 35

8 U.S.C. § 1324 ........................................................................ 27, 28, 31, 34

18 U.S.C. § 371 ....................................................................................................... 31

18 U.S.C. § 956 ....................................................................................................... 30

18 U.S.C. § 1028 ................................................................................. 26, 27, 28, 31

18 U.S.C. § 1589 ..................................................................................................... 28

18 U.S.C. § 1590 ..................................................................................................... 28

18 U.S.C. § 1592 ..................................................................................................... 28

18 U.S.C. § 1956 ............................................................................................. 26, 28

18 U.S.C. § 1961 ..................................................................................................... 14

18 U.S.C. § 1962 ..................................................................................................... 13

18 U.S.C. § 2339A ................................................................................................. 30

18 U.S.C. § 2510 ..................................................................................................... 34

18 U.S.C. § 2511 ........................................................................................... 27, 28, 34

18 U.S.C. § 2701 ........................................................................................... 27, 34

21 U.S.C. § 841 ............................................................................................... 32, 33

21 U.S.C. § 846 ..................................................................................................... 32

21 U.S.C. § 848 ............................................................................................... 32, 33

26 U.S.C. § 7201 ............................................................................................. 28, 33

**Rules**

Fed. R. Crim. P. 7 ................................................................................................. 12

Fed. R. Crim. P. 8 ................................................................................................. 22

Fed. R. Crim. P. 18 ............................................................................................... 35

Fed. R. Evid. 104 ................................................................................................. 26

Fed. R. Evid. 801 ................................................................................................. 26

Local Crim. R. 16.1 ............................................................................................. 36

**Other Authorities**

1 C. Wright & A. Leipold, Fed. Practice and Procedure: Criminal § 125 (4th ed. 2008) ........... 29

H.R. Rep. No. 97-802 (1982)................................................................................................ 27, 31

## PRELIMINARY STATEMENT

"Since the Racketeer Influenced and Corrupt Organizations Act (RICO) was enacted in 1970," the Second Circuit "has expressed concern on several occasions about misuse of the statute by overzealous prosecutors." *United States v. Malizia*, 720 F.2d 744, 745 (2d Cir. 1983). The "potentially broad reach of RICO poses a danger of abuse where a prosecutor attempts to apply the statute to situations for which it was not primarily intended." *United States v. Huber*, 603 F.2d 387, 395-96 (2d Cir. 1979). This is just such a case.

The Defendants are members of NXIVM, a company that, until its forced hiatus, offered classes for personal and professional development based on the philosophy, educational curriculum, and tools created by NXIVM's founder Keith Raniere and further developed with NXIVM's president, Nancy Salzman. Over 17,000 people from many different sectors of society have benefited from NXIVM's educational programs, but because the media has taken an interest in stories regarding Mr. Raniere's alleged sex life, NXIVM has had to contend with uninformed and sensationalist headlines labeling it a "sex cult." Subsequently, federal prosecutors decided to cobble together RICO charges against NXIVM's corporate directors and officers even though most knew nothing about the purported misconduct of NXIVM's founder that originally animated the criminal investigation, which was allegedly related to a separate organization known as "DOS." Defendants Clare Bronfman (a member of NXIVM's Executive Board), Kathy Russell (NXIVM's former bookkeeper), and Nancy Salzman (NXIVM's president), in particular, are victims of the wide net cast by the government. The weakness of the government's case against them is revealed by the serious deficiencies in the indictment, which violate their constitutional rights and require dismissal of the charges against them.

The government arrested Mr. Raniere in early 2018.  In a criminal complaint, the government claimed that he had formed a "secret society" called "DOS," and that he and certain associates exploited the women they recruited into DOS for sex and other services. Subsequently, Mr. Raniere and fellow NXIVM member Allison Mack were indicted on sex trafficking and forced labor charges presumably related to their involvement in DOS.

Several months after the initial indictment was returned, the government obtained a superseding indictment stringing together Mr. Raniere, Ms. Mack, and four new defendants: Clare Bronfman, Kathy Russell, Nancy Salzman, and Lauren Salzman.  The superseding indictment continues to charge Mr. Raniere and Ms. Mack with sex trafficking and forced labor, and it levels similar charges against Lauren Salzman (another alleged member of DOS).  Not so with Ms. Bronfman, Ms. Russell, or Nancy Salzman.  The allegations against these Defendants have nothing to do with DOS or the sex charges at the root of this prosecution.  Instead, the government alleges that these Defendants committed a smattering of unrelated white-collar crimes that supposedly justify charging them in a RICO conspiracy with the other Defendants.

This purported RICO conspiracy is nonsense.  It is a fiction concocted by the government to, among other things, avoid serious statute of limitations problems and force all of the Defendants into a highly prejudicial joint trial, pervaded by tales of sex and blackmail.  In its zeal to taint every Defendant with the most sordid allegations, the government has stitched together charges in a skeletal indictment that avoids disclosing any of the facts that might support (or, more likely, undermine) its far-fetched RICO theory.  The government's misjoinder of charges and defendants is further evidenced by the fact that—according to the indictment itself—one of the counts against Ms. Bronfman is improperly venued in this district.

2

The government does not claim that Ms. Bronfman, Ms. Russell, or Nancy Salzman were conspirators in the sex-and-blackmail schemes it alleges against the other Defendants. It does not allege that they engaged in any similar acts. It does not even allege that they *knew* about these acts. It has, in fact, conceded that they did not. For these and other reasons, the government has not properly charged the Defendants in a single, overarching conspiracy, and it has not adequately alleged the "pattern" of interrelated racketeering acts necessary to invoke RICO. The allegations made against Ms. Bronfman, Ms. Russell, and Nancy Salzman are also too vague, generic, and ambiguous to satisfy the requirements of the Fifth and Sixth Amendments. These Defendants can only guess at what they were accused of doing, and they have no assurance that the grand jury properly performed its function or that the government will rely solely on the offenses charged by that grand jury.

The charges against these Defendants should be dismissed outright. If they are not, the Court should order the government to provide a bill of particulars so that the Defendants may defend themselves on a level playing field, rather than suffering a trial by ambush.

## BACKGROUND

### A.    NXIVM and DOS

The Indictment[1] alleges that Defendant Keith Raniere was the founder and leader of two organizations: "(1) Nxivm" and "(2) an organization referred to as 'DOS.'" (SI ¶ 1; *see also* SI ¶ 7). Despite efforts in the media to conflate these organizations—and to dramatize this prosecution by labeling both of them a "sex cult"—they have significant differences, and even the government draws a clear distinction between them.

---

[1] We refer to the Superseding Indictment (Dkt. 50) as the "Indictment" and cite it as "SI."

NXIVM is a "professional business providing educational tools, coaching and trainings to corporations and people from all walks of life" (Complaint, Dkt. 1 ¶ 4 (quoting NXIVM's website)), similar to businesses like Dale Carnegie, Tony Robbins, or Landmark.[2]  While NXIVM's operations are currently suspended, throughout the time of the charged offenses, it "offer[ed] classes [for] personal and professional development." (*Id.* ¶ 6).  NXIVM is headquartered in Albany, New York, but has "operate[d] centers all over the Americas including in the United States, Canada, Central America and Mexico." (*Id.* ¶ 5).

Broadly speaking, NXIVM seeks to help people achieve their goals and overcome personal limitations through techniques focused on self-reflection and self-discipline.  It has had over 17,000 clients from around the world, including prominent business leaders, former government officials, and many other highly educated professionals, the vast majority of whom are satisfied customers.  Its techniques have been shown to significantly improve the lives of many of its customers; in one example of the extraordinary potential of NXIVM's tools for transforming people's lives, NXIVM has studied their use to mitigate the symptoms of Tourette Syndrome. (*See* http://www.mytourettes.com).

People affiliated with NXIVM also saw its role as, more broadly, a "community guided by humanitarian principles" to "help create solutions for a kinder, more sustainable, ethical world." (https://web.archive.org/web/20180916234748/http://www.nxivm.com/home/).  It comprises several organizations,[3] each of which aims to improve some aspect of human

---

[2] *See* https://www.dalecarnegie.com/en; https://www.tonyrobbins.com/; https://www.landmarkworldwide.com/

[3] The Indictment refers to several organizations founded by Raniere, other than DOS, as "NXIVM." (SI ¶ 1).  We do the same here, using "NXIVM" to refer to NXIVM Corporation and other Raniere-founded entities with similar philosophies and products.  However, this shorthand should in no way be construed as a statement regarding these entities' legal relationships.

relationships through education and collective engagement.  These include, for example, the Ethical Humanitarian Foundation, a nonprofit that hosted a visit to Albany and public speech by the Dalai Lama in 2009, and In Lak'Ech, an initiative seeking to reduce violence in Mexico. (*See* https://web.archive.org/web/20180330075841/http://www.nxivm.com:80/project/non-violence/).

Although all of the Defendants are affiliated with NXIVM, the government "has not alleged that NXIVM . . . is a criminal enterprise."  (Dkt. 112 at 4 (government's Aug. 21, 2018 letter)).  And while the government belittles NXIVM's curricular offerings as "purported self-help programs," it does not and cannot dispute that NXIVM is a business that obtained revenue through lawful means.  (Dkt. 52 at 2 (government's July 24, 2018 letter)).  Indeed, since its inception two decades ago, many thousands of people have participated in NXIVM's programs, and it obtained about $7 million in annual revenue in some years.  (Dkt. 106 at 5 (Ms. Bronfman's Aug. 20, 2018 letter); Aug. 21, 2018 Tr. 28).

