UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -  v. -

KEITH RANIERE, CLARE BRONFMAN,
ALLISON MACK, KATHY RUSSELL,
LAUREN SALZMAN, and NANCY SALZMAN,

                 Defendants.

No. 18-cr-204 (NGG)

**ORAL ARGUMENT REQUESTED**

**Date of service:  December 28, 2018**

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CLARE BRONFMAN, KATHY RUSSELL, AND NANCY SALZMAN'S MOTION TO DISMISS THE INDICTMENT OR IN THE ALTERNATIVE <u>FOR A BILL OF PARTICULARS</u>

Justine Harris
Amanda Ravich
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Defendant Kathy Russell*

David Stern
Robert Soloway
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-7700

*Attorneys for Defendant Nancy Salzman*

Alexandra A.E. Shapiro
Fabien M. Thayamballi
Shapiro Arato LLP
500 Fifth Avenue, 40th Floor
New York, New York 10110
(212) 257-4880

Susan Necheles
Kathleen E. Cassidy
Hafetz & Necheles LLP
10 East 40th Street, 48th Floor
New York, New York 10016
(212) 997-7400

*Attorneys for Defendant Clare Bronfman*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I.    COUNT ONE MUST BE DISMISSED FOR DEFECTS IN ITS PREDICATE ACTS, AND COUNT SEVEN MUST BE DISMISSED ON SIMILAR GROUNDS .............. 2

    A.    The Dismissal Of Any Predicate Act Requires The Dismissal Of Count One ....................................................................................... 2

    B.    Several Predicate Acts Fail To Identify Their "Underlying Offenses" ............ 2

    C.    Several Predicate Acts And Count Seven Fail To Allege The Essential Elements Of Their "Underlying Offenses" ....................................................... 7

    D.    Act 5-A Relies On An Unconstitutional Statute .................................................. 8

II.    COUNT ONE MUST BE DISMISSED FOR FAILURE TO ALLEGE A PATTERN OF RACKETEERING ACTIVITY ................................................................. 9

    A.    The Government Misunderstands The Standard For Pleading Relatedness ..... 9

    B.    Count One Should Be Dismissed For Lack Of Vertical Relatedness ............. 11

    C.    Count One Should Be Dismissed For Lack Of Horizontal Relatedness ........ 12

III.    ALTERNATIVELY, COUNT ONE IS IMPERMISSIBLY DUPLICITOUS ............. 16

IV.    COUNT SEVEN MUST BE DISMISSED FOR LACK OF VENUE .......................... 18

V.    COUNT ONE IS UNCONSTITUTIONALLY VAGUE .............................................. 18

VI.    DEFENDANTS ARE ENTITLED TO A BILL OF PARTICULARS ........................ 19

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Apprendi v. New Jersey,*
   530 U.S. 466 (2000) ................................................................................. 8

*Descamps v. United States,*
   570 U.S. 254 (2013) ................................................................................. 4

*Franklin Cty. Employment & Training Admin. v. Donovan,*
   707 F.2d 41 (2d Cir. 1983) ................................................................. 2, 9

*Gov't of Virgin Islands v. Pemberton,*
   813 F.2d 626 (3d Cir. 1987) ................................................................... 4

*Johnson v. United States,*
   135 S. Ct. 2551 (2015) .......................................................................... 19

*Leocal v. Ashcroft,*
   543 U.S. 1 (2004) .................................................................................. 12

*Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,*
   879 F.2d 10 (2d Cir. 1989) .............................................................. 9, 10

*Reich v. Lopez,*
   858 F.3d 55 (2d Cir. 2017) ............................................. 12, 13, 14, 15

*Russell v. United States,*
   369 U.S. 749 (1962) ................................................................................ 6

*United States v. Abakporo,*
   959 F. Supp. 2d 382 (S.D.N.Y. 2013) ................................................ 16

*United States v. Applins,*
   637 F.3d 59 (2d Cir. 2011) ................................................................. 5, 6

*United States v. Attanasio,*
   870 F.2d 809 (2d Cir. 1989) ................................................................. 4

*United States v. Awan,*
   459 F. Supp. 2d 167 (E.D.N.Y. 2006) .................................................. 4

*United States v. Barnes,*
   158 F.3d 662 (2d Cir. 1998) ................................................................ 19

*United States v. Basciano,*
   599 F.3d 184 (2d Cir. 2010) ............................................................. 2, 9

*United States v. Bergrin,*
    650 F.3d 257 (3d Cir. 2011) ................................................................. 10, 15

*United States v. Berlin,*
    707 F. Supp. 832 (E.D. Va. 1989) ................................................................. 11

*United States v. Bronson,*
    No. 05-CR-714 (NGG), 2007 WL 2455138 (E.D.N.Y. Aug. 23, 2007) ................................. 6

*United States v. Burns,*
    990 F.2d 1426 (4th Cir. 1993) ................................................................. 18

*United States v. Cuong Gia Le,*
    310 F. Supp. 2d 763 (E.D. Va. 2004) ................................................................. 10, 15

*United States v. Crysopt Corp.,*
    781 F. Supp. 375 (D. Md. 1991) ................................................................. 11

*United States v. D'Amico,*
    734 F. Supp. 2d 321 (S.D.N.Y. 2010) ................................................................. 6

*United States v. Dellosantos,*
    649 F.3d 109 (1st Cir. 2011) ................................................................. 17

*United States v. Dupree,*
    870 F.3d 62 (2d Cir. 2017) ................................................................. 7

*United States v. Eppolito,*
    543 F.3d 25 (2d Cir. 2008) ................................................................. 15, 16

*United States v. Eury,*
    No. 1:14CR39-1, 2015 WL 1861807 (M.D.N.C. Apr. 23, 2015) ................................. 16

*United States v. Foley,*
    73 F.3d 484 (2d Cir. 1996) ................................................................. 8, 10

*United States v. Fruchter,*
    104 F. Supp. 2d 289 (S.D.N.Y. 2000) ................................................................. 15

*United States v. Ganim,*
    225 F. Supp. 2d 145 (D. Conn. 2002) ................................................................. 11, 15

*United States v. Gasperini,*
    No. 16-CR-441 (NGG), 2017 WL 2399693 (E.D.N.Y. June 1, 2017) ................................. 20

