MKM:MKP/TH/KMT
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       Docket No. <u>18-204 (S-1) (NGG) (VNS)</u>

    - against -

KEITH RANIERE,
CLARE BRONFMAN,
ALLISON MACK,
KATHY RUSSELL,
LAUREN SALZMAN and
NANCY SALZMAN,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW IN
RESPONSE TO KATHY RUSSELL'S MOTION TO DISMISS OR, IN THE
<u>ALTERNATIVE, TO COMPEL DISCOVERY</u>

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Kevin Trowel
Assistant U.S. Attorneys
    (Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...........................................................................................................3

ARGUMENT..................................................................................................................8

    I.     There is No Basis on Which to Dismiss the Indictment ........................................8

        A.     Applicable Law ..........................................................................................8

        B.     Discussion ...............................................................................................11

             1.     The Defendant's Motion Is Moot .................................................11

             2.     The Defendant's Fifth Amendment Rights Were Not Violated ....12

             3.     The Defendant Was Not a Target ................................................14

    II.    There is No Basis for Inspection of the Grand Jury Materials ...........................18

        A.     Applicable Law ........................................................................................18

        B.     Discussion ...............................................................................................18

CONCLUSION..............................................................................................................21

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in response to defendant Kathy Russell's motion to dismiss the superseding indictment in this case (the "Indictment") pursuant to the Court's supervisory power, or, in the alternative, to have the government produce additional discovery based on alleged violations of her Fifth Amendment rights in connection with her testimony before the grand jury. The defendant's motion is meritless and should be denied in its entirety.

At the time she testified, the defendant was represented by a former Assistant United States Attorney. She was properly advised on the record of her Fifth Amendment rights and her right to consult her attorney before answering any substantive questions. The defendant clearly understood these rights because she invoked the Fifth Amendment at least 75 times during the course of her testimony, in response to questions on a variety of topics. Moreover, although the defendant claims that the government's statement to her that she was not a "target" was misleading, it was in fact the truth, and the defendant is not entitled to further information regarding when and how the government developed additional evidence, which resulted in her change in status.

Even if the defendant misunderstood her status, which is not supported by the record, dismissal of the Indictment would not be warranted. "It is fundamental in our system of criminal justice that 'an indictment returned by a properly constituted grand jury is not subject to challenge on the grounds that it was based on unconstitutionally obtained evidence.'" United States v. Rivieccio, 919 F.2d 812, 816 (2d Cir. 1990) (quoting United States v. Washington, 431 U.S. 181, 186 (1977). Moreover, "a violation of . . . the privilege against self-incrimination . . . requires only the suppression at trial of a defendant's compelled testimony." Rivieccio, 919 F.2d

at 816.  Because the government informed defense counsel months ago that it would not seek to admit the defendant's grand jury testimony in its case-in-chief—a decision based in part on the defendant's repeated invocations—the motion is moot.  Furthermore, to the extent the defendant's motion relies on alleged violations of the Justice Manual, it is well-settled that the Justice Manual reflects only DOJ policy and does not create any enforceable rights for defendants.  See, e.g., United States v. Valentine 820 F.2d 565, 572 (2d Cir. 1987).

For these reasons, and for the reasons set forth below, there is no merit to the defendant's arguments, and her motion should be denied in its entirety.

BACKGROUND

I. <u>The Indictment</u>

   On July 23, 2018, a federal grand jury in the Eastern District of New York returned the Indictment, charging six individuals with participating in a long-running racketeering conspiracy, among other crimes.  The defendant was charged with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  The defendant is identified by name in Racketeering Act One, which alleges a conspiracy to commit identity theft and to unlawfully possess a false identification document as to Jane Doe 1, and Racketeering Act Two, which alleges a conspiracy to commit identity theft and identity theft as to two victims.  The government notes the Court's familiarity with the facts of this case and incorporates here by reference its description of the charges underlying the Superseding Indictment set forth in its Memorandum of Law in Response to Defendants' Pretrial Motions, dated December 17, 2018. (DE 248 at 3-7.)