The other relevant organization allegedly founded by Raniere is DOS, also known as "the 'Vow' and 'the sorority.'"  (SI ¶ 1).  The Indictment does not elaborate on the nature of DOS even though DOS is plainly the centerpiece of the government's case.  Elsewhere, the government has described DOS as a hierarchical "secret society" that women were encouraged to join in exchange for "collateral" that took the form of property and blackmail material, which then was allegedly used to extract additional property, labor, and sex from the victims.  (Compl. ¶¶ 11-57; Dkt. 52 at 2-4, 6-7).  Presumably, these allegations are the basis for the Indictment's charges of extortion, forced labor, wire fraud, and sex trafficking by Raniere and others against "lower-ranking DOS members" (SI ¶¶ 28, 35-37) and, possibly, the similar charges involving

various Jane Doe victims not expressly identified as members of DOS (SI ¶¶ 29-33, 38-39). Unlike NXIVM, there is no allegation that DOS was a business or was incorporated.

### B.    The Defendants and the Charged Enterprise

All of the Defendants are joined in a single count charging a RICO conspiracy.  (SI ¶ 15). According to the Indictment, Raniere and the other Defendants, who were part of Raniere's "inner circle," constituted a RICO "enterprise" of "individuals associated in fact [and] engaged in . . . interstate and foreign commerce."  (SI ¶ 3).  The members of this "inner circle" were "executives, directors and officers of Nxivm," and some were also "first-line masters" "within the DOS 'pyramid.'"  (SI ¶ 2).  Defendants Allison Mack and Lauren Salzman (the "DOS Defendants") were members of both NXIVM and DOS.  (SI ¶¶ 9, 11).  By contrast, Defendants Clare Bronfman, Kathy Russell, and Nancy Salzman (the "Non-DOS Defendants") were members only of NXIVM.  (SI ¶¶ 8, 10, 12).  They are not alleged to have participated in DOS or even to have known about DOS during the time of the charged offenses.

The Indictment states that, together, the Defendants "comprised an organized criminal enterprise."  (SI ¶ 3).  This is not true, but more importantly at this stage, the government's allegations do not actually suggest that the Defendants associated primarily for criminal purposes.  According to the Indictment, Raniere was the founder of NXIVM; Nancy Salzman was the president of NXIVM; Bronfman and Lauren Salzman served on NXIVM's Executive Board; Russell was NXIVM's bookkeeper; and Mack was a high-ranking member of NXIVM. (SI ¶¶ 7-12).  Thus, the Defendants were linked by their official positions in, work for, and responsibilities to NXIVM—which, as explained above, was a legitimate business.  Moreover, the Indictment alleges that the "principal purpose" of the enterprise "was to obtain financial and personal benefits . . . by promoting [Raniere] and by recruiting new members" for NXIVM and

6

DOS.  (SI ¶ 4).  Of course, promoting Raniere—NXIVM's founder and the source of its curriculum—and recruiting persons interested in NXIVM's services is precisely the sort of thing one would expect the leadership of a legitimate business to do.  As a result, it is undisputed that the charged enterprise engaged in legitimate business activity, even if the government also alleges that it committed crimes.

This is significant because it means that despite the RICO charge, the enterprise was not a mafia family, a street gang, a drug cartel, or any other crime syndicate whose very business is racketeering activity.  Its members associated for legitimate business purposes, and the RICO charge must be evaluated accordingly.  *See Reich v. Lopez*, 858 F.3d 55, 60-62 (2d Cir. 2017) (noting that RICO's requirements differ depending on whether the business of the enterprise was primarily lawful or unlawful).

C.    The Non-DOS Defendants

Like the DOS Defendants, all of the Non-DOS Defendants are affiliated with NXIVM but have different roles and responsibilities within the company.  Ms. Bronfman is a member of NXIVM's Executive Board.  (SI ¶ 8).  Her involvement with NXIVM spans almost 16 years, beginning when she was 23 years old and first became a student in NXIVM trainings.  (Dkt. 126 at 2).  After taking a number of NXIVM classes, Ms. Bronfman experienced profound improvements in her life and, therefore, decided to become a coach herself.  In 2005, she retired from a career as a professional equestrian in order to devote more time to pursuing NXIVM's mission.  Ms. Bronfman eventually managed certain aspects of NXIVM and its affiliates' business operations.  As the Court is aware, Ms. Bronfman has considerable wealth, and she has loaned or invested many millions of dollars over the years to NXIVM or related entities,

demonstrating her firm belief in NXIVM's capacity to improve the lives of others. The notion

that she was involved with NXIVM for financial gain is ludicrous. (*Contra* SI ¶¶ 4, 6, 24-25).

Kathy Russell was first introduced to NXIVM by her hairdresser in 2001, when she was

working as the controller of the Alaska Native Village Corporation in Anchorage. She took her

first course in Anchorage in June 2001, and later enrolled in a second course in Albany in August

of that year. Ms. Russell found the courses empowering and enlightening and participated in

additional NXIVM courses and trainings in both Anchorage and Albany. In 2002, Ms. Russell

moved to Albany to work for NXVIM, and has worked there off and on since. At the time of her

arrest, Ms. Russell was making $27 per hour.

Nancy Salzman is NXIVM's president and has more than 40 years of experience

studying and working in the fields of healthcare and human potential. As a trained nurse, Ms.

Salzman became interested in the human potential movement, sought to develop techniques to

treat patients suffering from chronic pain, and studied relevant methodologies such as neuro-

linguistic programming. Ms. Salzman implemented these techniques in her counseling and

coaching practice in Albany, eventually also securing contracts to teach human potential and

performance courses to workers in large healthcare and industrial organizations, such as Con

Edison Company. In 1997, Ms. Salzman met Keith Raniere, and the following year, they

founded together a company called Executive Success Programs, which later became NXIVM.

Based on Mr. Raniere's ideas of human potential, named the Rational Inquiry Method, Ms.

Salzman wrote and taught curricula and counseled individuals and groups. (*See* Dkt. 191 at 1-3).

She has continuously served as president and is one of NXIVM's primary practitioners and

promoters.

**D.    The Charges**

The charges in the Indictment reflect the distinction between the Defendants who allegedly founded or were members of both NXIVM and DOS (Raniere and the DOS Defendants) and those who were members of NXIVM only (the Non-DOS Defendants).

1.    *Alleged participants.*  Count One, the alleged RICO conspiracy, is the only count that joins all of the Defendants.  This count alleges that Raniere was the leader of the enterprise and charges him in many of the predicate acts of racketeering.  (SI ¶¶ 7, 17-23, 26-30, 34). However, the Indictment does not charge any predicate acts that the Non-DOS Defendants and the DOS Defendants supposedly committed together:

| | DOS Defendants | | Raniere | Non-DOS Defendants | | |
|---|---|---|---|---|---|---|
| | Mack | L. Salzman | Raniere | Bronfman | Russell | N. Salzman |
| Act 1-A | | | X | | X | |
| Act 1-B | | | X | | X | |
| Act 2-A | | | X | X | X | X |
| Act 2-B | | | X | | X | |
| Act 2-C | | | X | X | | |
| Act 3 | | | X | | | X |
| Act 4 | | | X | | | |
| Act 5-A | | | | X | | |
| Act 5-B | | | | X | | |
| Act 6-A | | X | X | | | |
| Act 6-B | | X | X | | | |
| Act 7 | X | X | X | | | |
| Act 8-A | X | | X | | | |
| Act 8-B | X | | X | | | |
| Act 8-C | X | | | | | |
| Act 9-A | | X | | | | |
| Act 9-B | | X | | | | |
| Act 10 | | | X | X | | |

(SI ¶¶ 17-34).  In fact, nearly every predicate act was allegedly committed either by a single Defendant or by Raniere and one other Defendant.  The Indictment alleges only two exceptions: a conspiracy involving Raniere and all of the Non-DOS Defendants (SI ¶ 19 (Act 2-A)) and an

9

extortion charge involving Raniere and all of the DOS Defendants (SI ¶ 28 (Act 7)). But again, neither of these charges links the Non-DOS Defendants to the DOS Defendants.

Nor are the DOS Defendants and Non-DOS Defendants charged together in the non-RICO counts. Raniere and DOS Defendants are charged in Counts Two through Six (the "DOS Counts"). Only Raniere and Bronfman are charged in Count Seven (the "Non-DOS Count"). Neither Russell nor Nancy Salzman is charged in any count other than the RICO conspiracy count.

2.    *Nature of the charged offenses.* The DOS and Non-DOS Defendants are also charged with committing starkly different types of crimes. In the RICO count, the Indictment alleges that the DOS Defendants, sometimes in concert with Raniere, engaged in acts of sex trafficking, forced labor, and extortion against specific victims or, more generally, "lower-ranking DOS members." (SI ¶¶ 28 ("lower-ranking DOS members"), 26-27 (Jane Doe 4), 29-33 (Jane Does 5 and 6)). We refer to these predicate acts as the "DOS Acts" (Acts 6 through 9).[4] Similarly, the DOS Counts charge the DOS Defendants with a forced labor conspiracy, a fraud conspiracy, and sex trafficking crimes against "lower-ranking DOS members" and specific victims. (SI ¶¶ 35-37 ("lower-ranking DOS members"), 38-39 (Jane Does 5 and 8)).