*United States v. Giovannelli,*
    No. 01 CR. 749 (JSR), 2004 WL 48869 (S.D.N.Y. Jan. 9, 2004) ................................. 15

*United States v. Glecier,*
   923 F.2d 496 (7th Cir. 1991) ............................................................. 3, 5, 6

*United States v. Gotti,*
   42 F. Supp. 2d 252 (S.D.N.Y. 1999) ............................................................ 15

*United States v. Marlinga,*
   No. CRIM 04-80372, 2005 WL 513494 (E.D. Mich. Feb. 28, 2005) ................ 17

*United States v. Masters,*
   924 F.2d 1362 (7th Cir. 1991) ..................................................................... 15

*United States v. Motz,*
   652 F. Supp. 2d 284 (E.D.N.Y. 2009) ......................................................... 18

*United States v. Napout,*
   No. 15-CR-252 (PKC), 2017 WL 4083571 (E.D.N.Y. Sept. 13, 2017) .................. 12

*United States v. Ortiz,*
   2013 WL 6842541 (N.D. Cal. Dec. 27, 2013) .............................................. 10

*United States v. Palumbo Bros.,*
   145 F.3d 850 (7th Cir. 1998) ..................................................................... 10

*United States v. Pirro,*
   212 F.3d 86 (2d Cir. 2000) ........................................................................... 4

*United States v. Rastelli,*
   870 F.2d 822 (2d Cir. 1989) ....................................................................... 16

*United States v. Shulaya,*
   No. 17-CR-0350 (KBF), 2017 WL 6513690 (S.D.N.Y. Dec. 20, 2017) .................. 8

*United States v. Sineneng-Smith,*
   910 F.3d 461 (9th Cir. 2018) .................................................................... 8, 9

*United States v. Starks,*
   515 F.2d 112 (3d Cir. 1975) .................................................................. 17, 18

*United States v. Sturdivant,*
   244 F.3d 71 (2d Cir. 2001) ......................................................................... 17

*United States v. Sutcliffe,*
   244 F.3d 71 (2d Cir. 2001) ........................................................................... 8

*United States v. Thomas,*
   444 F.2d 919 (D.C. Cir. 1971) ..................................................................... 4

*United States v. Thompson*,
   141 F. Supp. 3d 188 (E.D.N.Y. 2015) ............................................................... 4, 5

*United States v. Thompson*,
   896 F.3d 155 (2d Cir. 2018) ................................................................................. 8

*United States v. Torres*,
   191 F.3d 799 (7th Cir. 1999) .............................................................................. 10

*United States v. Triumph Capital Grp., Inc.*,
   260 F. Supp. 2d 444 (D. Conn. 2002) ............................................................ 10, 11

*United States v. Walsh*,
   194 F.3d 37 (2d Cir. 1999) ................................................................................ 3, 6

*United States v. Woodman*,
   980 F.2d 740 (9th Cir. 1992) .............................................................................. 10

*United States v. Yannotti*,
   541 F.3d 112 (2d Cir. 2008) ............................................................................... 16

*United States v. Young & Rubicam, Inc.*,
   741 F. Supp. 334 (D. Conn. 1990) ...................................................................... 10

**Statutes, Rules, and Other Authorities**

8 U.S.C. § 1324 ...................................................................................................... 4

18 U.S.C. § 1956 .................................................................................................... 3

Fed. R. Crim. P. 7 .................................................................................................. 3

Fed. R. Crim. P. 12 ............................................................................................... 18

Fed. R. Crim. P. 18 ............................................................................................... 18

U.S. D.O.J., Criminal Resource Manual § 1907 ..................................................... 4

## PRELIMINARY STATEMENT

Indictments are not unassailable.  They serve crucial purposes under the Fifth and Sixth Amendments, and if they fail to perform these constitutional functions, they must be dismissed. The government can, of course, cite many cases in which courts have upheld indictments, including indictments charging RICO conspiracies.  But that is beside the point: our arguments are different from the ones their cases reject, and they are supported by compelling authority. There is no better proof than the government's brief.  The government entirely fails to address critical arguments we raise and cases we cite.  It resorts to citing other indictments that were never challenged in order to insist that this Indictment must surely be satisfactory.  And while the government suggests that no case has ever dismissed a RICO count or even a predicate act on the grounds we urge, it is simply incorrect.

The Indictment is so deficient that the government is even forced to acknowledge that one of the counts pleads the wrong venue.  Indeed, the Indictment is insufficient to sustain any of the counts against the "Non-DOS Defendants": Clare Bronfman, Kathy Russell, and Nancy Salzman.  The government has charged these Defendants in a fictitious RICO conspiracy even though there is clearly no "pattern" linking the DOS Acts to the Non-DOS Acts.  It has charged these Defendants with intricate, multi-layered crimes while refusing to plead the underlying statutory provisions or elements necessary to state an offense.  The Defendants, of course, vigorously dispute the government's allegations and would do so at trial.[1]  But even taking these allegations as true, the Indictment is invalid as to the Non-DOS Defendants, and the government cannot proceed to trial.

---

[1] Certain claims in the government's brief are careless and even inflammatory.  For example, contrary to the government's brief, the Indictment never calls NXIVM a "Pyramid *Scheme*" (Opp'n 22 n.5 (emphasis added)), and such a claim would be false.

## ARGUMENT

I. **COUNT ONE MUST BE DISMISSED FOR DEFECTS IN ITS PREDICATE ACTS, AND COUNT SEVEN MUST BE DISMISSED ON SIMILAR GROUNDS**

In its opposition, the government concedes several arguments and gives short shrift to others, presenting a clear "path of least resistance" to dismissing Counts One and Seven. If any predicate act is dismissed, Count One necessarily fails. (Point A *infra*). Several predicate acts are inadequately pled, as is Count Seven, and one predicate act is based on an unconstitutional statute. (Points B-D *infra*). Thus, the charges against the Non-DOS Defendants cannot stand.