II. <u>The Defendant's Grand Jury Testimony</u>

   On April 25, 2018, the defendant was served with a subpoena to testify before the grand jury.  On April 30, 2018, William Fanciullo, Esq. contacted the government by email, stating that he represented the defendant.  (Harris Decl., Ex. B.)[1]  The government responded within fifteen minutes, and said, "We will plan to see Kathy Russell on May 10 as directed on the subpoena.  If you wish to discuss with me in advance please feel free to reach out at the

---

[1] Citations to the defendant's memorandum of law in support of the instant motion are designated "Def. Memo," and citations to defense counsel's declaration are designated "Harris Decl."

number below." (Gov't Ex. 1.) Mr. Fanciullo chose not to contact the government prior to the defendant's date of appearance.

Mr. Fanciullo is a former Assistant United States Attorney for the Northern District of New York. On his website, Mr. Fanciullo states that "[a]s an Assistant U.S. Attorney, Mr. Fanciullo handled all aspects of cases, including grand jury investigations" and that "[a]s a more experienced AUSA, he handled the most difficult and complex cases." Law Office of William Fanciullo Website, https://www.fanciullolawfirm.com/attorney-profile/, last visited January 18, 2019. He also notes on his website that he represents clients in connection with "federal and state grand juries." Id.

On May 10, 2018, the defendant appeared for grand jury testimony. Prior to the testimony, the prosecutor again asked Mr. Fanciullo, this time in the presence of the defendant and agents from the Federal Bureau of Investigation, if he had any questions or wished to speak with the prosecutor before the defendant's testimony began. Mr. Fanciullo declined.

At the start of the defendant's testimony, the government advised the defendant that she was not being called to the grand jury as a "target," which the prosecutor defined for the defendant as "a person to whom the prosecutor or the grand jury has substantial evidence linking to a commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." (Harris Decl., Ex. C at 5:16-21). The defendant was also told that she had been sworn to tell the truth and could be charged with perjury if she did not (id. at 10:4-12), that she had the right to counsel in connection with her appearance (id. at 6:9-11), that she could consult with her attorney before answering any questions (id. at 6:13-16) and that if she could not afford an attorney, one would be provided for her by the Court (id. at 6:18-20).

The defendant invoked the Fifth Amendment for the first time during these preliminary advisements—before the prosecutor gave her any warnings regarding her Fifth Amendment rights—in response to questions about whether she was paying for her lawyer and whether she had destroyed any documents prior to her appearance.  (Id. at 7:5-8, 21-24.)  The defendant invoked by reading the following off a sheet of paper she brought with her into the grand jury chamber:

(Id.)

Following the preliminary advisements, the prosecutor asked the defendant if she understood that she had

(Id. at 8:5-11.)  The defendant answered affirmatively.  (Id.)  The government also elicited the defendant's understanding that to invoke the Fifth Amendment she must

(Id. at 9:12-21.)

Over the course of her testimony, the defendant invoked the Fifth Amendment approximately 75 times.  She invoked on a wide variety of topics ranging from her level of education (id. at 14:12-17), how she reconciled her decision to move to Albany to work for Nxivm when she had an adolescent son in Alaska (id. at 29:10-12), questions about her job as a bookkeeper for Nxivm (see, e.g., id.), whether she was a member of DOS (id. at 51:4-5) and

whether Keith Raniere had any children (<u>id.</u> at 64:7-8). Each invocation was scrupulously honored by the government. Indeed, on numerous occasions, after an invocation by the defendant, the government asked a "catch-all" question to determine whether the defendant would invoke as to an entire topic, rather than asking the defendant additional questions. (<u>See, e.g.</u>, <u>id.</u> at 15:1-4, 33:3-6, 55:25-56:3, 58:8-11, 61:3-5, 61:11-13, 62:1-4, 66:3-6, 69:17-20, 74:16-19.)