The Non-DOS Defendants, on the other hand, are charged with a hodgepodge of white-collar crimes that have nothing to do with the alleged sex trafficking, forced labor, or extortion of DOS members (or anyone else). The RICO count alleges that the Non-DOS Defendants committed predicate acts of identity theft, sometimes for the purpose of evading immigration laws, sometimes to intercept communications, and sometimes to evade taxes; altering records for

---

[4] From what we understand, Act 6 allegedly predated the existence of DOS. We nevertheless refer to it as a DOS Act given the nature of the conduct alleged and the fact that only Raniere and Lauren Salzman, a DOS Defendant, were charged.

use in litigation; encouraging the illegal entry of an alien; and money laundering.  None of the alleged victims of these offenses appear in any predicate act involving the DOS Defendants.  (SI ¶¶ 17-22 (Jane Doe 1, John Does 1 and 2), 24-25 (Jane Doe 3), 34 (Jane Doe 7)).  We refer to these acts as the "Non-DOS Acts" (Acts 1, 2, 3, 5, and 10).[5]  Moreover, the sole Non-DOS Count is virtually identical to the identity theft conspiracy charged in Act 10.  (SI ¶¶ 34, 40).

3.    *Time and place.*  The Non-DOS Defendants are also charged with committing offenses in different locations from the DOS Defendants.  All of the Non-DOS Acts and the Non-DOS Count occurred in the Northern District of New York or the District of New Jersey. None of them occurred in the Eastern District of New York.  (SI ¶¶ 17-22, 24-25, 34, 40; *cf. id.* ¶ 23).  By contrast, all of the DOS Counts and all but one of the DOS Acts are alleged to have occurred in the Eastern District.  (SI ¶¶ 28-33, 35-39).  The sole exception is Act 6, which occurred in the Northern District.  (SI ¶¶ 26-27).

The timing of the charged offenses is different as well.  Other than Act 6 (SI ¶¶ 26-27), all of the DOS Counts and DOS Acts occurred between 2015 and 2017 (SI ¶¶ 28-33, 35-39). Most of the Non-DOS Acts, however, occurred many years earlier, from 2004 to 2009 (SI ¶¶ 17-21, 24-25), and others continued later, into 2018 (SI ¶¶ 22, 34, 40).

## LEGAL STANDARD

As the statement of charges against a criminal defendant, an indictment must contain enough information to "[1] fulfill[] the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' [2] prevent[] a person from being subject to double jeopardy as required by the Fifth Amendment; and [3] serve[] the Fifth Amendment protection against prosecution for

---

[5] There is also a single, separate predicate act (Act 4) charging Raniere alone with conspiring to commit identity theft.  (SI ¶ 23).  None of the other acts involve the alleged victim, Jane Doe 2.

crimes based on evidence not presented to the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999); *accord Russell v. United States*, 369 U.S. 749, 763-64 (1962). The indictment must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Walsh*, 194 F.3d at 44 (quotation marks omitted). And the indictment must serve the "important corollary purpose" of "inform[ing] the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *Russell*, 369 U.S. at 768 (quotation marks omitted).

Accordingly, "[t]he indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *Apprendi v. New Jersey*, 530 U.S. 466, 489 n.15 (2000) (quotation marks omitted); *see also* Fed. R. Crim. P. 7(c)(1) (indictment must contain a "definite written statement of the essential facts constituting the offense charged"). The "[e]lements of a crime must be charged in an indictment," *United States v. O'Brien*, 560 U.S. 218, 224 (2010), and the failure to allege an element is a constitutional violation, *see United States v. Lee*, 833 F.3d 56, 67-68 (2d Cir. 2016); *United States v. Gonzalez*, 686 F.3d 122, 127-28 (2d Cir. 2012). Tracking the language of the charged statute is not always sufficient to meet these requirements, particularly where elements of the offense are implicit in the statute, or the statute contains generic terms. *See United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir. 2000) (op. of Gibson, J.); *United States v. Serrano*, No. 16 CR 169 (WHP), 2016 WL 3702744, at *2 (S.D.N.Y. June 9, 2016); *United States v. Thompson*, 141 F. Supp. 3d 188, 192-98 (E.D.N.Y. 2015); *United States v. Awan*, 459 F. Supp. 2d 167, 175-76 (E.D.N.Y. 2006); *United States v. Urso*, 369 F. Supp. 2d 254, 265-67 (E.D.N.Y. 2005) (Garaufis, J.). Thus, "where [an] indictment track[s] the language of [the] RICO statute but d[oes] not allege . . . an essential characteristic of

12

the crime, the indictment fail[s] to charge an offense." *United States v. Foley*, 73 F.3d 484, 488 (2d Cir. 1996), *overruled on other grounds*, *Salinas v. United States*, 522 U.S. 52 (1997) (citing *United States v. Ivic,* 700 F.2d 51, 58-59, 64-65 (2d Cir. 1983), *overruled on other grounds*, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994)).

The court may dismiss "a portion of a count" even if it does not dismiss the whole count or indictment. *Pirro*, 212 F.3d at 88-89 & n.5. A defendant who "objects to the indictment before trial" is "entitled to a more exacting review of the indictment than one who waits until after trial to object." *Id.* at 92 (op. of Gibson, J.).

## ARGUMENT

## I.    COUNT ONE MUST BE DISMISSED FOR FAILURE TO ALLEGE A PATTERN OF RACKETEERING ACTIVITY

### A.    The Indictment Must Allege Sufficient Facts To Show That The Racketeering Acts Are Related And Continuous

1.    *The law of RICO.* Count One charges a RICO conspiracy. To engage in a RICO conspiracy, the defendant must "agree[] with others" to "further an endeavor which, if completed, would satisfy all of the elements of a substantive RICO offense." *United States v. Cain*, 671 F.3d 271, 291 (2d Cir. 2012) (quotation marks and alterations omitted); *see also United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997) (government must prove "an agreement to violate RICO's substantive provisions").

Here, defendants are charged with conspiring to violate RICO's provision forbidding "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A "'pattern of racketeering activity' requires at least two acts of racketeering

13

activity" within ten years of each other, *id.* § 1961(5), but that "is not alone sufficient," *Cain*, 671 F.3d at 284.  Rather, "a RICO pattern may not be established without some showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity."  *Id.* (quotation marks omitted).  These two essential components of a RICO pattern are known as "relatedness" and "continuity."  *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017).

Relatedness is further subdivided into two requirements.  "Predicate crimes must be related both to each other (termed 'horizontal relatedness') and to the enterprise as a whole ('vertical relatedness')."  *Id.* at 60 (quoting *Cain*, 671 F.3d at 284).  Vertical relatedness requires "that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise."  *Id.* at 61.  Horizontally related acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).  Although the "predicate acts need not be linked in every way," the Court should consider all the "factors."  *Id.* at 62.  For example, "predicate acts [may be] unrelated despite an overlap of participants."  *Id.*

"When dealing with an enterprise whose business is racketeering activity, such as an organized crime family, horizontal relatedness can be established simply by linking each act to the enterprise."  *Id.* at 61 (quotation marks omitted).  But "[w]hen dealing with an enterprise that is primarily a legitimate business," as is the case here, the government must show additional links between the predicate acts.  *Id.*  A mere "overlap of participants" is insufficient.  *Id.* at 62.  And because "virtually all crimes committed on behalf of an enterprise are done to help it,"

14

considering the "purpose" of the crimes "at that level of generality would make the factor meaningless," and a more careful scrutiny of purpose is required. *Id.*

2.    *Pleading RICO violations.*  "[W]hen facing a RICO count in an indictment," the "district court must determine whether it independently alleges" the required "pattern of racketeering activity." *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 15 (2d Cir. 1989); *accord United States v. Young & Rubicam, Inc.*, 741 F. Supp. 334, 341 (D. Conn. 1990). "[F]or a pattern to exist, the alleged criminal acts should be characterized by their relatedness and continuity," and "if a pleading does not indicate the existence of both components of the pattern of racketeering activity, a RICO claim should be dismissed." *Proctor & Gamble*, 879 F.2d at 15; *accord Reich*, 858 F.3d at 62 (dismissing RICO conspiracy claim because alleged acts lacked either relatedness or continuity); *United States v. Giovannelli*, No. 01 CR. 749 (JSR), 2004 WL 48869, at *3 (S.D.N.Y. Jan. 9, 2004) ("To allege a pattern of racketeering activity, the indictment must specify at least two racketeering acts within a 10-year period, that evidence continuity and relatedness.") (citations omitted).

In other words, "the indictment must contain sufficient facts to demonstrate that the racketeering acts are related and that those acts establish or threaten continuing criminal activity," even though it need not allege relatedness and continuity "explicit[ly]" or "with particularity." *United States v. Palumbo Bros.*, 145 F.3d 850, 877-78 (7th Cir. 1998); *see also id.* at 878 ("[A]n indictment must include supplemental facts that reasonably substantiate the existence of continuity, and a district court may consider those external factual allegations in the indictment that identify and describe the elements of the crime to determine the existence of continuity in a defendant's predicate acts."); *United States v. Fruchter*, 104 F. Supp. 2d 289,

296-97 (S.D.N.Y. 2000) (analyzing indictment for allegations establishing relatedness and continuity); *United States v. Gotti*, 42 F. Supp. 2d 252, 287-88 (S.D.N.Y. 1999) (same).