### A. The Dismissal Of Any Predicate Act Requires The Dismissal Of Count One

The grand jury charged Racketeering Acts 1-A through 10 as the purported RICO pattern. (SI ¶¶ 16-34). We cannot know whether the grand jury would have found that a subset of those acts satisfied the pattern requirement and would have charged it as a narrower RICO pattern. *See United States v. Basciano*, 599 F.3d 184, 205-06 (2d Cir. 2010). Accordingly, if the Court dismisses any predicate act, the resulting RICO conspiracy is fundamentally different from the one charged by the grand jury, and the Fifth Amendment prohibits the government from prosecuting the Defendants for that hypothetical RICO conspiracy. *See id.* We made this abundantly clear in our opening brief (Br. 17-19 & n.7, 20 n.9, 28), and the government evidently has no response. Its total "failure to address the . . . issue borders on a concession." *Franklin Cty. Employment & Training Admin. v. Donovan*, 707 F.2d 41, 44 (2d Cir. 1983).

As explained below, several predicate acts must be dismissed, and Count One must therefore be dismissed as well. At a minimum, however, the deficient acts must be dismissed.

### B. Several Predicate Acts Fail To Identify Their "Underlying Offenses"

Most of the predicate acts in Count One charge violations of statutes that depend on the defendant's violation or intent to violate *other* federal statutes ("Underlying Offenses"). The

2

Indictment, however, often fails to identify which Underlying Offenses are charged. These problems pervade the Indictment and require dismissal. (Br. 26-31).

Contrary to the government's assertions (Opp'n 26-30), our argument is entirely consistent with the law of RICO conspiracy. While a RICO conspiracy is not a conspiracy to commit specific predicate acts (Opp'n 26), it is a conspiracy to commit a substantive violation of RICO, which requires a pattern of predicate acts (*id.*; Br. 13-14). The indictment must therefore plead "an identified pattern of racketeering activity" under "specified provisions of the . . . criminal code." (Opp'n 27 (quoting *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991))). Here, the racketeering activity is not sufficiently identified.

The Fifth and Sixth Amendments require indictments to (1) give fair notice of the charges, (2) bind the government to the evidence and charges it presented to the grand jury, and (3) permit the Court to evaluate whether the allegations and elements state an offense. (Br. 11-13, 29, 32).[2] An indictment that refers vaguely to several possible Underlying Offenses without identifying which one is charged serves none of these purposes. (Br. 29-31). For example, 18 U.S.C. § 1956(a)(2)(A) criminalizes money laundering in furtherance of "specified unlawful activity" prohibited by federal law. *See id.* § 1956(c)(7). Act 5-B charges money laundering under § 1956(a)(2)(A) in furtherance of a violation of 8 U.S.C. § 1324, but § 1324 identifies at

---

[2] The government's discussion of pleading standards mischaracterizes the law. (Opp'n 8-11). To summarize: **(1)** The government ignores the cases we cite showing that (a) an indictment must do more than provide notice and avoid double jeopardy and (b) tracking the language of the charged statute is not always enough. (Br. 11-13). The government's quotation from *Hamling* (Opp'n 9) proves the latter point. **(2)** The Court need not find "prejudice" before dismissing the indictment. (Opp'n 10). The case the government cites is about the lack of "factual particularity," *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999), not the absence of elements and other allegations that necessarily implicate "fundamental rights" (Opp'n 9). **(3)** Our arguments are consistent with Fed. R. Crim. P. 7(c), and if the government claims the Rule requires less, its interpretation conflicts with the Fifth and Sixth Amendments.

least eight distinct crimes.[3]  The Indictment does not inform Defendants which of these § 1324 violations they must prepare to defend against, does not ensure the government presents the same § 1324 theory at trial that it presented to the grand jury, and does not permit the Court to verify that the grand jury considered these specific provisions of § 1324 and their distinct requirements.

It is precisely for these reasons that indictments must identify any "underlying offense[s]" on which the charged crimes are predicated, *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (op. of Gibson, J.),[4] and cannot simply cite a statute that sets forth several different offenses, *see Descamps v. United States*, 570 U.S. 254, 272 & n.4 (2013).  Courts in this District have dismissed criminal charges on precisely these grounds.  (Br. 29-30 (discussing *United States v. Thompson*, 141 F. Supp. 3d 188, 192-98 (E.D.N.Y. 2015); *United States v. Awan*, 459 F. Supp. 2d 167, 173-76 (E.D.N.Y. 2006))).  Indeed, the Second Circuit and other courts have specifically rejected charging language that was essentially identical to the relevant language in Acts 1-B and 5-A.  (Br. 31 (citing *United States v. Attanasio*, 870 F.2d 809, 816 (2d Cir. 1989);

---

[3] Specifically, it is unclear whether the grand jury found money laundering in furtherance of bringing in an alien other than at a designated port of entry (§ 1324(a)(1)(A)(i)); transporting an unauthorized alien (§ 1324(a)(1)(A)(ii)); concealing such an alien (§ 1324(a)(1)(A)(iii)); encouraging the unlawful entry or residence of an alien (§ 1324(a)(1)(A)(iv)); conspiring to commit any of these acts (§ 1324(a)(1)(A)(v)(I)); aiding and abetting any of these acts (§ 1324(a)(1)(A)(v)(II)), bringing an unauthorized alien to the United States ((§ 1324(a)(2)); hiring ten or more unauthorized aliens ((§ 1324(a)(3)(A)); or some combination of these.  *See also* U.S. D.O.J., Criminal Resource Manual § 1907 (explaining these "several distinct offenses"), www.justice.gov/jm/criminal-resource-manual-1907-title-8-usc-1324a-offenses.

[4] *Accord Gov't of Virgin Islands v. Pemberton*, 813 F.2d 626, 631-32 (3d Cir. 1987) (noting that "an indictment charging violation of a statute requiring specific intent to commit another offense must allege that intent with particularity," and finding burglary charge deficient because it "fail[ed] to state the offense defendant intended to commit upon entry" into the dwelling, thus lacking an "essential element" and "insufficiently appris[ing] the defendant of what he must be prepared to meet"); *United States v. Thomas*, 444 F.2d 919, 920-23 (D.C. Cir. 1971) (vacating burglary conviction where "the indictment [did not] state the particular offense the accused intended to commit upon entry into the dwelling" because one could not "discern the specific underlying offense, if any, that the grand jury had in mind when it returned the indictment").

4

*Thompson*, 141 F. Supp. 3d at 195)). The government has no response, which is why it virtually ignores these cases and cites others that are totally inapposite.