After the defendant testified, the prosecutor spoke with Mr. Fanciullo, again in the presence of the defendant and agents with the FBI. The prosecutor explained to Mr. Fanciullo that the government's investigation was ongoing and that the government was continuing to gather new evidence every day. The prosecutor offered to meet with the defendant and her counsel pursuant to a proffer agreement. On May 14, 2018, Mr. Fanciullo emailed the prosecutor to ask for a copy of the proposed proffer agreement, which the prosecutor provided. (<u>See</u> Gov't Ex. 2.) On May 22, 2018, the prosecutor received an email from Mr. Fanciullo stating, "Ms. Russell respectfully declines your proffer proposal." (<u>See</u> <u>id.</u>)

### III.    <u>Representations Regarding Use of Defendant's Grand Jury Testimony at Trial</u>

The defendant was arrested on July 24, 2018, one day after the Indictment was returned and nearly three months after she had been summoned to the grand jury. Mr. Fanciullo represented the defendant at her initial appearances in the Northern and Eastern Districts of New York. In or around August 9, 2018, the government was informed that Justine Harris, Esq. would be replacing Mr. Fanciullo as lead counsel for the defendant. Shortly thereafter, Ms. Harris and a colleague filed a notice of appearance on behalf of the defendant.

On November 5, 2018, the government produced a copy of the defendant's grand jury testimony to defense counsel. On November 14, the government informed defense counsel

that it did not intend to introduce the defendant's grand jury testimony in its case-in-chief. (Harris Decl. Ex. F.)  The government made this commitment because the defendant invoked repeatedly, and the testimony the defendant did provide is largely not in dispute and admissible through numerous other sources.

On January 4, 2019, defense counsel asked the government to produce documents "relating to or reflecting when the government considered Ms. Russell a 'target,' as that term is defined in the DOJ U.S. Attorneys' Manual § 9-11.151," referencing what is now known as the "Justice Manual." [2]  On January 8, 2019, the government responded:  "The defendant was not a putative defendant at that time of her grand jury testimony.  Thereafter, the government developed evidence making her chargeable with racketeering conspiracy and only then did she become a putative defendant, and ultimately an indicted defendant."  The government also stated, "[W]e note that the grand jury was properly advised as to the law, including with regard to the invocation of the Fifth Amendment by any witnesses."  (Harris Decl. Ex. H.)

On January 9, 2019, notwithstanding the fact that motions to dismiss were due on November 16, 2018, the defendant filed the instant motion seeking to dismiss the Indictment, with alternative requests for relief.  (See DE, dated October 15, 2018, ordering defendants to "file their 'Pretrial Motions (Unrelated to Discovery or Severance)' (the 'Initial Motions') by no later than November 16, 2018.")

---

[2] The DOJ U.S. Attorneys' Manual was renamed the "Justice Manual" in 2018, but section numbers relevant to the instant motion and opposition remain the same.

ARGUMENT

I.      There is No Basis on Which to Dismiss the Indictment

      A.      Applicable Law

           "An indictment returned by a properly constituted grand jury is not subject to challenge on the ground that it was based on unconstitutionally obtained evidence."  United States v. Washington, 431 U.S. 181, 185 n.3 (1977) (citations omitted).  This is even true when there are claims that an indictment was based on evidence obtained in violation of the Fifth Amendment privilege against self-incrimination.  See Midland Asphalt Corp. v. United States, 489 U.S. 794 (1989); United States v. Calandra, 414 U.S. 338 (1974); Gelbard v. United States, 408 U.S. 41, 60 (1972); United States v. Rivieccio, 919 F.2d 812, 816 (2d Cir. 1990); United States v. James, 493 F.2d 323, 326 (2d Cir. 1974).   Accordingly, a "violation of . . . the privilege against self-incrimination . . . requires only the suppression at trial of a defendant's compelled testimony."  Rivieccio, 919 F.2d at 816; see also United States v. James, 493, F.2d 323, 326-27 (2d Cir. 1974) ("An indictment, valid on its face, is not rendered invalid merely because evidence otherwise inadmissible was presented to the Grand Jury, . . . even if, as the Supreme Court has several times said by way of dictum, such evidence was obtained in violation of the Fifth Amendment rights of the accused.").  The Second Circuit has noted that there is a narrow exception to this rule, but only where the "indictment rests almost exclusively on tainted evidence."  See Rivieccio, 919 F.2d at 816 n.4.