### B.    The Indictment Does Not Adequately Allege Relatedness

The Indictment fails to plead a valid RICO conspiracy because the charged predicate acts are unrelated and do not amount to a pattern of racketeering activity.

1.    The most glaring deficiency in the charged pattern is vertical relatedness, as the Indictment is devoid of allegations showing a nexus between the predicate acts and the enterprise.  For nearly all of the predicate acts, the Indictment simply alleges the time, place, and relevant Defendants, then reproduces the language of the relevant statute (sometimes, but not always, listing a John or Jane Doe victim).  (SI ¶¶ 17-21, 23-27, 29-34).  There is no indication that the charged Defendants "w[ere] enabled to commit the [predicate acts] solely because of [their] position in the enterprise." *Reich*, 858 F.3d at 61.  And while the Indictment vaguely asserts that the Defendants "agreed to conduct the affairs of the [e]nterprise" through the charged acts (SI ¶ 16), nothing in the Indictment actually suggests that the acts "related to the activities of the enterprise." *Reich*, 858 F.3d at 61.  For example, Act 5 charges Bronfman alone with encouraging the illegal entry of Jane Doe 3 and related money laundering, but it says nothing about how or why she engaged in this alleged activity or how it relates to the charged enterprise. (SI ¶¶ 24-25).  The same is true of Act 1, which charges Russell with two identity-related offenses but fails to tie them to the enterprise.  (SI ¶¶ 17-18).  Similarly, Act 4 charges Raniere with conspiring to commit identity theft against Jane Doe 2, but it provides no further detail other than time and place.  (SI ¶ 23).  Without further allegations, these and the other predicate acts cannot satisfy the test for vertical relatedness. *Cf. United States v. Bruno*, 383 F.3d 65, 85 (2d Cir. 2004) ("personal matters" were not vertically related to charged mafia enterprise and

16

could not form a pattern); *Cohen v. Cohen*, 993 F. Supp. 2d 414, 425-27 (S.D.N.Y. 2014) (dismissing RICO conspiracy claim where allegations did not establish vertical relatedness); *Rosenson v. Mordowitz*, No. 11 CIV. 6145 JPO, 2012 WL 3631308, at *7-8, *11 (S.D.N.Y. Aug. 23, 2012) (same, for substantive RICO claims).

Only two of the predicate acts contain factual allegations tying the charged conduct to either NXIVM or DOS. (SI ¶ 22 (Act 3, alleging alteration of evidence related to NXIVM litigation); SI ¶ 28 (Act 7, alleging extortion of DOS members)). Regardless of whether these acts are vertically related,[6] however, the others must be dismissed. *See, e.g.*, *Pirro*, 212 F.3d at 88-89 & n.5 (court may dismiss a "portion of a count"); *United States v. Vendetti*, No. 10-CR-360, 2013 WL 5522434, at *7 (W.D.N.Y. Oct. 3, 2013) (dismissing specific racketeering act from indictment); *United States v. Regan*, 713 F. Supp. 629, 641 (S.D.N.Y. 1989) (same).

Once only Act 3 and Act 7 remain, Count One must be dismissed in its entirety for two independent reasons. *First*, the grand jury did not charge Act 3 and Act 7 as the RICO pattern. The government could have presented the grand jury solely with these two acts and urged it to charge a RICO conspiracy, but "neither this nor any other court can know that the grand jury would have been willing to charge [the] defendant[s] on [this] new theory." *United States v. Basciano*, 599 F.3d 184, 206 (2d Cir. 2010) (quotation marks omitted). The government therefore cannot rely on Act 3 and Act 7—or, indeed, *any* subset of the charged acts—to form a RICO pattern, since the grand jury did not pass on the validity of that pattern. "Courts may narrow indictments without offending the Fifth Amendment's Grand Jury Clause when what is removed is 'in no way essential to the offense,'" but that is not true of the RICO "pattern," which

---

[6] Neither NXIVM or DOS is the charged enterprise, even though the government alleges that all of the Defendants were members of one or both organizations.

is "an essential element of racketeering." *Id.* at 206.  Accordingly, "[o]nce a grand jury has charged a pattern of racketeering common to a number of defendants, only the grand jury, not the court, may decide whether an individual defendant should be charged with a *different* pattern." *Id.*  Count One must therefore be dismissed on this ground alone.

*Second*, Act 3 and Act 7 cannot form a RICO pattern because they are not horizontally related.  In Act 3, Raniere and Nancy Salzman are charged with altering video recordings of Nancy Salzman for use in a NXIVM lawsuit in the District of New Jersey, beginning in 2008. (SI ¶ 22).  In Act 7, Raniere, Mack, and Lauren Salzman are charged with extorting other DOS members in New York from 2015 to 2017.  (SI ¶ 28).  There is simply no logical relationship between the two acts, and the Indictment does not allege one.  *See Reich*, 858 F.3d at 62 (horizontal relatedness considers whether acts have "similar purposes, results, participants, victims, and methods of commission") (quotation marks and alterations omitted).  The only connection is Raniere's alleged involvement, but that alone cannot establish relatedness.  *See id.* (holding that the "predicate acts were unrelated despite an overlap of [*three*] participants").  Consequently, there is no pattern, and the entire RICO count must be dismissed.  *See id.* (dismissing RICO conspiracy because pled acts did not constitute a pattern).[7]

2.    Moreover, the Court can dismiss Count One without even considering vertical relatedness.  Even if *every* predicate act charged in the Indictment survived the vertical relatedness test, the alleged pattern would still lack horizontal relatedness.  First, the DOS Acts and Non-DOS Acts are clearly unrelated.  The Indictment pleads no facts showing that they resemble each other in any relevant respect.  *See Reich*, 858 F.3d at 61-62.  The alleged DOS

---

[7] To the extent the government argues that some other combination of charged acts amounts to a pattern, the Fifth Amendment precludes them from doing so.  *See Basciano*, 599 F.3d at 206. Defendants also reserve the right to argue that those acts lack continuity as well as relatedness.

Acts were acts of coercion by the DOS Defendants to obtain labor, property, and commercial sex acts from specific victims and, more generally, lower-ranking DOS members. The alleged Non-DOS Acts had *none* of these features, which decisively "weigh[s] against relatedness." *Id.* at 62. Moreover, Raniere is the only person alleged to have committed both DOS Acts and Non-DOS Acts, and he is not even charged in all of the acts. As explained above, his involvement cannot establish relatedness. *See id.* Thus, the DOS Acts are not horizontally related to the Non-DOS Acts. Since the grand jury did not charge either set of acts, in isolation, as a RICO pattern, Count One must be dismissed outright. *See Basciano*, 599 F.3d at 206. At a *minimum*, the government must rely on one set or the other (but not both) to plead a pattern. The Court should direct the government to elect one set of acts and to abandon the other, then dismiss the abandoned acts.

In addition, the Non-DOS Acts are not related to each other. Some of them are clearly *sui generis*, like Act 3's charge of litigation misconduct by Raniere and Nancy Salzman (SI ¶ 22), and Act 5's charge that Bronfman encouraged illegal entry and engaged in related money laundering (SI ¶¶ 24-25). While the three remaining Non-DOS Acts all allege violations of the identity-theft statute, they occurred on unrelated dates, there are no overlapping victims, and the purposes of the charged acts were different—ranging from bringing in an alien in 2004 (Act 1, SI ¶¶ 17-18) to intercepting communications between 2005 and 2008 (Act 2, SI ¶¶ 19-21) and committing tax evasion between 2016 and 2018 (Act 10, SI ¶ 34). Again, the mere "overlap of participants" between certain of these acts "is insufficient" to establish relatedness. *Reich*, 858 F.3d at 62; *cf. Cain*, 671 F.3d at 289-90 ("minimal overlap in players and motives" did not

necessarily establish relatedness).[8]  The government therefore cannot rely on the Non-DOS Acts,

which are nothing more than "isolated events," *H.J. Inc.*, 492 U.S. at 240, and should be

dismissed.

That leaves the DOS Acts.[9]  At least for the Non-DOS Defendants, it is irrelevant

whether the DOS Acts, considered in isolation, are related.  If the RICO conspiracy were limited

to the DOS Acts, it could not possibly encompass the Non-DOS Defendants.  Most of the alleged

DOS Acts are multi-defendant crimes that could have been charged as conspiracies.  (SI ¶¶ 26-

30).  In fact, the same or related crimes against DOS members were charged as separate

conspiracies in Counts Two through Four.  (SI ¶¶ 35-37).  Nevertheless, the Non-DOS

Defendants were not charged as co-conspirators in *any* conduct by the DOS Defendants.  Indeed,

the Non-DOS Defendants are not alleged to have participated in DOS or even *known* about it at

the time of the charged offenses.  The government has, in fact, conceded that they did not.  By its

own admission, "the government has not alleged that Ms. Bronfman herself was a member of

DOS," and when discussing Ms. Bronfman's knowledge of DOS, the government argued only

that "once DOS was *revealed*," there were "efforts by Ms. Bronfman to gather information"

about victims and "speak[] disparagingly about [them]."  (Aug. 21, 2018 Tr. 36-37 (emphasis

added); *see also* Dkt. 106 at 4 (noting, without opposition, that the government "cannot allege[]

that Ms. Bronfman even knew of DOS before the summer of 2017"); Dkt. 52 at 6 (alleging that

"the truth about [DOS] was kept from everyone who joined except for the first-line masters");

---

[8] Raniere's alleged solo act of identity theft (Act 4) does not change the analysis.  It did not
involve the Non-DOS Defendants; it targeted a different victim; and other than generic statutory
citations, there are no allegations suggesting that the underlying conduct resembled the other
charged acts.  (SI ¶ 23).