The government contends that it need not plead or prove that "overt acts" were actually committed, or that the defendant "agreed personally to commit" any acts (Opp'n 27 (quoting *Glecier*; citing *Applins*, *Yannotti*, and *Ciccone*)), but this is completely irrelevant. Even if a RICO pattern consists entirely of the contemplated but unconsummated acts of a defendant's co-conspirators, it does not follow that the indictment can leave the defendant and the court in the dark about which such acts were charged by the grand jury.

The government's discussion of *Applins* and *Glecier* is therefore beside the point. (Opp'n 27). These cases observed that because a RICO conspiracy may never achieve its objective, "the identification in the indictment of specific predicate acts that have come to fruition" is "in many cases impossible." *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011) (quoting *Glecier*, 923 F.2d at 501). Consequently, a RICO conspiracy indictment may allege that the defendants "agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity," in lieu of pleading "specific predicate acts." *Id.* at 81-82. This does not, however, help the government. Our argument is not that the Indictment fails to plead specific instances in which the defendants committed or agreed to commit a predicate act. *Cf. Glecier*, 923 F.2d at 499 (defendant complained that indictment "fail[ed] to specify individual predicate acts . . . [by] listing the specific bribes by date and/or case name"). In fact, it lists at least ten such instances. (SI ¶¶ 17-34). Our argument is that the Indictment does not adequately identify the "specific statutory provision[s]" and "types of predicate racketeering acts" at issue, *Applins*, 637 F.3d at 81-82, because it fails to identify the

5

Underlying Offenses. *Applins* and *Glecier* say nothing about Underlying Offenses, because the appellants made no argument about them, and they have nothing to do with those decisions.

The same is true of the district court cases the government cites. (Opp'n 27-29). In *United States v. Bronson*, No. 05-CR-714 (NGG), 2007 WL 2455138 (E.D.N.Y. Aug. 23, 2007), the defendant argued that the indictment needed more "facts" of the "who"/"what"/ "where"/"when" variety, not that the indictment failed to identify an Underlying Offense. *Id.* at *3. In *United States v. D'Amico*, 734 F. Supp. 2d 321 (S.D.N.Y. 2010), the defendant complained that the indictment omitted "times and places," that its detailed factual description of his crimes should have been linked to the charging language, and that, in general, "greater detail" was required. *Id.* at 332-33. In *United States v. Booth*, No. 2:08-CR-00283-RCJ, 2011 WL 6139062 (D. Nev. Dec. 9, 2011), the defendant claimed the indictment "simply allege[d] that he [wa]s a member" of the enterprise—in fact, it "specifically alleged" his involvement in murder and drugs—and demanded to know "who committed what act, when and where." *Id.* at *7-8. In short, none of these defendants made our argument, and therefore none of these courts rejected it.

The government is wrong to suggest that its disclosures and Rule 16 discovery cure the problem. (Opp'n at 29-30; *id.* at 25). If even "a bill of particulars cannot save an invalid indictment," *Russell v. United States*, 369 U.S. 749, 770 (1962), "discovery cannot save [it]" either, *Walsh*, 194 F.3d at 45. Discovery may bear on whether the defendant has adequate notice and is protected from double jeopardy (*see id.*; Opp'n 25), but it cannot serve the other purposes of an indictment, such as ensuring that the grand jury found the requisite elements, and that the defendant is tried only for crimes found by the grand jury. *See, e.g.*, *Russell*, 369 U.S. at 770. Moreover, discovery clearly does not mitigate the notice concerns at issue here, since disclosing factual detail does not clarify the ambiguities in the government's legal theories.

Many of the predicate acts are therefore deficient, and Count One fails.  (Br. 27-31).

### C. Several Predicate Acts And Count Seven Fail To Allege The Essential Elements Of Their "Underlying Offenses"

Count One must also be dismissed because the predicate acts that rely on Underlying Offenses do not plead the elements of those Underlying Offenses.  The same is true of Count Seven.  (Br. 32-34 (citing, *e.g.*, *United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017))).  *Dupree* held that the elements of a cross-referenced Underlying Offense must be pled in the indictment, and the government is simply wrong in claiming otherwise.  (Opp'n 55).  The Court held that an indictment charging a drug-related-murder conspiracy must allege drug quantity, even though it is an element of the underlying *drug* conspiracy, because it is an "essential fact constituting the charged offense[]."  870 F.3d at 72.  "[R]eferenc[ing]" the drug-conspiracy statute does not adequately "allege th[is] factual predicate" of the murder-conspiracy charge.  *Id.*

While the government tries to distinguish *Dupree* by claiming that the murder-conspiracy statute requires proof that the defendant was "engaging" in a drug conspiracy, not only that he "intended" to do so (*see* Opp'n 55), this makes no difference.  Here, for example, the government charged "identity theft" with the "intent to commit" another crime, namely "tax evasion."  (*Id.* at 54-56 (discussing Count Seven)).  The grand jury could not properly indict the Defendants for that crime without understanding the elements of tax evasion, because otherwise it could not determine whether the Defendants had the necessary intent.  Similarly, the grand jury could not properly indict for "money laundering" with the "intent to promote" immigration crimes (Br. 28, discussing Act 5-B) unless it understood the elements of those immigration crimes.  The way that courts ensure that the grand jury found the elements of a crime is by requiring the indictment to *plead* those elements.  (Br. 12-13 (collecting cases)).  Here, the elements of the intended Underlying Offenses are "implicit" in the charged crimes that rely on

7

them, and they are "legally essential to the punishment to be inflicted" for each crime.  (Br. 12, 32 (quoting, *e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 489 n.15 (2000); *United States v. Foley*, 73 F.3d 484, 488 (2d Cir. 1996))).  Accordingly, they must be pled in the Indictment.

The lone case cited by the government does not hold otherwise or even address our argument.  *See United States v. Sutcliffe*, 505 F.3d 944, 960 (9th Cir. 2007).  Nor does it help the government to cite indictments (and one information) that charge identity theft without pleading the elements of the Underlying Offenses.  (Opp'n 54-55).  The defendants in those cases did not make our argument, and the courts did not pass on its validity.[5]  All they establish is that the government has drafted deficient indictments in other cases.

Counts One and Seven are thus indefensible and must be dismissed.  (Br. 27-28, 32-34).