           Moreover, targets of an investigation have no constitutional right to be informed of their status before testifying, at least where they are otherwise advised of their Fifth Amendment rights.  See Washington, 431 U.S. at 188-89; Valentine, 820 F.2d 565, 572 (2d Cir. 1987); United States v. D'Auria, 672 F.2d 1085, 1093 (2d Cir. 1982).  Failure to give such a

8

warning does not invalidate an indictment, and it does not even require the exclusion of grand jury testimony. D'Auria, 672 F.2d at 1093; Valentine, 820 F.2d at 572; James, 609 F.2d at 41.

It is the policy of the DOJ to advise a grand jury witness of his or her rights if such witness is a "target" or "subject" of a grand jury investigation. Justice Manual § 9-11.151. A "target" is a "person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." Id. A "subject" of an investigation is a person whose conduct is within the scope of the grand jury's investigation. Id. Importantly, however, the Justice Manual does not create any enforceable rights for defendants. Justice Manual § 9-11.151 ("The Justice Manual . . . is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal."); see also Valentine, 820 F.2d at 572. But see United States v. Jacobs, 547 F.2d 772, 776-78 (2d Cir. 1976) (exercising supervisory power to suppress grand jury testimony obtained from target who was not given the Advice of Rights form and accompanying warnings required by the predecessor to the Justice Manual).[3]

In an illustrative case in this district, United States v. Russell, 916 F. Supp. 2d 305 (E.D.N.Y. 2013), the Court refused to dismiss the indictment or suppress the grand jury testimony of a defendant who was not told he was the target of the grand jury's investigation,

_____

[3] Since Jacobs, the Supreme Court has imposed further limits on the federal courts' supervisory powers. See, e.g., United States v. Williams, 504 U.S. 36, 46 (1992) (overturning Tenth Circuit affirmance of a district court's dismissal of an indictment where the Government failed to disclose exculpatory evidence).

who was not given any warning specifically concerning his Fifth Amendment rights prior to his grand jury testimony and who was not represented by counsel in connection with his grand jury testimony.  Russell, 916 F. Supp. 2d at 310-311.[4]  The Court held that the prosecutor's warnings to the defendant—including that "he may refuse to answer any question, if he believed a truthful answer would incriminate him" and that "providing false answers could result in his prosecution for perjury"—alerted the defendant to his "'right to refuse to answer any question which might incriminate him.'"  Id. at 311 (quoting Washington, 431 U.S. at 188).  The Court also noted that the defendant had not made "any sworn allegations of fact to suggest that he was coerced prior to or during his grand jury testimony."  Id. at 311.

While holding that the defendant's testimony had not been compelled in violation of his Fifth Amendment rights, the Russell Court explained that even if it had, dismissal of the indictment would not be warranted.  See id. at 311-12 (citing Rivieccio, 919 F.2d at 816).  The Court noted that the defendant made no argument that the indictment was based "almost exclusively on tainted evidence" and credited the government's representation that "the government obtained incriminating evidence regarding [the defendant's acts] during the months between the [d]efendant's grand jury testimony and his indictment."  Id. at 312.

The Russell Court also rejected the defendant's arguments that the Court should use its supervisory powers to suppress the defendant's testimony because the government did not provide the defendant certain warnings and an advice of rights form prior to his testimony.  Id.

---

[4]    Notably, defense counsel does not cite Russell in her briefing, despite its clear parallels to the instant facts.

The Court credited the government's assertion that the defendant was not a target at the time he testified before the grand jury and stated that the defendant's "speculative arguments and bald assertions are insufficient to contradict the government's position." Id. Moreover, the Court held that it need not determine whether the defendant had been a target because he offered "no basis for the court to exercise its supervisory powers" and offered only "speculative hearsay concerning a lack of uniformity of practice by prosecutors in this district with respect to grand jury witnesses." Id.