[9] This assumes, counterfactually, that the government could rely on the DOS Acts alone without
violating the Fifth Amendment.  As explained above, it cannot.  *See Basciano*, 599 F.3d at 206.

Compl. ¶¶ 11, 14-15 (alleging that DOS was "a secret society" that took steps to ensure secrecy)).

Thus, there is no suggestion that the Non-DOS Defendants knew about the DOS Acts or that the DOS Acts fell within the scope of what they allegedly agreed to. They cannot be charged with a RICO conspiracy premised on those acts. *See United States v. Eppolito*, 543 F.3d 25, 47-48 (2d Cir. 2008) (RICO conspirators must "agree[] on the essential nature of the plan" and be "conscious[] of its general nature and extent"); *id.* at 48 (criminal activity with "two or more . . . spheres of operation" constitutes a single conspiracy only if there is "mutual dependence and assistance") (quotation marks omitted); *United States v. Rosenblatt*, 554 F.2d 36, 39 (2d Cir. 1977) ("Nobody is liable in conspiracy except for the fair import of the concerted purpose or agreement as he understands it[,]" and "it is therefore essential to determine what kind of agreement or understanding existed as to each defendant.") (quotation marks omitted).

Count One must therefore be dismissed.

## II.    ALTERNATIVELY, COUNT ONE IS IMPERMISSIBLY DUPLICITOUS, AND THE COURT SHOULD EITHER DISMISS OR ORDER THE GOVERNMENT TO ELECT WHICH RICO CONSPIRACY IT WILL PROSECUTE AT TRIAL

Duplicity is the charging of multiple, separate offenses in the same count. The contours of a RICO conspiracy may be broad, *see Salinas v. United States*, 522 U.S. 52, 64 (1997), but here, at best, the Indictment impermissibly charges multiple RICO conspiracies under the guise of one. Because charging distinct enterprises and different patterns of racketeering activity as one RICO conspiracy prejudices the Defendants and risks confusion for the jury, the Court should either dismiss Count One or direct the government to elect which conspiracy it will seek to prove at trial.

21

Federal Rule of Criminal Procedure 8(a) requires that there be "a separate count for each offense." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980)).  To determine whether a single count violates the rule against duplicity, courts focus on the "unit of prosecution" of the charged offense.  *United States v. Newell*, 658 F.3d 1, 26 n.24 (1st Cir. 2011).  Because the agreement is the "essence" of a conspiracy, *Eppolito*, 543 F.3d at 47, the unit of prosecution for the offense of a conspiracy is the alleged unlawful agreement.  *Rosenblatt*, 554 F.2d at 39 ("the gist of the offense remains the agreement") (quotation marks omitted).  Specifically, a single conspiracy exists only where the participants "mutual[ly] depend[]" on and "assist[]" each other, there is a "common aim or purpose," and "each actor [i]s aware of his part in a larger organization."  *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989) (quotation marks omitted); *see also United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004).

In the context of a RICO conspiracy, the conspiratorial agreement is the "meeting of the minds as to the *affairs of the enterprise*."  *Basciano*, 599 F.3d at 199 (emphasis added).  Thus, in order to allege a *single* RICO conspiracy, an indictment must allege only one "enterprise"— individuals associated in fact who share a "common purpose," *Boyle v. United States*, 556 U.S. 938, 946 (2009)—and that the defendants agreed to participate in specific "*types* of predicate racketeering acts," *i.e.*, "multiple violations of a specific statutory provision that qualifies as RICO racketeering activity," *United States v. Applins*, 637 F.3d 59, 81-82 (2d Cir. 2011) (emphasis added).

Here, Count One, though styled as a single RICO conspiracy charge, in fact alleges more than one "enterprise" and more than one "type" of racketeering activity.  There are (at least) two groups of defendants charged with (at least) two distinct groups of predicate acts:  those charged

22

with the DOS Acts, which involve sex trafficking and extortion, and those charged with the entirely non-coercive and unrelated Non-DOS Acts. While the charged defendants may have associated together as part of NXIVM, there is no "common purpose" that unites, for example, the charged acts of identity theft and money laundering between 2004 and 2010, with the sex trafficking and forced labor allegations beginning in 2015.

That the Indictment alleges the Defendants' "principal purpose" was "to obtain financial and personal benefits" (SI ¶ 4) does not cure the defect. For purposes of duplicity, the "common goal" of the conspiracy cannot be defined so broadly so as to eviscerate the limits to a conspiracy. *See United States v. Swafford*, 512 F.3d 833, 842 n.3 (6th Cir. 2008) ("Defining the common enterprise as simply the illegal sale of drugs would render the conspiracy an essentially limitless enterprise."). Indeed, "[w]hat is required is a shared, *single criminal objective*." *United States v. Carnagie*, 533 F.3d 1231, 1239 (10th Cir. 2008) (emphasis added) (quotation marks omitted). Thus, "personal enrichment"—a permissible lawful goal and the purpose of almost all lawful business entities—is insufficient to establish a single RICO enterprise. *Cf. Cohen*, 993 F. Supp. 2d at 426 ("[RICO's] relatedness requirement would be meaningless if two acts were 'related' just because they tended to enrich the defendant").

Nor is there any overlap or mutual dependence among the Defendants charged in the two distinct (alleged) patterns of racketeering activity. *Eppolito*, 543 F.3d at 47-48 (criminal activity with "two or more . . . spheres of operation" constitutes a single conspiracy only if there is "mutual dependence and assistance") (quotation marks omitted). As discussed in detail above, the DOS Acts and Non-DOS Acts are of a different character, involve separate Defendants (apart from Raniere), generally occurred during different time periods, and generally occurred in different places. There is no allegation that the success of the DOS Acts depended on the Non-

23

DOS acts or vice versa.  Beyond that, there is no allegation that the individual defendants "mutual[ly] depende[d]" on or "assist[ed]" one another.  *Vanwort*, 887 F.2d at 383.

Finally, that Raniere is charged with both DOS Acts and Non-DOS Acts is of no moment.  One person's involvement across multiple conspiracies does not merge otherwise separate conspiracies into one.  In *Kotteakos v. United States*, 328 U.S. 750 (1946), the seminal multiple conspiracy case, several groups of defendants independently submitted fraudulent loans and were connected only through their separate dealings with the same agent.  *Id.* at 754-55.  The Supreme Court made clear that, under those circumstances, several conspiracies existed because there was no connection or overlap among the defendants—the "separate spokes"— despite the fact that they met "at a common center."  *Id.* at 755.  A single conspiracy requires "the rim of the wheel to enclose the spokes"—in other words, interdependence among all of the co-conspirators.  *Id.*; *see also United States v. Marcus Schloss & Co.*, 710 F. Supp. 944, 951 (S.D.N.Y. 1989) ("It is, of course, well settled that the spokes cannot be characterized as co-conspirators with each other in a single conspiracy solely because they share a common source at the center.").  Here, there is no unifying rim that links all of the Defendants other than their connection to NXIVM, a vast collection of individuals and businesses that is not itself charged as a RICO enterprise and does not establish interdependence in criminal activity.  *See Carnagie*, 533 F.3d at 1238-39 (interdependence requires "a *shared*, single criminal objective, not just similar or parallel objectives between similarly situated people" (quotation marks omitted)).

While the question of whether there is more than one conspiracy is often a question reserved until the close of evidence, *see e.g.*, *Vanwort*, 887 F.2d at 383, it warrants scrutiny at the pretrial phase where, as here, the duplicitous charge prejudices the defendants.  *Cf. United States v. Viserto*, 596 F.2d 531, 538 (2d Cir. 1979) (where the "duplicitous character of the count

24

appears on the face of the indictment," defendants should move "before trial to dismiss the indictment."); *United States v. Marlinga*, No. CRIM 04-80372, 2005 WL 513494, at *5-7 (E.D. Mich. Feb. 28, 2005) (granting defendant's motion to compel the government to reformulate the duplicitous conspiracy count); *United States v. Munoz-Franco*, 986 F. Supp. 70 (D.P.R. 1997) (dismissing duplicitous conspiracy count); *Marcus Schloss & Co.*, 710 F. Supp. at 952 ("The requirement that a single conspiracy be alleged in the indictment permits pre-trial judicial scrutiny of the allegations' sufficiency.").