### D.    Act 5-A Relies On An Unconstitutional Statute

Count One must be dismissed for yet another reason.  The statute underlying Act 5-A is unconstitutionally (1) overbroad under the First Amendment, (2) vague under the First and Fifth Amendments, and (3) discriminatory under the First Amendment.  (Dkt. 233 (supplemental letter)).  The government offers no substantive response whatsoever.  (Dkt. 249).  It suggests the Second Circuit *might* disagree with *United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018), but the case it cites is totally inapposite.  *See United States v. Thompson*, 896 F.3d 155, 164-65 (2d Cir. 2018) (rejecting "expressive association" challenge to sex-trafficking statute that did not restrict groups' "membership" or "advoca[cy]").

---

[5] In *Pinedo*, *Jattan*, and *Paredes*, the defendants pled guilty without moving to dismiss.  In *Davis*, the defendant proceeded to trial without moving to dismiss.  And in *Shulaya*, one defendant moved to dismiss the relevant count, but on entirely different grounds.  *See United States v. Shulaya*, No. 17-CR-0350 (KBF), 2017 WL 6513690, at *8 (S.D.N.Y. Dec. 20, 2017).

There is also no basis to postpone decision pending the government's possible petition for rehearing in *Sineneng*. Litigation does not grind to a halt while the government mulls its appellate options; the prosecutors in this case are perfectly capable of making legal arguments. Regardless, *Sineneng* did not reach the vagueness and discrimination arguments raised by the appellant and *amici* (and reprised by Ms. Bronfman here, Dkt. 233 at 2) because it struck down the statute on overbreadth grounds. *See* 910 F.3d at 468-70 & n.4, 485 n.15. The government's petition will not address these arguments, and it has effectively conceded them here by failing to even mention them in opposing Ms. Bronfman's motion. *See Franklin Cty.*, 707 F.2d at 44. Act 5-A must be dismissed as unconstitutional, and because the remaining set of predicate acts differs from the purported RICO pattern presented to the grand jury, Count One must be dismissed in its entirety. *See Basciano*, 599 F.3d at 205-06. If, however, the Court defers resolution of the overbreadth issue pending the government's petition, we request the opportunity to respond and to incorporate any response from the *Sineneng* victors and *amici*.

## II.    COUNT ONE MUST BE DISMISSED FOR FAILURE TO ALLEGE A PATTERN OF RACKETEERING ACTIVITY

Count One must allege "related" predicate acts in order to plead a RICO pattern. Because it does not, it must be dismissed. (Br. 13-21).

### A.    The Government Misunderstands The Standard For Pleading Relatedness

While the government devotes several pages to whether it had to plead relatedness (Opp'n 15-20), it obscures a few simple truths. The Second Circuit has unequivocally stated that "when facing a RICO count in an *indictment or complaint*, a district court must determine whether it independently alleges . . . a pattern of racketeering activity," in which "the alleged criminal acts [are] characterized by their relatedness and continuity." *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 15 (2d Cir. 1989) (emphasis added). "[I]f a pleading

does not indicate the existence of both components of the pattern of racketeering activity, a RICO claim should be dismissed." *Id.* This was a civil case, but it expressly referred to indictments, and the Second Circuit is well aware that indictments are criminal pleadings.

The Second Circuit's explanation of the law makes perfect sense, which is why it has been quoted in the criminal context. *See United States v. Young & Rubicam, Inc.*, 741 F. Supp. 334, 341 (D. Conn. 1990)). An indictment cannot merely recite the statutory term "pattern of racketeering activity," since it is "generic" and contains the "implicit" elements of relatedness and continuity. (Br. 12). Relatedness and continuity are "essential characteristic[s]" of the "RICO statute" and must therefore be alleged in order to "charge an offense." (Br. 12-13 (quoting *Foley*, 73 F.3d at 488)). They need not be pled using those precise legal terms, "specifically" and "with particularity." (Opp'n 17 (quoting Seventh Circuit cases)). But to satisfy constitutional requirements, "the indictment must contain sufficient facts to demonstrate that the racketeering acts are related" and "that reasonably substantiate the existence of continuity." *United States v. Palumbo Bros.*, 145 F.3d 850, 877-78 (7th Cir. 1998); *accord United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011) (considering whether "indictment adequately allege[d] all of the sub-elements required to establish [a RICO] pattern").

Courts in this Circuit agree and have applied this standard (Br. 15-16), as the government is forced to acknowledge (Opp'n 19-20). Indeed, many of the cases that it cites apply this standard, or something like it, as well. (Opp'n 15-18).[6] And courts have dismissed RICO counts

---

[6] *United States v. Torres*, 191 F.3d 799, 806 (7th Cir. 1999) ("the indictment must allege that these predicate acts are related") (quotation marks omitted); *United States v. Woodman*, 980 F.2d 740 (9th Cir. 1992) (unpublished) ("indictment [must] allege *facts* sufficient to show that the predicate acts are related"); *United States v. Ortiz*, 2013 WL 6842541, at *3 (N.D. Cal. Dec. 27, 2013) (same); *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 776-77 & n.14 (E.D. Va. 2004) (same); *United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d 444, 453 (D. Conn.

where the indictment failed to show that the predicate acts amounted to a pattern.  *See United States v. Crysopt Corp.*, 781 F. Supp. 375, 382-86 (D. Md. 1991) (dismissing RICO count because predicate acts alleged in indictment lacked continuity); *United States v. Berlin*, 707 F. Supp. 832, 837-38 (E.D. Va. 1989) (dismissing RICO counts, including RICO conspiracy,[7] because predicate acts alleged in indictment were "isolated" and did not constitute a "pattern").  The government is wrong to suggest that no court has ever dismissed a RICO conspiracy count—or even so much as a racketeering act—on the grounds we raise.  (Opp'n 2, 7-8).

**B.    Count One Should Be Dismissed For Lack Of Vertical Relatedness**

The government apparently agrees that the allegations pertaining to each "individual" predicate act do not tie those acts to the charged enterprise.  (Opp'n 21-22; *see* Br. 16).  Instead, it argues that other parts of the Indictment supply the missing nexus.  It is mistaken.

The government emphasizes the Indictment's allegations that the purpose of the enterprise was to obtain "benefits" by "promoting" Raniere and "recruiting new members" into NXIVM and DOS.  (Opp'n 20-21, 22 n.5 (quoting SI ¶¶ 3-4)).  The Indictment does not, however, explain how the *predicate acts* served those purposes.  It does the government no good to string together the "purpose" allegations and the "predicate act" allegations in its brief (Opp'n 22 n.5), since it did not do so in the Indictment, which is the document that matters.  The government further asserts that the victims of the predicate acts were "members" of NXIVM and DOS.  (*Id.*).  But again, except as to Act 7 (SI ¶ 28), the Indictment says no such thing.