B.     Discussion

The defendant argues that the Indictment should be dismissed because the government's failure to identify her as a target and its allegedly "misleading advice" regarding the scope of her Fifth Amendment rights, "were fundamentally unfair and induced Ms. Russell to selectively assert the Fifth and provide incriminating statements to the grand jury."  Def. Memo at 16.  This argument is wholly without merit, runs counter to established precedent and should be rejected.

1.     The Defendant's Motion Is Moot

As an initial matter, the law is clear that dismissing an indictment is not the appropriate remedy even if an indictment was based on evidence obtained in violation of the Fifth Amendment privilege against self-incrimination.  See Washington, 431 U.S. at 185, n.3; Midland Asphalt Corp., 489 U.S. at 794; Calandra, 414 U.S. at 338; Gelbard, 408 U.S. at 60; Rivieccio, 919 F.2d at 816; James, 493 F.2d at 326.  Thus, the defendant's motion to quash the Superseding Indictment should be denied.

The defendant does not cite a single case in which an indictment was dismissed for the reasons she urges here.  As described below, here there were no violations of the

defendant's rights, but if there were, suppression—not dismissal—would be the appropriate remedy. Because the government has already committed to not relying on the defendant's testimony in its case-in-chief, and because suppression is the only possible remedy, the Court should deny the motion as moot. See United States v. Burke, No. 09 CR 124 (SJ), 2009 WL 4263635 (E.D.N.Y. Nov. 24, 2009) (finding motion to suppress moot where government stated it did not intend to offer the disputed evidence).

2.    The Defendant's Fifth Amendment Rights Were Not Violated

Furthermore, the factual record makes clear that the defendant's Fifth Amendment rights were not violated. To the contrary, the defendant was properly instructed regarding the scope of her Fifth Amendment rights. The government made clear to the defendant that she had the right to not say ███████████████████████████████████ ████████████████████████ (Harris Decl., Ex. C at 8:5-11.) The defendant erroneously claims that the prosecutor gave improper advice when by advising the defendant that in order to properly invoke the Fifth Amendment the defendant ██████████████████ ████████████████████████████████████████████████ ████████████████ (Def. Memo. at 13.) In fact, this description of the law is precisely what the Second Circuit requires. See, e.g., United States v. Zappola, 646 F.2d 48, 53 (2d Cir. 1981) (finding that district court committed error by not "undertak[ing] a particularized inquiry to determine whether the assertion [of the Fifth Amendment privilege] was founded on a reasonable fear of prosecution"). The defendant's claim that the government provided erroneous advice by telling the defendant, ████████████████████████ ████████████████████████████████████████████████

12

███████ is also unavailing.  Having <u>simply</u> witnessed a crime is not, in fact, a proper basis for <u>simply</u> invoking the Fifth Amendment.

Additionally, the defendant's claims that she was improperly "induced" to waive her Fifth Amendment rights ignore the facts.  The defendant was represented by counsel with whom she had obviously discussed her Fifth Amendment rights, because she came into the grand jury chamber with a piece of paper that included language for her to use in her invocation, and she invoked before the prosecutor even mentioned the Fifth Amendment (<u>See</u> Harris Decl., Ex. C at 5:5-8.)  There is no reason to believe, and the defendant does not assert, that the prosecutor's advisements caused her to disregard legal advice that her attorney had previously provided.  If the defendant had any concerns that the advice of rights given by the prosecutor ran contrary to the advice her attorney had provided, the defendant could have asked to speak with him before continuing, as the prosecutor invited her to do at any time.  (<u>See</u> <u>id.</u> at 6:13-16.)