As to Raniere, the duplicitous Indictment creates the risk of a non-unanimous jury verdict; he could be found guilty even if not all twelve jurors agreed as to which conspiracy the government had proved. This raises double jeopardy concerns and creates a particular problem for sentencing, given that one scheme carries far more severe sentencing consequences than the other. Moreover, as a general matter, combining more than one conspiracy in one count creates a risk "that jurors will be misled into attributing guilt to a particular defendant based on evidence presented against others who were involved in a different and separate conspiratorial scheme." *United States v. Brandon*, 17 F.3d 409, 450 (1st Cir. 1994); *see also United States v. Bowline*, 593 F.2d 944, 947-48 (10th Cir. 1979) (where all defendants would be "subjected to prejudice as a result of being tried in an atmosphere where the acts and conspiracies of others [would be] introduced," dismissal of the duplicitous count is appropriate). The risk of prejudice is especially acute here, where the evidence relating to the DOS Acts is sensational and would overwhelm and taint a jury's consideration of an individual implicated only in the Non-DOS Acts. Furthermore, by charging multiple conspiracies as one, the government creates a particular kind of evidentiary challenge for the Court. While co-conspirator statements are conditionally admissible against a defendant subject to independent proof that the defendant at some point was a member of

25

the *same* conspiracy that generates the statement, *see* Fed. R. Evid. 104(b), 801(d)(2)(E), there is a substantial risk of mistrial if at the close of evidence, the Court finds there was in fact two conspiracies, rather than one.  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

Fundamentally, the Defendants have a "right not to be tried en masse for the conglomeration of distinct and separate offenses committed by others."  *Kotteakos*, 328 U.S. at 775.  Because the indictment improperly combines at least two different schemes under the umbrella of one RICO conspiracy charge, Count One should be dismissed on the grounds of duplicity, *see Munoz-Franco*, 986 F. Supp. at 72, or, in the alternative, the government should be required to elect which RICO conspiracy to prove at trial, *see e.g.*, *United States v. Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (duplicity cured if "government elects between the charges in the offending count"); *United States v. Shumpert Hood*, 210 F.3d 660, 663 (6th Cir. 2000) (same); *United States v. Goodman*, 285 F.2d 378, 380 (5th Cir. 1960) (same).

## III.   COUNT SEVEN AND COUNT ONE, OR AT LEAST SEVERAL OF ITS PREDICATE ACTS, MUST BE DISMISSED FOR FAILURE TO SPECIFY UNDERLYING OFFENSES OR ALLEGE THEIR ESSENTIAL ELEMENTS

As explained above, the alleged RICO conspiracy in Count One is predicated on a pattern of federal crimes, known as predicate acts or racketeering acts.  Most of these predicate acts, in turn, charge violations of statutes that cross-reference or incorporate other provisions of federal law.  For example, the identity-theft statute prohibits misuses of means of identification to further a *separate* "violation of Federal law."  18 U.S.C. § 1028(a)(7).  And the money-laundering statute prohibits financial transactions to promote "specified unlawful activity," which is defined by a list of *other* federal crimes.  18 U.S.C. § 1956(a)(2)(A), (c)(7).  Crimes like these are predicated on a defendant's commission or intent to commit other, underlying offenses

26

created by different statutes ("Underlying Offenses").  Where the charged crimes are RICO

predicate acts (which is true of identity theft and money laundering), there are three tiers of

analysis:  (1) the RICO count (charged under the RICO statute) is predicated on (2) acts of

racketeering (charged under other statutes), and those predicate acts of racketeering are,

themselves, predicated on (3) Underlying Offenses (charged under yet another set of statutes).

      Here, that is true of many of the predicate acts, as well as Count Seven, which is virtually

identical to Act 10.  The Indictment, however, fails to plead the elements of the Underlying

Offenses, and it often fails even to identify *which* of several possible Underlying Offenses are

charged.  The following charges are deficient for this reason:

- **Act 1-A** charges a conspiracy to commit identity theft in violation of 18 U.S.C.
  § 1028(a)(7), which criminalizes identity theft committed in furtherance of some other
  violation of federal law (*i.e.*, an Underlying Offense).  The Indictment identifies the
  Underlying Offense as "bringing in, transporting and harboring an alien, in violation of [8
  U.S.C. §] 1324(a)(1)(A)."  (SI ¶ 17).  However, "[b]ringing in and harboring certain
  aliens" is merely the caption of § 1324, and § 1324(a)(1)(A) contains several paragraphs
  listing at least six distinct crimes.  The Indictment does not identify any specific crime or
  even narrow down the potential candidates, and it certainly does not plead their elements.

- **Act 1-B** charges a conspiracy to unlawfully possess an identification document "with the
  intent that such document be used to defraud the United States" in violation of 18 U.S.C.
  § 1028(a)(4).  (SI ¶ 18).  The Indictment does not, however, allege the nature of this
  underlying fraud or plead the elements of fraud.[10]

- **Acts 2-A, B, and C and Act 4** also involve identity theft under § 1028(a)(7), allegedly in
  furtherance of "(1) intercepting wire and electronic communications, in violation of [18
  U.S.C. §] 2511; and (2) unlawfully accessing wire and electronic communications, in
  violation of [18 U.S.C. §] 2701."  (SI ¶¶ 19-21, 23).  But §§ 2511 and 2701 cover a
  multitude of potential crimes related to the interception and access of communications,

---

[10] In discussing this statute, the House Judiciary Committee opined that "possession with the
intent to commit any offense that would be subsumed under the term 'defraud the United States'
would be covered," such as "an offense under 18 U.S.C. 1001."  H.R. Rep. No. 97-802, at 11
(1982), *reprinted at* 1982 U.S.C.C.A.N. 3519, 3529.

*see, e.g.*, 18 U.S.C. § 2511(1)(a)-(e), and the Indictment does not identify them or plead their elements.

- **Act 5-A** charges, under 8 U.S.C. § 1324(a)(1)(A)(iv), encouraging and inducing the entry and residence of an alien knowing that it would be "in violation of law." (SI ¶ 24). The Indictment does not specify the underlying violation of law.

- **Act 5-B** charges money laundering under 18 U.S.C. § 1956(a)(2)(A), which requires the "the intent to promote the carrying on of specified unlawful activity." The "specified unlawful activity" alleged in Act 5-B is "bringing in and harboring an alien for financial gain, in violation of [8 U.S.C. §] 1324." (SI ¶ 25). Unsurprisingly, however, § 1324 covers a wide variety of crimes—including, but not limited to, the several § 1324(a)(1)(A) crimes potentially charged in Act 1-A. The Indictment does not specify any crimes or plead their elements.[11]

- **Act 6-A** charges trafficking a person under 18 U.S.C. § 1590 for labor and services in violation of other statutes, "to wit: (1) document servitude, in violation of [18 U.S.C. §] 1592; and (2) forced labor, in violation of [18 U.S.C. §] 1589." (SI ¶ 26). **Act 6-B** charges document servitude under § 1592 in furtherance of "one or more violations of [18 U.S.C. §§] 1589 and 1590." (SI ¶ 27). Again, each of these provisions covers several possible crimes, and the elements of these underlying crimes are left unpled.

- **Act 10 and Count Seven** charge a conspiracy to commit identity theft under 18 U.S.C. § 1028(a)(7), purportedly in furtherance of "tax evasion, in violation of [26 U.S.C. §] 7201." (SI ¶¶ 34, 40). The Indictment does not plead the elements of tax evasion.

For the reasons set forth below, these allegations are patently insufficient and fail to satisfy the requirements of the Fifth and Sixth Amendments. Count Seven and the predicate acts listed above (the "Listed Acts") must be dismissed.[12] And because the dismissal of a Listed Act makes it impossible to know whether the grand jury would have charged the remaining predicate acts as a RICO pattern, Count One must be dismissed in its entirety. *See* Point I.B *supra* (citing *Basciano*, 599 F.3d at 206).

---

[11] Again, the allegation of "bringing in and harboring an alien" merely refers to the caption of § 1324 ("Bringing in and harboring certain aliens"). The allegation regarding "financial gain" potentially refers to the penalty provisions of the statute, *see* 8 U.S.C. § 1324(a)(1)(B)(i), (a)(2)(B)(ii), but does nothing to limit the range of crimes potentially charged in the Indictment.

[12] Notably, all of the predicate acts naming Clare Bronfman (Acts 2-A, 2-C, 5-A, 5-B, and 10) and Kathy Russell (Acts 1-A, 1-B, 2-A, and 2-B) suffer from these deficiencies.

**A.    The Indictment Is Not Specific Enough To Provide Fair Notice Or Identify The Grand Jury's Charges**

First, virtually all of the Listed Acts must be dismissed because they refer to broad categories of Underlying Offenses without specifying which ones are charged.  For these Listed Acts, it is impossible to tell which Underlying Offenses the grand jury considered or which ones the government will seek to prove at trial.

The Sixth Amendment requires indictments to give defendants fair notice of the charges against them, and the Fifth Amendment requires indictments to bind the government to the charges and evidence it presented to the grand jury.  *See Russell*, 369 U.S. at 763-64; *Walsh*, 194 F.3d at 44 (2d Cir. 1999).  It is therefore understandable that "where an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense."  *Pirro*, 212 F.3d at 93 (op. of Gibson, J.).  Citing the relevant statute, however, does not necessarily identify that offense.  "If a single statute sets forth several different offenses, a pleading that does not indicate which crime the defendant allegedly committed is insufficient."  *Descamps v. United States*, 570 U.S. 254, 272 n.4 (2013) (alterations omitted) (quoting 1 C. Wright & A. Leipold, Federal Practice and Procedure: Criminal § 125 (4th ed. 2008)); *see also id.* at 272 ("[A]n indictment . . . which charges the person accused . . . with being guilty of one or of another of several offences, would be destitute of the necessary certainty, and would be wholly insufficient") (quoting *The Confiscation Cases,* 20 Wall. 92, 104 (1874)).