---

2002) (asking whether allegations "substantiate[d]" continuity); *United States v. Ganim*, 225 F. Supp. 2d 145, 162 (D. Conn. 2002) (indictment "allege[d] more than . . . unrelated predicate acts").  The others (*Messina*, *Marchese*, and *Mavroules*) are non-binding district-court cases and are unpersuasive because they do not address the analysis we set forth above.

[7] *Berlin* does not specify that one of the RICO counts was a conspiracy, but news articles make that clear.  *See* https://www.nytimes.com/1989/01/07/business/first-indictment-returned-by-jury-in-pentagon-fraud.html; http://articles.latimes.com/1989-01-07/news/mn-136_1_grand-jury.

Nor does the "methods and means" paragraph help the government.  (Opp'n 21 (citing SI ¶ 6)).  While it alleges that the Defendants helped the enterprise by committing crimes, it does not refer to the predicate-act allegations, and it lists certain crimes that are not even charged as predicate acts (*i.e.*, "wire fraud and obstruction of justice").  (SI ¶ 6(a)).  Count One therefore lacks sufficient allegations of vertical relatedness and must be dismissed.  (Br. 16-18).

## C.    Count One Should Be Dismissed For Lack Of Horizontal Relatedness.

Even if the predicate acts were vertically related, they are not horizontally related.  The government asserts that vertical relatedness alone is enough (Opp'n 14, 23), but this is only true where the enterprise's "business is racketeering activity" (as with an "organized crime family"), not where the enterprise is "primarily a legitimate business."  (Br. 14 (quoting *Reich v. Lopez*, 858 F.3d 55, 61 (2d Cir. 2017))).  The government's bizarre refusal to acknowledge this legal principle does not make it any less binding.  It makes no difference that *Reich* is a civil RICO case.  (*Contra* Opp'n 22; *id.* at 14 n.2, 18 n.4).  Putting aside the fact that *Reich* relies on criminal RICO cases, *see* 858 F.3d at 61-62, "the Supreme Court[] [has] instruct[ed] that we treat civil and criminal [RICO] cases the same," *id.* at 61 n.4 (emphasis removed).  The RICO statute has only one pattern requirement, which "must [be] interpret[ed] . . . consistently, whether we encounter its application in a criminal or noncriminal context."  *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).  That is why the government's own cases cite a civil RICO decision from the Supreme Court (Opp'n 13), and why at least one court in this District has cited *Reich* to explain the difference between horizontal and vertical relatedness in a criminal case.  *See United States v. Napout*, No. 15-CR-252 (PKC), 2017 WL 4083571, at *5 (E.D.N.Y. Sept. 13, 2017).

Here, there is no basis to conclude that the charged enterprise's "business [wa]s racketeering activity."  *Reich*, 858 F.3d at 61.  The government does not dispute that NXIVM is

a legitimate business. (Br. 4-7; Opp'n 3-4). Instead, it claims this is irrelevant because NXIVM is not the charged enterprise. (Opp'n 23 n.7). But the government cannot have it both ways. As the government points out when discussing vertical relatedness, the Indictment alleges that the enterprise consisted of high-ranking members of NXIVM whose goals included promoting NXIVM's founder and recruiting new members for NXIVM. (Br. 6-7; Opp'n 5, 20-21, 22 n.5). That the Defendants were charged as an "association-in-fact" (Opp'n 23 n.7) does not change the fact that they worked on legitimate NXIVM business and are not subject to the same legal standards as an organized crime family. *Reich*'s analysis would be meaningless if the government could avoid pleading and proving horizontal relatedness simply by recharacterizing the enterprise as the directors and officers of a corporation, rather than the corporation itself.

Under the proper standard for horizontal relatedness, Count One is deficient. (Br. 18-21). The Court need go no further than to compare the DOS Acts to the Non-DOS Acts. These are *at least* two distinct groups of crimes (a) of starkly different types (b) committed by different sets of Defendants (c) against different victims, generally (d) during different time periods and (e) in different locations. (Br. 9-11, 18-19). The "purposes, results, participants, victims, [and] methods of commission" of the DOS Acts and Non-DOS Acts are overwhelmingly dissimilar, precluding a finding of relatedness. *Reich*, 858 F.3d at 62 (quotation marks omitted).

The government lists three purported similarities, none of which withstands scrutiny. *First*, as explained above, there are no allegations supporting the government's claim that every predicate act "serve[d] the alleged purpose of the Enterprise." (Opp'n 23). And the "purpose" of obtaining benefits for members of the enterprise or otherwise promoting the enterprise is too general to show relatedness. *Reich*, 858 F.3d at 62 ("virtually all crimes committed on behalf of an enterprise are done to help it," so "to engage purpose at that level of generality would make

13

the factor meaningless"). *Second*, it is irrelevant that the predicate acts "involve[d] the alleged means and methods of the Enterprise." (Opp'n 23). According to the Indictment, those "means and methods" include "committing . . . crimes." (SI ¶ 6(a)). If a RICO indictment could show that crimes were interrelated by alleging that the enterprise's "means and methods" included *committing crimes*, the relatedness inquiry would, again, be meaningless. *Third*, it is irrelevant that all of the predicate acts "involve[d] the members of the charged Enterprise." (Opp'n 23). That is a necessary feature of predicate acts, but it does not make them related. The DOS and Non-DOS Acts were committed by two different groups: the DOS and Non-DOS Defendants, respectively, who are not charged with committing *any* predicate acts together. The minimal "overlap of participants" (namely, Raniere) "is insufficient" because, as explained above, "the enterprise in question is not primarily in the business of racketeering." *Reich*, 858 F.3d at 62.