A reading of the entire transcript also clearly demonstrates that the defendant's free will was not overborne.  <u>See</u> <u>Rogers v. Richmond</u>, 365 U.S. 534, 544 (1961).  The defendant invoked the Fifth Amendment approximately 75 times during her testimony, and the prosecutor honored each of those invocations.  (<u>See, e.g.</u>, <u>id.</u> at 14:12-17, 29:10-12, 51:4-5, 64:7-8.)  Indeed, the defendant even invoked as to questions where she had no colorable basis to do so.  For example, the defendant invoked when asked if she was a member of DOS.  (<u>Id.</u> at 51:4-5.)  If, as counsel has asserted in her joint severance motion, the defendant was not a member of DOS[5], <u>see</u>

---

[5]     The government does not dispute this.

Memorandum in Support of Motion for Severance, DE 276 at 6, it is inconceivable that a truthful answer, i.e. "no," could have incriminated her or furnished a "link in the chain of evidence needed to prosecute the claimant for a federal crime." See United States v. Chandler, 380 F.2d 993, 997 (2d Cir. 1967).

Moreover, the defendant submits no sworn declaration that her grand jury testimony was coerced. See Russell, 916 F. Supp. 2d at 311. Instead, the defendant relies on her counsel's bald statements to claim that she did not knowingly waive her privilege against self-incrimination, which are plainly insufficient. There is no reason based on the record before the Court to find that the defendant answered the questions she did answer based on a misunderstanding of her Fifth Amendment rights or, as discussed below, her status with the government.

### 3. The Defendant Was Not a Target

The defendant also argues that the Court should dismiss the indictment because she was not informed that she was a "target" or a "subject" of the grand jury investigation, as required by the Justice Manual. The defendant is wrong.

First, the defendant's reliance on alleged violations of the Justice Manual is unavailing. The Second Circuit has held that a violation of the Justice Manual, on its own, does not create a basis for dismissal or suppression. See Valentine, 820 F.2d at 572; see also United States v. Goodwin, 57 F.3d 815, 818 (9th Cir. 1995) ("[T]he U.S. Attorney's Manual is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.") (internal quotations and citations omitted).

Second, it bears noting that the defendant was not a "target" at the time of her grand jury testimony. Put simply, the defendant was not a "putative defendant" in the judgment of the government on the date of her grand jury testimony. See Justice Manual § 9-11.151. While "putative defendant" has not been defined by the Second Circuit, assuming arguendo that the standard urged by the defendant is correct, i.e., that whether according to an objective test the defendant could be "charged with any crime," the defendant was not a target at the time of her grand jury appearance (Def. Memo. at 12 (citing United States v. Crocker, 568 F.2d 1049, 1054 (3d Cir. 1977).) At the time the defendant was summoned to the grand jury she was not, based on the evidence available to the government at that time, chargeable with a crime.[6] See Russell, 916 F. Supp. 2d at 312.

Moreover, the timing of the defendant's grand jury testimony and her indictment support the government's assertion that she was not a target when she testified. See United States v. Horowitz, 452 F.Supp. 415, 420 (S.D.N.Y. 1978). Nearly three months passed between when the defendant was subpoenaed in April 2018 and when she was indicted in July 2018. During that span, the government's investigation continued and it gathered many additional documents and conducted many additional witness interviews, ultimately developing evidence making the defendant chargeable with racketeering conspiracy. Furthermore, the government's

---

[6]     Although the defendant was asked questions about conduct that now forms the basis for Racketeering Act One in the Indictment, to which she invoked her Fifth Amendment rights, (see, e.g., Harris Decl., Ex. C at 34:23-35:6), the defendant was not chargeable with a stand-alone offense based on that conduct at the time of her testimony in light of the statute of limitations. The government also did not yet have evidence to establish the defendant's participation in racketeering conspiracy.

investigation into Nxivm only began in November 2017. Indeed, following the defendant's grand jury testimony, the prosecutor advised defense counsel that the government was continuing to gather evidence at a rapid pace.