For example, in *United States v. Thompson*, 141 F. Supp. 3d 188 (E.D.N.Y. 2015), the Court dismissed several counts of an indictment even though they tracked the language of several statutes prohibiting the interstate transportation of persons to have them engage in "sexual activity for which any person can be charged with a criminal offense."  *See id.* at 192-98,

29

202-03.  The generic reference to "criminal" "sexual activity" in these statutes "encompass[ed] a multitude of crimes" ranging from statutory rape to prostitution.  *Id.* at 196 (quotation marks omitted).  As a result, quoting that statutory language in the indictment "without a specific description of the underlying conduct" only served to "describe[] . . . a type of crime" and "not, as required, a particular criminal act."  *Id.* (quotation marks omitted).

Similarly, in *United States v. Awan*, 459 F. Supp. 2d 167 (E.D.N.Y. 2006), the Court dismissed counts of an indictment that charged the defendant under 18 U.S.C. § 2339A with providing and conspiring to provide "material support" to a § 956 conspiracy to commit "murder."  *Id.* at 173-76.  Although the indictment tracked the language of § 2339A, it was deficient in two respects.  First, the "generic expression 'material support'" did not "specify[] which of a variety of activities, any one of which would be criminal, that the defendant must defend against or which the grand jury considered."  *Id.* at 175.  Second, the reference to the underlying "murder" conspiracy was inadequate as well.  "[W]ithout any specific allegations about the alleged incident, the fact that murder . . . includes both first and second degree murder mean[t] that one c[ould] not be certain as to the basis of the grand jury's action."  *Id.* at 176.

The Indictment here suffers from the same deficiencies.  In many of the predicate acts, the Indictment alleges that Defendants violated or intended to violate broad, multi-pronged statutory provisions—and sometimes entire sections of the U.S. Code—without identifying which of several possible Underlying Offenses is charged.  (SI ¶¶ 17, 19-21, 23, 25-27 (Acts 1-A, 2-A, 2-B, 2-C, 4, 5-B, 6-A, 6-B)).  This "citation to broad [statutes] covering several distinct offenses does not sufficiently allege a particular criminal act."  *Thompson*, 141 F. Supp. 3d at 197.  Indeed, "a non-clairvoyant reader cannot possibly ascertain the substance of the government's accusations from the face of the charging instrument."  *United States v. Hillie*, 227

30

F. Supp. 3d 57, 72 (D.D.C. 2017).  These predicate acts provide no assurance that the grand jury

considered any specific Underlying Offense, and they provide no notice regarding which

Underlying Offenses the government will seek to prove.  Accordingly, they must be dismissed.

*See Thompson*, 141 F. Supp. 3d at 198; *Awan*, 459 F. Supp. 2d at 176.

Act 1-B and Act 5-A must be dismissed as well, for similar reasons.  Act 1-B charges a

conspiracy to violate 18 U.S.C. § 1028(a)(4) by possessing a false identification document for

the purpose of "defraud[ing] the United States."  (SI ¶ 18).  It fails, however, to allege the fraud

offense that the Defendants intended to commit against the United States.  *See* H.R. Rep. No. 97-

802, at 11 (1982) (explaining that § 1028(a)(4) covers a variety of possible fraud offenses).  In

the analogous § 371 context, "an indictment that charge[s] only 'conspiracy to defraud the

United States,' without more, [i]s insufficient to define the central nature of the conspiratorial

plan, and thus [i]s deficient."  *United States v. Attanasio*, 870 F.2d 809, 816 (2d Cir. 1989)

(citing *Rosenblatt*, 554 F.2d at 41).  There is no reason to treat § 1028(a)(4) any differently, and

Act 1-B should therefore be dismissed.

Act 5-A charges, under 8 U.S.C. § 1324(a)(1)(A)(iv), the inducement of an alien to enter

the United States "in violation of law," without describing that violation.  (SI ¶ 24).  This is

insufficient because "[i]f a statute makes it a crime to engage in certain conduct 'contrary to

law,' it is not enough simply to cite that statute and recite in the pleading that the act was

contrary to law—the pleading must show what other law was violated."  *Thompson*, 141 F. Supp.

3d at 195 (quotation marks omitted) (collecting cases).  As Act 5-A does not allege "what other

law was violated," *id.*, it must be dismissed.

31

### B.    The Charges Lack Essential Elements

In addition, Count Seven and all of the Listed Acts must be dismissed because they fail to plead the elements of the Underlying Offenses on which they rely.

To comport with the Constitution, an indictment must include all of the elements of the charged offenses.  *See supra* at 12.  This applies, as well, to the elements of other offenses on which the charged crimes are predicated, such as the Underlying Offenses here.  These elements are "implicit in the statute" that incorporates them by reference, and where "the indictment tracks the language of the statute and fails to allege the[se] implicit element[s] explicitly, the indictment fails to allege an offense."  *Foley*, 73 F.3d at 488; *Pirro*, 212 F.3d at 93 (op. of Gibson, J.).

The Second Circuit's recent decision in *United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017), is instructive.  The defendants were charged with, *inter alia*, conspiracy to commit a drug-related murder under 21 U.S.C. § 848(e)(1)(A).  That statute criminalizes conspiracies to commit murder while "engaging in" violations of a separate statute, 21 U.S.C. § 841(b)(1)(A).[13]  A violation of § 841(b)(1)(A) was therefore an Underlying Offense on which the murder-conspiracy charge was predicated.  Section 841(b)(1)(A), in turn, prohibits drug offenses, including conspiracies, involving certain drug quantities—in the case of cocaine base, at least 280 grams.  An indictment charging a violation of § 841(b)(1)(A) must therefore allege the relevant drug quantity.  *See Dupree*, 870 F.3d at 71-72; *Gonzalez*, 686 F.3d at 129-33.

The relevant count in *Dupree*, as noted above, was not a drug conspiracy under § 841(b)(1)(A)—it was a murder conspiracy under § 848(e)(1)(A), which was predicated on a drug conspiracy under § 841(b)(1)(A).  In the indictment, that murder-conspiracy count did not

---

[13] Technically, § 848 and § 841 both set forth substantive offenses, and § 846 criminalizes conspiracies to violate those statutes.  Like the Second Circuit, we refer to § 848 and § 841, without further reference to § 846, for ease of reading.  *See Dupree*, 870 F.3d at 71-72.

allege any drug quantity for the underlying drug conspiracy. Instead, it merely charged the defendants with conspiring to commit murder "while engaged in . . . [a] conspiracy to distribute cocaine base" that was "punishable under [§] 841(b)(1)(A)." *Dupree*, 870 F.3d at 71-72. The Second Circuit held that the indictment was "defect[ive]" and "erro[neous]" for failing to allege a required "factual predicate" of the drug conspiracy underlying the murder conspiracy. *Id.* at 72. The "indictment had to do more than reference §§ 841(b)(1)(A) and 848(e)(1)(A) to allege the essential facts." *Id.* In other words, an entire count of the indictment was deficient because it was predicated on an Underlying Offense, but the indictment omitted an essential element of that Underlying Offense.[14]

Here, as in *Dupree*, the Indictment alleges that the Defendants committed crimes that depend on Underlying Offenses, where the Underlying Offenses are identified, at most, by a generic label and statutory citation. (*E.g.*, SI ¶¶ 34, 40 (conspiracy to commit identity theft, allegedly in furtherance of "tax evasion, in violation of [26 U.S.C. §] 7201")). The generic label, however, does not set forth the elements of the offense. Furthermore, the "mere citation of a statutory section" "adds no factual information as to the act itself" and does not establish that "the grand jury considered the essential element[s]" embodied in the statute. *Gonzalez*, 686 F.3d at 129 (quotation marks and alterations omitted); *see also id.* at 132 ("The text of an indictment . . . gives no . . . assurance that the grand jurors considered or were advised as to the terms of a

---

[14] The Court ultimately declined to reverse the conviction because the error did not satisfy the "plain error" standard applicable to unpreserved claims raised for the first time on appeal. *Id.* That standard obviously does not apply here. *See United States v. McGhie*, No. 04-CR-058 (NG), 2012 WL 12951537, at *1 (E.D.N.Y. May 25, 2012) ("plain error standard" applies to "post-conviction and appellate review of [unpreserved] trial errors").

statutory section that is referred to only by a naked number."); *Dupree*, 870 F.3d at 72.  For

example, the Indictment does not establish that the grand jury found that:

- in Acts 1-A and 5-B, the Defendants knew that the alien entered "at a place other than a designated port of entry" or "c[a]me to, entered, or remain[ed] in the United States in violation of law," *e.g.*, 8 U.S.C. § 1324(a)(1)(A)(i)-(iii);[15]

- in Acts 2-A, B, and C and Act 4, the Defendants "intentionally" acquired the "contents" of communications using a "device," 18 U.S.C. §§ 2510(4), 2511(1)(a), or "intentionally" accessed communications "in electronic storage" either "without authorization" or by "exceed[ing] an authorization," *id.* § 2701(a);

- in Act 10 and Count Seven, the Defendants' purported tax evasion involved "(1) a substantial tax deficiency; (2) willfulness, meaning the intentional violation of a known legal duty; and (3) an affirmative act 'with the intent to evade or defeat a tax or payment of it.'"  *United States v. Coplan*, 703 F.3d 46, 72 (2d Cir. 2012).