The government's allegations are even weaker than those in *Reich*, where the principals of a company were accused of engaging in two schemes: (1) the "bribery of [government] officials," and (2) wire fraud designed to hinder other parties who were "threatening to expose" that bribery scheme. *Id.* at 58-59. Despite allegations that the principals were "participants in both [sets of] crimes" and that the crimes were "committed on behalf of" the company in order "to help it," the Court found that the "methods of commission, victims, [purposes,] and results of the predicate acts [we]re all dissimilar." *Id.* at 62. Consequently, it dismissed both a substantive RICO claim and a RICO conspiracy claim for lack for relatedness. *See id.* Notably, nowhere did the Court cite *Twombly* or discuss its heightened "plausibility" standard. (*Contra* Opp'n 18 n.4). Taking the allegations of the complaint as true, it found that the predicate acts did not amount to a pattern as a matter of law. *Reich*, 858 F.3d at 59-62. The same is true here of Count One.

14

The government contends that "diverse" racketeering acts simply mean the "criminal enterprise" is more dangerous. (Opp'n 24). But the same could have been said about the two schemes in *Reich*. The cases the government cites for this point (*id.*) and for the proposition that the Indictment adequately alleges relatedness (*id.* at 19-20) all predate *Reich*, and all involved enterprises whose very business was racketeering activity[8] or are otherwise distinguishable.[9]

The lack of relatedness between the DOS Acts and Non-DOS Acts *alone* requires the dismissal of Count One. (Br. 19). Furthermore, the government makes no arguments specific to the Non-DOS Acts, which are not related to each other, either. (Br. 19-20).

Finally, Count One should be dismissed for the additional reason that any conspiracy involving the Non-DOS Defendants could not possibly include the DOS Acts. (Br. 20-21). The government contends that it need not allege the precise scope of each Defendant's agreement (Opp'n 24 n.8), but the charged RICO conspiracy *plainly* exceeds the scope of the Non-DOS Defendants' agreement. It is undisputed that the Non-DOS Defendants did not know about the DOS Acts. (Br. 20-21). And when we argued that Non-DOS Defendants did not agree to the

---

[8] *United States v. Eppolito*, 543 F.3d 25, 27-39, 52-54 (2d Cir. 2008) (defendants associated to assist the Mafia, including with murder); *United States v. Masters*, 924 F.2d 1362, 1365-67 (7th Cir. 1991) ("miniature suburban mafia," not a "lawful enterprise[]," involving a lawyer and the police officers he bribed for obstruction and murder); *Bergrin*, 650 F.3d at 261-63, 272 (association of lawyer, drug dealer, restaurant, and others who worked together to murder witnesses and traffic cocaine); *United States v. Giovannelli*, No. 01 CR. 749 (JSR), 2004 WL 48869, at *3 (S.D.N.Y. Jan. 9, 2004) (predicate acts allegedly performed for "the Genovese Organized Crime Family, whose very business is promoting racketeering activity"); *United States v. Gotti*, 42 F. Supp. 2d 252, 287 (S.D.N.Y. 1999) ("all defendants [are] alleged to be members or associates of . . . the Gambino Family"); *Cuong Gia Le*, 310 F. Supp. 2d at 769 (violent "youth gang[]" known as the "Oriental Playboys").

[9] *United States v. Fruchter*, 104 F. Supp. 2d 289, 297 (S.D.N.Y. 2000) ("all of the predicate acts are alleged to have the same purpose and results, namely, defrauding of the USPS and certain clients of API," and "the acts are alleged to have been committed by many of the same Defendants"); *Ganim* Indictment, 2002 WL 34406479 ¶¶ 6-8 (mayor repeatedly solicited and received bribes through the same lobbyists from companies with business before the city).

15

DOS Acts (Br. 21), the government's response was to cite an "organized crime case[]" stating

that a RICO conspirator need only know the "general nature" of the conspiracy, not its "details."

*United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989) (Opp'n 24 n.8).  But the DOS Acts

are not "details."  Unlike a mafia "soldier" who pledges "to use *any* means necessary to further

the objectives of the Family," *United States v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008), a

corporate director or officer who commits white-collar crimes does not thereby agree to further a

secret sex-trafficking scheme by the company's CEO, which she does not even know exists.  The

government cannot claim that the Non-DOS Defendants were "conscious[]" that the "essential

nature" of their alleged plan included the DOS Acts.  *Eppolito*, 543 F.3d at 47-48.

## III.   ALTERNATIVELY, COUNT ONE IS IMPERMISSIBLY DUPLICITOUS

Even if Count One survives the challenges above, it is nevertheless duplicitous, in that it

alleges at best two distinct enterprises engaged in two distinct types of racketeering activity.

Trying the Non-DOS Defendants for a single conspiracy involving the DOS Acts would create

severe prejudice and evidentiary difficulties, and Count One must therefore be reformulated

before trial.  (Br. 21-26); *United States v. Abakporo*, 959 F. Supp. 2d 382, 391 (S.D.N.Y. 2013)

(ordering government to "separat[e] the [duplicitous] conspiracies into two separate counts").

In opposition, the government argues that Count One, on its face, charges a single

conspiracy involving a single enterprise with a common purpose.  (Opp'n 38-42).  But merely

alleging a single conspiracy is insufficient if the allegations in the Indictment do not establish

overlap or mutual dependence between the two groups of participants—the DOS and the Non-

DOS Defendants.  (Br. 22-25); *United States v. Eury*, No. 1:14CR39-1, 2015 WL 1861807, at

*4-8 (M.D.N.C. Apr. 23, 2015) (dismissing duplicitous conspiracy count because it alleged two

separate schemes with different "timing," "key actors, methods, and goals").  As previously

explained, Count One alleges at least two separate schemes with dissimilar participants and conduct, in which the Non-DOS Defendants did not even know about or agree to anything like the DOS Acts. (Point II.C *supra*; Br. 9-11, 18-24). A RICO conspiracy may be broad (Opp'n 40), but not every act that benefits the enterprise is necessarily within the scope of the conspiracy (Br. 21, 23). The Non-DOS Defendants did not agree to the scope of the conspiracy charged in Count One, so it does not charge a single conspiracy.