The defendant also cannot rely on the absence of a subject letter or an advice of rights form in seeking relief. (Def. Memo at 2.) The defendant was represented by an experienced former federal prosecutor who had clearly prepared the defendant for the possibility that her "conduct [was] within the scope of the grand jury's investigation," because he armed her with a written invocation to read. (See Harris Decl., Ex. C at 7:5-8, 21-24.) Indeed, the defendant invoked by reading from this paper before the government even had the opportunity to provide her with Fifth Amendment warnings. (See id.) Notably, there is no declaration from either the defendant or Mr. Fanciullo asserting that either one of them was misled by the government.

The defendant relies primarily on one, out-of-Circuit case, United States v. Drake, 310 F. Supp. 3d 607 (M.D.N.C. 2018), to support her argument that the Indictment should be dismissed. (See Def. Memo. at 12-13.) But even in that case the Court refused to dismiss the indictment. Moreover, the defendant's description of Drake in its briefing ignores key facts that demonstrate the striking differences between the facts of that case and those at issue here. (Id.)

In Drake, the defendant and her attorney were affirmatively advised that she was neither a target nor a subject and was being called only as a fact witness, while at the same time the prosecutor was discussing by email "whether to require [the defendant] to either cooperate in exchange for a break or 'eat a guilty plea' to a low level recordkeeping violation.'" Drake, 310 F. Supp. 3d at 629. The government produced the email "voluntarily . . . because of its possible appearance in light of contrary representations in briefs filed with this court." Id. at 623. The

Court held that it could not reconcile the email with the government's statement in its briefs that the defendant "was neither a target nor a subject" during the same time period as the email was sent.  Id. at 629.

Despite these findings, the Drake court declined to dismiss the indictment.  In reaching that conclusion, the Court focused on the fact that the Drake prosecutor had made "affirmative misrepresentations."  (citing United States v. Gillespie, 974 F.2d 796, 802 (7th Cir. 1992) (suggesting that use of supervisory powers might be permitted in a case where 'the government acted in bad faith in failing to provide target warnings, or that it proffered an affirmative misrepresentation to [the defendant] regarding his target status")).  Ultimately, the Court held that it could not exercise its supervisory powers to dismiss the indictment because any violation would have amounted to harmless error and the Supreme Court prohibits "a court's supervisory powers from being used as a means to circumvent Federal Rule of Criminal Procedure 52(a)'s requirement of disregarding harmless error."  See id. at 629, 635 (citing Williams, 504 U.S. at 46-47).

There is nothing remotely similar about the instant facts and those at issue in Drake.  Here, there is no allegation—let alone evidence—that the government made any misrepresentations regarding the defendant's target status or that the government acted in bad faith (something the Drake court did not find, but was clearly concerned about).  As in Drake, however, even if the defendant's allegations have merit, which they don't, there would be only

harmless error, both because the government has already stated it will not rely on the defendant's grand jury testimony in its case-in-chief and for the reasons set forth above.[7]

II.    There is No Basis for Inspection of the Grand Jury Materials

In the alternative, the defendant asks the Court to order the production of certain grand jury minutes. These requests should be denied.

A.    Applicable Law

As the Supreme Court observed in Costello v. United States, 350 U.S. 359, 363 (1956), "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Therefore, review of a facially valid indictment is extremely circumscribed, United States v. Williams, 504 U.S. 36, 54 (1992), and disclosure of grand jury transcripts "should not be permitted without concrete allegations of Government misconduct," United States v. Leung, 40 F.3d 577, 584 (2d Cir. 1994). Speculative or conclusory statements are insufficient to show such misconduct. United States v. Henry, 861 F. Supp. 1190, 1193-94 (S.D.N.Y. 1994) (collecting cases).

B.    Discussion

The defendant asks the Court to order the government to produce "the legal instructions given to the grand jury concerning" the defendant's assertion of the Fifth

_____

[7]    The defendant's argument that, if the Court does not dismiss the Indictment, it should require the government to produce documents reflecting when the defendant became a "target," should be flatly rejected. (See Def. Memo at 16-18.) The defendant does not cite a single case for this unprecedented request, which seems to be asking the Court to order the government to produce material that is likely privileged work product or otherwise not discoverable, as part of a baseless fishing expedition.