The Listed Acts and Count Seven therefore violate the Grand Jury Clause of the Fifth

Amendment and must be dismissed.  *See Gonzalez*, 686 F.3d at 133 (precluding reliance on

charged statute where the "indictment was insufficient" to plead a violation of that statute);

*United States v. Berlin*, 472 F.2d 1002, 1007-08 (2d Cir. 1973) (counts with missing element

"should have been dismissed by the trial court"); *Ivic*, 700 F.2d at 65, 70 (dismissing RICO

count where indictment lacked essential element).  And as explained above, the dismissal of any

Listed Act requires dismissal of Count One in its entirety.  *See supra* at 28.

## IV.    COUNT SEVEN MUST BE DISMISSED FOR LACK OF VENUE

Count Seven charges Bronfman and Raniere with a conspiracy to commit identity theft

that, according to the Indictment, took place only "within the Northern District of New York."

---

[15] Indeed, the Indictment's generic labels for these offenses describe conduct that could easily be lawful depending on the circumstances (*e.g.*, "bringing in and harboring an alien for financial gain," SI ¶ 25, which corporations do all the time).

(Dkt. 50 ¶ 40).  This purported crime therefore cannot be prosecuted in the Eastern District of New York, and Count Seven must be dismissed.

"Proper venue in criminal proceedings was a matter of [such] concern to the Nation's founders" that "[t]he Constitution twice safeguards the defendant's venue right." *United States v. Cabrales*, 524 U.S. 1, 6 (1998).  Article III provides that the "Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2, cl. 3, and the Sixth Amendment requires trial "by an impartial jury of the State and district wherein the crime shall have been committed," *id.* amend. VI.  The Federal Rules "echo[] the[se] constitutional commands," *Cabrales*, 524 U.S. at 6, and instruct that, unless a statute or rule provides otherwise, "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.

"Where venue is challenged on a pre-trial motion to dismiss," the government must "show[] that the indictment alleges facts sufficient to support venue." *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005)); *see also United States v. Percoco*, No. 16-CR-776 (VEC), 2017 WL 6314146, at *16 (S.D.N.Y. Dec. 11, 2017) (indictment must "allege with specificity that the charged acts support venue in this district") (quotation marks omitted). "Because 'venue must be proper with respect to each count,'" the Court must "separately review each count." *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989)).  If the indictment does not adequately allege venue as to a particular count, that count must be dismissed.  *See Cabrales*, 524 U.S. at 3-5 (affirming pretrial dismissal of money laundering count in Western District of Missouri where "[t]he laundering alleged in the indictment occurred entirely in Florida").

Count Seven does not just fail to allege that venue is proper in the Eastern District—it affirmatively alleges that the crime took place only in the Northern District.  It is difficult to imagine a case in which the government has more clearly pled itself out of venue.  The Court must therefore dismiss Count Seven.

## V.    COUNT ONE IS UNCONSTITUTIONALLY VAGUE

Concurring in the judgment in *H.J. Inc. v. Northwestern Bell Telephone Co.*, Justice Scalia opined that RICO's "pattern" requirement was so vague that the Supreme Court was "unable to provide an interpretation" that gave sufficient "guidance concerning its application." 492 U.S. at 254-55.  "That situation is bad enough with respect to any statute, but it is intolerable with respect to RICO," which has a broad reach and imposes severe penalties.  *Id.* at 255. Accordingly, Justice Scalia predicted that a "constitutional challenge" to RICO might succeed. *Id.* at 255-56.  Since then, the Second Circuit has rejected several vagueness challenges to RICO. *See, e.g.*, *United States v. Coiro*, 922 F.2d 1008, 1016-17 (2d Cir. 1991).  However, the allegations in this case do not even remotely suggest how the charged acts could constitute a pattern, and no person engaged in this alleged activity could have foreseen such a conclusion. The line between legal and illegal conduct cannot be based on "guesswork and intuition." *Johnson v. United States*, 135 S. Ct. 2551, 2559 (2015).  While this Court is bound to hold otherwise, Count One is unconstitutionally vague, and Defendants preserve this objection in the event of an appeal.

## VI.    ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO A BILL OF PARTICULARS

Ms. Bronfman, Ms. Russell, and Nancy Salzman are entitled to a bill of particulars in the event that any of the counts against them survive their motion to dismiss.  On August 14, 2018, Defendants requested further particulars from the government in accordance with Local Criminal

Rule 16.1.  (Declaration of Kathleen E. Cassidy ("Cassidy Decl.") ¶ 2, Ex. A).  The government

has refused to provide any further particulars beyond identifying the names of the Jane and John

Does in the Indictment, even though the Indictment provides essentially no information

concerning the charged offenses.  (Cassidy Decl. ¶ 3).  The Court designated this case as

complex because it "involves voluminous and complex discovery," and "[t]he crimes alleged in

the indictment relate to over a dozen separate schemes and include a racketeering conspiracy that

spanned over fifteen years."  (Dkt. 138 at 2-3).  The same factors compel the government to

provide a bill of particulars.

"[W]hen the Government charges criminal offenses under statutes as broad as RICO[,]" it

has "an obligation to particularize the nature of the charge to a degree that might not be

necessary in the prosecution of crimes of more limited scope."  *United States v. Davidoff*, 845

F.2d 1151, 1154 (2d Cir. 1988).  "Since the indictment provide[s] not a shred of detail, the

defendant[s] [are] entitled to be otherwise apprised of the conduct that [they are] alleged to have

undertaken in furtherance of this multi-faceted, if not multiple, conspiracy."  *United States v.*

*Barnes*, 158 F.3d 662, 665 (2d Cir. 1998); *see also id.* at 666 (bill of particulars "is appropriate

where a conspiracy count covers a complex series of events over a number of years, but provides

only the bare bones of the charge").

Specifically, Defendants are entitled to know how (that is, by which actions) they

allegedly committed the crimes charged in each predicate act.  *Cf. United States v. Gasperini*,

No. 16-CR-441 (NGG), 2017 WL 2399693, at *11 (E.D.N.Y. June 1, 2017) (Garaufis, J.)

(requiring government to disclose the "information allegedly obtained" through unauthorized

computer access); *United States v. Wilson*, 493 F. Supp. 2d 364, 374-75 (E.D.N.Y. 2006)

(Garaufis, J.) (requiring government to provide particulars regarding the defendant's "alleged

role in the conspiracy"). Discovery is not an adequate substitute for a bill of particulars because the government has "provid[ed] mountains of documents to defense counsel" with little guidance as to which ones are relevant. *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987).

Similarly, for the fair-notice reasons articulated in Point III above, Defendants are entitled to know the specific Underlying Offenses the government intends to prove at trial. Defendants cannot meaningfully prepare to defend against dozens of unspecified crimes, and discovery will not reveal which statutes the government intends to invoke.

Ms. Bronfman, Ms. Russell, and Nancy Salzman are also entitled to the names of their alleged co-conspirators. The relevant factors tip decisively in favor of disclosure, given the alleged 15-year duration and expansive nature of the charged RICO conspiracy, and the fact that these Defendants are not accused of any acts of violence. *Cf. Gasperini*, 2017 WL 2399693, at *12 (Garaufis, J.).

Finally, if Count Seven is not dismissed (which it should be), Defendants are entitled to a "bill of particulars detailing the basis of venue in this district" because "the Indictment fails to provide any guidance as to which acts, if any, were committed in the [district]." *United States v. Szur*, No. S5 97 CR 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998). The government should also be required to specify the basis for the tax evasion charge. *See United States v. O'Connor*, 237 F.2d 466, 476 n.10 (2d Cir. 1956) ("Bills of particulars have been quite freely granted in . . . tax evasion cases.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Counts One and Seven or, at a

minimum, order the government to provide the requested bill of particulars.

Dated:          November 16, 2018
                New York, New York

Respectfully submitted,


/s/ Justine Harris                                  /s/ Alexandra A.E. Shapiro
Justine Harris                                      Alexandra A.E. Shapiro
Amanda Ravich                                       Fabien M. Thayamballi
Sher Tremonte LLP                                   Shapiro Arato LLP
90 Broad Street, 23rd Floor                         500 Fifth Avenue, 40th Floor
New York, New York 10004                            New York, New York 10110
(212) 202-2600                                      (212) 257-4880

*Attorneys for Defendant Kathy Russell*             Susan Necheles
                                                    Kathleen E. Cassidy
/s/ Robert Soloway                                  Hafetz & Necheles LLP
David Stern                                         10 East 40th Street, 48th Floor
Robert Soloway                                      New York, New York 10016
Rothman, Schneider, Soloway & Stern, LLP            (212) 997-7400
100 Lafayette Street, Suite 501
New York, New York 10013                            *Attorneys for Defendant Clare Bronfman*
(212) 571-7700

*Attorneys for Defendant Nancy Salzman*

39