The government devotes much of its opposition to reiterating that duplicity can be cured by a verdict sheet or jury charge. (*E.g.*, Opp'n 38). But Count One's duplicity can and should be cured immediately. *Cf. United States v. Sturdivant*, 244 F.3d 71, 79 (2d Cir. 2001) (remedy for duplicity "var[ies] according to the particular harm or harms to be avoided and the stage of the proceeding at which the threatened harm or harms arise"); *United States v. Marlinga*, No. CRIM 04-80372, 2005 WL 513494, at *6 (E.D. Mich. Feb. 28, 2005) ("Hoping that a jury instruction will remedy a problem that can clearly be solved [pretrial] makes no sense."). The unfair prejudice the Non-DOS Defendants will face if they are tried in a single RICO conspiracy that involves salacious sex and blackmail allegations (which they undisputedly did not know about) will be irreversible. (Br. 25); *United States v. Dellosantos*, 649 F.3d 109, 125 (1st Cir. 2011) (vacating convictions due to "evidentiary spillover" where "under the guise of its single conspiracy theory, the government subjected the Defendants to voluminous testimony relating to unconnected crimes in which they took no part"). Indeed, a properly pled indictment alleging two RICO conspiracies could be scrutinized by this Court for misjoinder or Rule 14 concerns, problems currently obfuscated by the pleading of two conspiracies as one. Finally, the government does not address the evidentiary problems regarding co-conspirator statements created by a duplicitous conspiracy charge. (Br. 25-26); *United States v. Starks*, 515 F.2d 112,

116-18 (3d Cir. 1975) (requiring pretrial election between duplicitous charges, in part because duplicity "may prejudice the defendant with respect to evidentiary rulings" concerning co-conspirator declarations).  Count One's duplicity should be cured now, and the government must either elect one conspiracy to prosecute, or re-charge the schemes in two separate counts.

## IV.    COUNT SEVEN MUST BE DISMISSED FOR LACK OF VENUE

The government concedes that "the Indictment alleges that Count Seven is venued in the Northern District," not the Eastern District.  (Opp'n 56).  Thus, the government has not satisfied its burden to plead venue, and Count Seven should be dismissed.  (Br. 35); *see also* Fed. R. Crim. P. 12(b)(3)(A)(i) ("improper venue" is "a defect in instituting the prosecution"); *United States v. Motz*, 652 F. Supp. 2d 284, 290 (E.D.N.Y. 2009) (to survive a "motion to dismiss," indictment must "allege venue").  While the government asks to be allowed to cure or transfer the count before trial, it provides no basis whatsoever for this request.  (Opp'n 56).  Courts do not spare defective counts while waiting with bated breath for a superseding indictment.[10]  Under Rule 18, entitled "Place of Prosecution and Trial," not only must the government try the case in the right district; it "must prosecute [the] offense in [that] district."  Fed. R. Crim. P. 18; *see, e.g.*, *United States v. Burns*, 990 F.2d 1426, 1436 (4th Cir. 1993) (Rule 18 "sets forth the proper place of prosecution *and* trial") (emphasis added).  Count Seven cannot remain pending until trial.

## V.    COUNT ONE IS UNCONSTITUTIONALLY VAGUE

The amorphous, free-form nature of the RICO "pattern" requirement renders it unconstitutionally vague, as suggested by Justice Scalia.  (Br. 36).  Courts may have rejected this

---

[10] If, as the government claims, it can moot deficiencies with a superseding indictment (Opp'n 47 n.20, 56), it should do so rather than wasting the parties' and the Court's resources litigating these issues.  Until it does, it must defend the current Indictment, which is the operative pleading.

argument, but it is not "premature" (Opp'n 47-48) because a statute can be facially vague even absent First Amendment concerns. *Johnson v. United States*, 135 S. Ct. 2551, 2556-61 (2015).

## VI.    DEFENDANTS ARE ENTITLED TO A BILL OF PARTICULARS

If the charges survive, Defendants are entitled to a bill of particulars. (Br. 36-38). The government argues that a bill of particulars is not a discovery device (Opp'n 57-58), but where it is "necessary to give the defendant enough information . . . to prepare h[er] defense, it will be required even if the effect is disclosure of evidence or of theories." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (quotation marks omitted). The government's discussion of our cases (Opp'n 59-61) conspicuously omits *Barnes*, which makes clear that particulars or other disclosure is required where, as here, "a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge." 158 F.3d at 666.

Notably, the government does not appear to dispute that "Defendants are entitled to know the specific Underlying Offenses the government intends to prove at trial." (Br. 38). The Indictment, Complaint, discovery, and other submissions cited by the government (Opp'n 58-59) do not clarify which provisions in the underlying, cross-referenced statutes the government intends to invoke. Nothing could be more "necessary" than understanding the *legal basis* for the charges, which is essential to everything from motions to the proof at trial and jury instructions.

The government apparently concedes that it must particularize the basis for venue for Count Seven. (Br. 38). And while Count Seven charges identity theft, not tax evasion (Opp'n 62 n.24), the government must prove that tax evasion was the objective, and must therefore explain the basis for that theory (Br. 38). Without understanding how Raniere's use of his dead lover's credit card (Dkts. 4, 52) facilitated tax evasion, Defendants cannot prepare a defense.

19

Contrary to the government's assertions (Opp'n 62 n.23), the "number" of alleged conspirators, "duration and breadth" of the charged conspiracy, and massive "volume" of discovery all favor the identification of unnamed co-conspirators.  *United States v. Gasperini*, No. 16-CR-441 (NGG), 2017 WL 2399693, at *12 (E.D.N.Y. June 1, 2017).  The government does not substantiate its claim of "witness tampering and retaliation," and the remedy is to craft narrowly tailored bail conditions (Dkt. 240), not to conceal key facts from the defense.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts One and Seven or, at a minimum, order the government to provide the requested bill of particulars.

Dated:          December 28, 2018
                New York, New York

                                          Respectfully submitted,


/s/ Justine Harris                        /s/ Alexandra A.E. Shapiro
Justine Harris                            Alexandra A.E. Shapiro
Amanda Ravich                             Fabien M. Thayamballi
Sher Tremonte LLP                         Shapiro Arato LLP
90 Broad Street, 23rd Floor               500 Fifth Avenue, 40th Floor
New York, New York 10004                  New York, New York 10110
(212) 202-2600                            (212) 257-4880

*Attorneys for Defendant Kathy Russell*   Susan Necheles
                                          Kathleen E. Cassidy
/s/ Robert Soloway                        Hafetz & Necheles LLP
David Stern                               10 East 40th Street, 48th Floor
Robert Soloway                            New York, New York 10016
Rothman, Schneider, Soloway & Stern, LLP  (212) 997-7400
100 Lafayette Street, Suite 501
New York, New York 10013                  *Attorneys for Defendant Clare Bronfman*
(212) 571-7700


*Attorneys for Defendant Nancy Salzman*