Amendment as well as "grand jury minutes . . . relating to the Fifth Amendment warnings provided to every witness, as well as any legal instructions given on the same topic." (Def. Memo at 16.)[8] The sole arguments presented by the defendant in support of her motion are purely speculative. She asserts that, "there is still potential for prejudice <u>if</u> the government did not properly instruct the grand jurors that they could not draw any adverse inference from the defendant's Fifth Amendment assertions and in fact, that they could not consider those assertions at all." (Def. Memo at 20 (emphasis added).) The defendant also speculates that other witnesses "<u>could have</u> been induced by the prosecutor's incorrect advice to waive their rights." <u>Id.</u> (emphasis added).

The defendant's reckless assertions, completely lacking in factual support, are not "concrete allegations" of misconduct. <u>Leung</u>, 40 F.3d at 584; <u>see also</u> <u>United States v. Williams</u>,

---

[8]    With no further explanation or legal support, defense counsel asserts that such disclosure is also warranted because of the prosecutor's "inappropriate statements to the grand jury concerning the content of government court filings and the nature of its investigation . . . essentially amounting to unsworn testimony." (Def. Memo at 17.) During the defendant's testimony, the government attempted to elicit the defendant's reasons for never having questioned anyone in the community about allegations that had appeared in the press about Keith Raniere's having had sex with minors. (<u>See</u> Harris Decl., Ex. C. at 35:23-37:24.) After the defendant noted that she did not think those allegations were ▇▇▇▇▇ the government asked the defendant whether she had asked various community members if they knew anything about the allegations once they appeared in Court filings. (<u>See</u> <u>id.</u> 40:20-43:20.) In formulating these questions and drawing a contrast between the newspaper articles and court filings, the prosecutor stated, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ (<u>See</u> <u>id.</u> at 41:18-42:6.) The defendant does not claim that there was anything untrue in these statements. Moreover, the government has already represented that the grand jury was properly instructed on the law, which included that nothing said by a prosecutor is to be taken as evidence. (<u>See</u> Harris Decl., Ex. H.)

644 F.2d 950, 952 (2d Cir. 1981) (inspection of grand jury transcripts not warranted even though district found that the grand jury was presented with some "tainted testimony"); United States v. Bruno, 159 F. Supp. 3d 311, 322-23 (refusing to allow inspection of grand jury minutes where defendant's assertions of misconduct were "speculative and . . . comprised of 'ifs,' 'unlesses,' and 'mights,' that do not rise ot the level of warranting disclosure"). This is especially true where, as here, the government informed the defendant that the "grand jury was properly advised as to the law, including with regard to the invocation of the Fifth Amendment by any witnesses." (See Harris Decl. Ex. H.)

In addition, the defendant's baseless suggestion that the government may have improperly instructed the jury is so broad and unsupported that it could be made in any criminal case, and, if accepted, would negate the general rule of grand jury secrecy. Such a result would be unacceptable because it would undermine the basic functioning of the grand jury system. See, e.g., Application of Executive Securities Corp., 702 F.2d 406, 409 (2d Cir. 1983) (citing Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979)). Instead, the only appropriate forum to address the defendant's arguments is a jury trial. United States v. Ruiz, 894 F.2d 501, 504 (2d Cir. 1990) ("[T]here was no showing that Ruiz's indictment was caused by improper actions of the Government. Moreover, with respect to Count Two, any error respecting the charge is rendered harmless by Ruiz's conviction beyond a reasonable doubt. With respect to the other counts, Ruiz's acquittal renders any error moot.") (citations omitted).

The defendant has offered no more than speculative guesses about the instructions presented to the grand jury, while the government has assured the defendant, and now the Court, that the jury was properly instructed. Henry, 861 F. Supp. at 1193-94. Her motion should be denied.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the

defendant's motion is without merit and should be denied.

Dated:     Brooklyn, New York
           January 23, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Kevin Trowel
Assistant United States Attorneys
        (Of Counsel)