UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 18-CR-204(NGG)

: U.S. Courthouse
: Brooklyn, New York

-against-

: TRANSCRIPT OF
: STATUS CONFERENCE

KEITH RANIERE, ET AL, : March 18, 2019
: 11:00 a.m.

Defendants.

- - - - - - - - - - - - - - - X

BEFORE:

HONORABLE NICHOLAS G. GARAUFIS, U.S.D.J.

APPEARANCES:

For the Government: RICHARD DONOGHUE, ESQ.
United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201
BY: MOIRA KIM PENZA, ESQ.
TANYA HAJJAR, ESQ.
MARK J. LESKO, ESQ.
Assistant U.S. Attorneys

For the Defendant Raniere: MARC A. AGNIFILO, ESQ.
TENY R. GERAGOS, ESQ.
PAUL DEROHANNESIAN, II, ESQ.
DANIELLE R. SMITH, ESQ.

Bronfman: MARK J. GERAGOS, ESQ.

Mack: SEAN S. BUCKLEY, ESQ.
MATTHEW MENCHEL, ESQ.

Russell: JUSTINE HARRIS, ESQ.
AMANDA RAVICH, ESQ.

L. Salzman: HECTOR DIAZ, ESQ.
ANDREA TAZIOLI, ESQ.

Court Reporter: Holly Driscoll, CSR, FCRR
Chief Court Reporter
225 Cadman Plaza East
Brooklyn, New York 11201
(718) 613-2274

Proceedings recorded by mechanical stenography, transcript produced by Computer-Assisted Transcript.

* * *

THE COURT: You may be seated in the back. All right. Appearances.

MS. PENZA: Moira Penza, Tanya Hajjar and Mark Lesko for the United States.

Good morning again, Your Honor.

THE COURT: Good morning.

One moment.

(Defendant Raniere enters the courtroom.)

MR. AGNIFILO: Good morning, Your Honor, Marc Agnifilo, Teny Geragos, Paul Derohannesian and Danielle Smith for Keith Raniere who is with us in court.

THE COURT: Good morning.

MR. DIAZ: Good morning, Hector Diaz and Andrea Tazioli for Lauren Salzman who is standing here to my left.

THE COURT: Good morning.

MR. BUCKLEY: Good morning, Your Honor, Sean Buckley and Matthew Menchel for Ms. Allison Mack who is standing to my left.

THE COURT: Good morning.

MS. HARRIS: Good morning, Your Honor, Justine Harris and Amanda Ravich for Kathy Russell who is at my side.

THE COURT: Good morning.

MR. GERAGOS: Good morning, Your Honor, Mark Geragos, G-E-R-A-G-O-S, with Clare Bronfman who is here and present.

THE COURT: All right. Good morning. Please be seated everyone.

Well, I have the second superseding indictment.

MS. PENZA: That's correct Your Honor.

THE COURT: And there are some issues with that indictment that have been raised in a letter from Mr. Agnifilo.

Shall we discuss them?

MR. AGNIFILO: Sure.

THE COURT: Well, I have the letter. Is there anything more that's not in the letter? The letter seems to

be crystal clear.

MR. AGNIFILO: Thank you.

MS. PENZA: Your Honor, first, just taking the position of whether this Court can arraign the defendant on the current superseding indictment, the government is aware of no law indicating that the defendant could not be arraigned. We don't believe that Rule 5, which defense counsel cites to, is the appropriate reference for determining the arraignment on the superseding indictment. So, in the first instance, we would ask that all defendants be arraigned on the superseding indictment as it stands.

Second, as we put forward in our original opposition to the motion to dismiss, the omnibus opposition that we put forward, we don't believe that there is any law regarding severance of racketeering acts, especially here where -- in addition here where we've charged it now as a Glecier racketeering conspiracy and also the substantive racketeering conspiracy. So, the government is unsure based on defendant's letter whether if the Court does not intend, which we do not believe there's any legal basis to do, to sever the child pornography related racketeering acts from the RICO -- from the substantive racketeering and the racketeering conspiracy, whether in that case the defendant still intends to not waive venue and would like to face a separate trial in the Northern District of New York with an additional 15-year mandatory

minimum in addition to the trial here where he's facing a 15-year mandatory minimum.

So, it is not clear to us what the defendant's position is on that and so I think that's important for us to understand as well.

MR. AGNIFILO: My position, Your Honor, is that Mr. Raniere is here, he is ready to be arraigned on all of the Eastern District of New York charges. I don't tend to get into the weeds on the Federal Rules of Criminal Procedure unless there's a reason --

THE COURT: Well, it's sort of like incumbent upon me --

MR. AGNIFILO: That's correct.

THE COURT: -- to enter into it but if he gets arraigned on everything and part of the indictment needs to be severed and sent off somewhere else, that wouldn't result in any injury to him, would it?

MR. AGNIFILO: Well, our request at the end of the day is really in two parts, one is linked to the Federal Rules of Criminal Procedure and I don't believe, if I read Rule 10 the way I read Rule 10 that -- and I think I've only said maybe three or four times in my life that a federal court hasn't had the power to do something, but I don't know that this Court has the ability to arraign and take a guilty or not guilty plea from Mr. Raniere on Northern District of New York

charges. Rule 5 lays out very clearly what's supposed to happen which is -- and at the end of the day what today's proceeding would be would be an arraignment for the Eastern District of New York charges and effectively a Rule 5 proceeding for the Northern District of New York charges because if I read Rule 10, which says that a plea can only be entered in the venue where the case is pending, I don't know that we can just take a plea, whether it be a guilty plea or not guilty plea on a Northern District of New York charge without going through the Rule 5 process. So, my argument first is that.

The second part which really is the heart and soul I think of what I want to argue today to Your Honor, we've been pushing for a trial sort of famously, loudly and maybe even annoyingly for a very long time and here the government after having a device for the better part of a year, 26 days before we have, what, 500, 600 jurors coming here, they're coming here three weeks from today, they roll out this superseding indictment with Northern District charges, with brand new racketeering acts and then they say, well, Judge, you can't sever them, there's no law that says you can sever them. I think Your Honor can absolutely sever them. I think Your Honor has an absolute interest in this Court's trial schedule, I think Your Honor has taken great pains to try to get this case to trial promptly. Your Honor has shown that appearance

in, appearance out and we are ready, we have been ready to have this trial on the preexisting charges, not the four day old charges, on the preexisting charges with a jury coming to this building on schedule on April 8th.

And the government I think is playing chicken and the government is playing chicken with Your Honor's trial schedule, in my opinion, saying, no, you know what, Judge, we can play chicken with it because Your Honor at the end of the day is not going to sever the racketeering acts and we don't think you're going to move the trial maybe because Raineri has been such a loud squeaky wheel about it but it's an impossible position to put us in and --

THE COURT: Wait a minute, the squeaky wheel thing, you know, I've been doing this for a while, there are lots of squeaky wheels on both sides, lots of trials, lots of defendants. I'm not taking it personally that you'd like to have a trial.

MR. AGNIFILO: No, no.

THE COURT: You are entitled to a trial.

MR. AGNIFILO: I know that.

THE COURT: So, forget the banter, just get to the point.

MR. AGNIFILO: Fine. We are ready to try this case with a jury coming here on April 8th but we don't think we can be in a position to try the brand new charges that are now

five days old.

THE COURT: Well, you received the discovery on these a long time ago.

MR. AGNIFILO: Then we had to give it back. Then we had to give it back.

MS. PENZA: Your Honor, if I --

THE COURT: You received this discovery that's the basis for these additional charges in October I think, so it's not like this jumped out at you from out of nowhere in March of 2019. I'm just pointing that out. I mean I'm sure the government would be pleased to point it out themselves but I asked that question already regarding the discovery and the information I have is that the information, the discovery that is the predicate to the charges was made known to you six months ago.

MR. AGNIFILO: So, they gave us a cache of discovery that, I don't know, was 35, 40,000 documents and then, understandable, they then discovered at some point there's alleged child pornography in that discovery and they said, hold the presses, delete it from your systems and return it to us which, of course, they did and, of course, we did because it's contraband if they're right. So, we returned it to them. We -- let me just finish the thought, if I may?

So, we went to the FBI on Friday, the four defense lawyers representing Mr. Raniere went to the FBI on Friday

which is the only place we can look at these documents because it's contraband. I've spoken to a computer forensic expert on Friday after I saw the images and I said we have a trial date of April 8th, can you do the forensic analysis that you must responsibly do in a case where someone is looking at 15-year mandatory minimums, two of them, by April 8th, and he said, I don't know that I can. He says, I don't know that I've ever had to do this kind of computer forensic analysis in less than three weeks' time.

So, in addition to that, Your Honor, there is a component of the new charges that is going to require us to do investigation in Mexico, those arrangements have already been made by us, and so I just don't see how responsibly we can be ready to try -- the gravity of these new charges is monumental, I mean we're talking, if they run together, 30 years of mandatory prison time and to give us three weeks, three weeks to try those new charges, it puts us in a position that I don't think we can be put in.

THE COURT: I hear you.

Mr. Geragos.

MR. GERAGOS: Good morning. We filed a letter but I believe there was an ECF problem so I don't know if Your Honor --

THE COURT: You filed the letter, what was the subject of the letter? I got a lot of letters this weekend.

MR. GERAGOS: I know.

The letter was about the fact that we wanted to bring to the Court's attention that we believe that now with the superseding indictment that there is a situation where the severance on behalf of Ms. Bronfman is even more necessitated. As I'm listening to Mr. Agnifilo, it strikes me, and I suggested this in the letter, that the solution is to sever off Ms. Bronfman. My -- you know, as the late to the party guy is they have issues but I don't know that the issues can't be solved by severing off Ms. Bronfman who shouldn't be in the middle of that to begin with.

They at a certain point need to try this case and they've got to try both issues, so let them try both issues but we don't need to be the collateral damage. That's essentially in essence what the letter says. And I said in the letter that a cynic might argue that --

THE COURT: I read your remark about what a cynic might argue.

MR. GERAGOS: Right.

THE COURT: Surprisingly you said that.

MR. GERAGOS: I would respectfully argue --

THE COURT: Okay.

MR. GERAGOS: -- that we should be severed off.

THE COURT: I hear you.

MR. BUCKLEY: Your Honor --

THE COURT: Yes, sir.

MR. BUCKLEY: Sean Buckley on behalf of Ms. Allison Mack. Just to follow up on what Mr. Geragos was saying, based upon the new charging instrument, we anticipate that we too will be filing a motion to sever Ms. Mack.

THE COURT: Okay. That's fine.

So, under Rule 5(c)(3), why wouldn't that apply, that there be a proceeding undertaken under the Federal Rules of Criminal Procedure where a district other than the offense this was brought in -- a district other than that where the offense originally occurred.

I'm just trying to understand this from the government's point of view for the moment.

MS. PENZA: The government's understanding is that that is only for the initial appearance and that here where there is a superseding indictment and we are talking about arraignment on a superseding indictment, that Rule 5 does not apply at all and, Your Honor, if I can refer you to Rule 43 of the Federal Rules of Criminal Procedure.

THE COURT: Sure.

MS. PENZA: That talks about when a defendant's presence is required and, Your Honor, although Rule 5 -- although a defendant's presence is required at the initial appearance, the initial arraignment and the plea, the comments to the 2002 amendments discuss the fact that by inserting the

word "initial" before arraignments, revised Rule 43(a)(1) reflects the view that a defendant need not be --

THE COURT: Slowly, slowly.

MS. PENZA: Excuse me. Rule 43(a)(1) reflects the view that a defendant need not be present for subsequent arraignments based upon a superseding indictment. So, given that, Your Honor, the government's position is that the Court may arraign the defendant. The rules that apply to Rule 5 for an initial appearance do not apply when there is a superseding indictment and certainly there can be no harm from the Court arraigning the defendant on the charges before it.

THE COURT: Well, let me ask a collateral question; your charge, I think Count Eleven is the old Count Seven?

MS. PENZA: That's correct, Your Honor.

THE COURT: All right. And you had -- as Mr. Agnifilo pointed out in his letter, you had indicated that that was a charge that could be or should be, I'm not sure which, sent up to the Northern District of New York if the government sought to proceed on it, is that a fair statement?

MS. PENZA: That is correct, Your Honor, and if I may add, our U.S. Attorney has been in contact with the U.S. Attorney in the Northern District of New York and certainly if the defendant chooses not to waive venue regarding the child pornography substantive counts, we will seek to have those brought in the Northern District of New York. However, the

government is still unclear as to whether the defendant is actually intending to not waive venue if the Court does not sever the racketeering act based on child pornography which the government respectfully believes that there is no precedent for the Court doing so. So, we believe that the defendant should have to make that decision at this point.

THE COURT: Well, they may make a motion to sever. The motions that were made on the first superseding indictment are no longer -- are now moot because there's a second superseding indictment and so we're going to have to do a number of things.

Number one, I'm going to arraign the defendants on the second superseding indictment.

To the extent that the defendants want to proceed in the Northern District of New York, they're going to let me know by Friday. To the extent that they want to sever, their formal motions will be due Friday. Everything will be due Friday because we don't have any more time. I don't need a long and tortured discussion, just basic case law would be helpful on this. Lord knows everybody has enough lawyers around here. So, we will get that accomplished and I'll proceed from there because you need answers and I don't blame you on the defense side.

So, let's do the arraignment for Mr. Raniere.

MR. AGNIFILO: Can I just make a brief record and I

apologize --

THE COURT: You can make whatever record you want. I'm doing the arraignment now, you can do the record after I do the arraignment.

MR. AGNIFILO: That's fine.

THE COURT: We're going to do it in my order, not your order.

MR. AGNIFILO: Very good.

THE COURT: I think that's the way we're going to do it --

MR. AGNIFILO: Perfect.

THE COURT: -- from here on out.

Mr. Raniere, will you stand up.

Have you received a copy of the second superseding indictment?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Do you want it read?

THE DEFENDANT: No, Your Honor.

THE COURT: All right. Do you wish to enter a plea?

THE DEFENDANT: Not guilty, Your Honor.

THE COURT: All right. A plea of not guilty is entered to the second superseding indictment. Okay.

For -- go ahead.

MR. DIAZ: Your Honor, for Ms. Salzman, she has

reviewed the superseding indictment, she enters a plea of not guilty.

THE COURT: Lauren Salzman has reviewed the second superseding indictment. You waive its reading?

MR. DIAZ: We do, Your Honor.

THE COURT: And do you wish to enter a plea?

MR. DIAZ: We do, not guilty.

THE COURT: A plea of not guilty is entered to the second superseding indictment.

For Ms. Mack?

MR. BUCKLEY: Yes, Your Honor, Sean Buckley on behalf of Ms. Mack. We have reviewed the second superseding indictment with Ms. Mack. She waives its public reading and at this time we enter a plea of not guilty.

THE COURT: A plea of not guilty is entered for Ms. Mack. Thank you very much.

Yes, for Ms. Russell.

MS. HARRIS: Good morning, Your Honor, on behalf of Ms. Russell, we've reviewed the second superseding indictment, she waives a public reading and enters a plea of not guilty.

THE COURT: A plea of not guilty is entered for Ms. Russell, thank you very much.

And for Ms. Bronfman?

MR. GERAGOS: Thank you, Your Honor, Mark Geragos, G-E-R-A-G-O-S for Ms. Bronfman. We waive further reading,

we've reviewed it and without sacrificing any venue arguments or any other --

THE COURT: Right, you get all your arguments.

MR. GERAGOS: Any jurisdictional issues.

THE COURT: Everything, you've got everything you want to put forward.

MR. GERAGOS: Yes, thank you, I appreciate it. Not guilty.

THE COURT: Not guilty?

MR. GERAGOS: Yes.

THE COURT: A plea of not guilty is entered for Ms. Bronfman to the second superseding indictment.

Thank you very much.

MR. GERAGOS: Thank you, Your Honor.

THE COURT: Oh, and Mr. Geragos, on your request to have Ms. Necheles removed from representation; is that your wish, Ms. Bronfman?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The motion is granted.

MR. GERAGOS: Thank you, Your Honor.

THE DEFENDANT: Thank you.

THE COURT: So, you wanted to make a record.

MR. AGNIFILO: Not to belabor the point, it is our position that Counts Three, Four, Five and Eleven, the Northern District of New York counts, that the Court, most

respectfully, doesn't have the basis to arraign Mr. Raniere. That being said, we're prepared to go forward as Your Honor sees fit.

THE COURT: Well, what I'd like you to do is give me some paper on all of this by Friday.

MR. AGNIFILO: Very good. Thank you.

THE COURT: And if you wish to make a motion to dismiss, you can do that by Friday too. The point being that you don't have to regurgitate all of the arguments on other matters. You can make reference to your previous submissions to the extent that they are relevant to any motion that you wish to make.

MR. AGNIFILO: Very good.

THE COURT: And the government will get until the following Friday to respond to everything.

Now, let me go over some of the other issues, then you can bring up anything you want but let me just go over my issues for a moment.

The proposed jury questionnaires were due today. I've given you more time but I don't know how much more time I've given you.

MS. PENZA: Your Honor, we asked that that be stayed until today. I think given the fact that we have no clarity on when the trial date will be, given that Mr. Agnifilo is representing that he cannot be prepared for trial on the child

pornography charge -- the child pornography racketeering acts, that it would be premature to set that deadline today.

THE COURT: Well, I have 500 people coming in on April 8th and 9th so I'm sure that they'd like to have the opportunity to fill out questionnaires rather than have me read the questions to them. So, I'd like to know how you all see that coming down.

MS. PENZA: Your Honor, obviously the government's position is that we do not believe it is conceivable for severance of the child pornography charges. Of course, both the government and we expect the defense would want to include certain questions about that, for example, should that go forward.

Additionally, we now have -- I do want to state for the record that in terms of the landscape changing for this case in addition to the superseding indictment, Nancy Salzman pleaded guilty last week and we are in active plea negotiations with three additional defendants. So, in terms of the landscape of this case and what a questionnaire would look like, we are slightly hampered by where we are in terms of not having clarity on when we will be going forward and on what and I think if we understood whether the defendant is -- I think the idea of whether there is going to be child pornography in the case in the Eastern District of New York is really going to be the determinant factor on that and the

government's position is that there will be and we believe --

THE COURT: Well, I've already -- excuse me, I've already asked Mr. Agnifilo to advise whether his client would consent to having the substantive child pornography charges along with Count Eleven transferred to the Northern District of New York for its consideration.

Didn't I just say that?

MS. PENZA: Yes, Your Honor, but the question is really about the RICO predicates. The government concedes that if the defendant chooses not to waive venue as to the substantive child pornography charges, that we will try those at the defendant's peril in the Northern District of New York where he will be facing a separate 15-year mandatory minimum and that is fine and we will do that, but the concern is that the child pornography is also at the heart of our racketeering conspiracy.

THE COURT: And you believe you can go forward with that here?

MS. PENZA: Absolutely, Your Honor, and we believe there is no precedent, certainly defendant has cited none in his initial motion that would allow a severance of that.

THE COURT: Do you have a back problem?

MR. GERAGOS: No. I'm sorry, I apologize.

MS. PENZA: That would be the same -- to suggest that we would not be able to would defeat the idea of RICO. I

mean as it stands we have racketeering acts that were alleged in multiple districts and there's never been the argument that we can't proceed on racketeering acts venued in a different district. That flies in the face of all precedent and the whole point of RICO.

THE COURT: All right. I hear your point. Okay. We will hear from Mr. Agnifilo on Friday and we'll be enlightened.

MR. AGNIFILO: So --

THE COURT: Yes.

MR. AGNIFILO: I just want to clarify, I did not say I could not be ready on April 8th, I said I spoke to a computer expert who said it's very difficult to be ready on April 8th. I'm going to move heaven and earth to be ready on April 8th.

THE COURT: Me too.

MR. AGNIFILO: Your Honor, you and I are on the same page on this.

THE COURT: Exactly. We're going to trial on April 29th, that's what we're doing.

MR. AGNIFILO: Okay.

THE COURT: And the best way to figure out who's going to trial on April 29th is to tell you that we're going to start picking a jury on April 8th.

MR. AGNIFILO: Terrific.

THE COURT: It's guaranteed.

MR. AGNIFILO: Good.

THE COURT: It's in the first day of baby judge school, that's what they teach, set a date, everyone knows what the date is and then live up to your promises.

MR. AGNIFILO: I couldn't agree more.

THE COURT: Go ahead.

MR. AGNIFILO: One more question, Judge.

We want the jury questionnaires. We gave it to them on March 6th. We want the jury questionnaires. Let's do this if we're going to do this. They gave expert -- they blew the deadline on expert disclosures. They're not giving back the jury questionnaires. If we're going to do this trial, let's do this trial.

THE COURT: Well -- no, no.

MR. GERAGOS: I'm going to have --

THE COURT: Mr. Geragos gets his turn.

MR. GERAGOS: I'm going to have a back problem.

I think she said the one thing that I think, if I can be so bold as the latecomer to make a prediction here, this is going to end up -- we're going to end up with Ms. Bronfman and Mr. Raniere being the last two people standing.

So, the problem is if we've got till Friday, the 22nd and if they've got till the following Friday, the 29th,

in order to deal with the severance issues, then that leaves us with we're one week away by the time the government responds, I assume that the other three are going to enter into some kind of agreement by then, and then I don't know how to do the jury questionnaire from her standpoint given what I consider to be the prejudice, that's my problem.

THE COURT: Look, why don't you just get the questions to them this week and then we'll make changes as necessary once we know what's left in this case and the only thing that has to be done definitively is that there has to be a questionnaire that's approved by the Court by the 5th of April, that's what I need to do and then somebody is going to need to print it out, maybe the 4th of April. So, we've got like a couple of weeks in there.

But I need you to get whatever you have now to the other side so that they can look at it so you can have a conversation and then if there are additional questions or deletions, if there are deletion based on what we resolve in the next two weeks, then we can make those adjustments, but I would like the defense to have your proposed questionnaire so they can look at it. They're going to be busy for the next few days working on severance motions, motions to dismiss, other issues, issues about venue, arraignments, all of that which I understand but let's -- when can you have your questions is my question?

MS. PENZA: We can submit something by the end of this week.

THE COURT: Good, Friday. That's good. Then you'll talk among each other.

The other thing I would say is I don't have a crystal ball, I don't know how these negotiations of which you've spoken are going to pan out if they do, so I'm operating on the assumption that every defendant seated at that defense table is going to go to trial. I'm operating on that assumption.

And I'm going to give everyone place cards as to where they're going to sit too because it's going to be organized, all right. I even added a table at the end so there would be plenty of room so everyone can watch the jury and the jury can watch everyone. So, we've made adjustments so that we can move forward and I just want you to understand that I'm not assuming any changes. If changes occur, we'll make adjustments.

Yes.

MS. PENZA: Yes, Your Honor, I'm sorry to stand again but we do have -- the government has an additional concern given the current trial date if the defendants have additional motions to raise. So, at our last status conference before Judge Scanlon there was the -- I believe there were statements about making additional motions

regarding evidence that was produced pursuant to a court order but was produced later pursuant to that court order and there may be other motions.

So, for example, defendant Raineri has stated previously that he intends to make motions for either closed caption TV or depositions in Mexico. He punted on that and so now we're in a place where he has never made those motions and the government certainly doesn't want to be on the eve of trial facing depositions in Mexico.

So, could we ask Your Honor to require that by Friday that the defendants raise any other motions that they intend to make based on the current indictment, Your Honor?

MR. AGNIFILO: All will be there Friday.

THE COURT: Everything.

MR. AGNIFILO: Everything April 8th, 500 jurors, let's go, let's go I mean.

THE COURT: I know you speak for your client.

MR. AGNIFILO: I do.

THE COURT: But that rule applies to everybody. Friday.

MS. PENZA: Thank you, Your Honor.

THE COURT: Is there going to be an appeal from the magistrate judge's 57 page omnibus discovery R & R? I'm just curious. You don't have to guarantee you'll do it but I just want to know is it likely you'll do it?

(No response.)

THE COURT: I'd like to have any of that by Friday too.

MS. PENZA: And may I raise one additional thing?

THE COURT: I guess so.

MS. PENZA: Your Honor, as to additional outstanding motions, obviously we understand that you and Judge Scanlon have been very busy but there are additional motions to suppress that are outstanding. For example, the documents related to the storage locker, none of those have gone to any defendant right now.

Additionally, in terms of privileged documents, we have submitted a motion to Judge Scanlon. Again, we know she's working very hard but we have over 100,000 -- I don't have the exact number in front of me because I'm not on the privilege team -- of documents and it is impossible for the privilege team to go one by one through those documents.

Ms. Bronfman's counsel have now stated that because they are prepping for trial they do not -- they are not in a position to go through the documents that our team has presented as presumptively not privileged. So, the government does have before Judge Scanlon another motion which we hope would cut to the root of a lot of the privilege issues. We believe that a lot of the privilege issues that defendants have raised are farfetched. We brought that up several months

ago. So, these are documents that we want in terms of preparing for trial and to be able to provide to other defendants.

So, in terms of preparing whenever we get that ruling, if we get a ruling that is in our favor, we intend to use those documents for trial and so we just wanted to put that before Your Honor as well.

MR. AGNIFILO: Your Honor, what I'm starting to hear is they're not ready to try this case which to me is amazing, which is also to me why they're returning the superseding indictment 26 days before Your Honor has 500 jurors.

We need the discovery, we need it immediately. There's no basis to wait, there's no basis to do anything. I mean they've blown through agreed upon deadlines in regard to expert disclosures. That's going to be in the Friday brief. They're going to be precluded on the experts because they didn't disclose them on time.

They're late on their discovery and what they did, and it's clear, is that they thought just by returning this superseding indictment they could defeat the April 8th trial date and that's just not -- that's a gamble that they're taking and it's not a gamble that we are anteing up in. I mean my client has been in jail for the better part of a year and we want this trial but we want it fairly and they have the obligation to give over the discovery as soon as

possible.

MR. GERAGOS: I don't understand how I can do all the motions on behalf of Ms. Bronfman if I don't have the discovery. So, I don't have everything so I don't know -- I mean if they're going to come with late-breaking experts and I want to do some kind of a hearing on the experts if I want to respond to that.

THE COURT: You can ask that the trial be put over.

MS. PENZA: Your Honor, just to be clear, I think Ms. Bronfman is the only one with all the documents basically.

MR. GERAGOS: That's not what I'm talking about. I assume they're still going to disclose other documents and other items. If I'm wrong, that's fine.

THE COURT: I mean that's the import of what the government has said, that there are some documents that are being reviewed by the taint team or whoever it is that have not yet been placed in the hands of the defendants which may end up in the hands of the defendants once whatever issues the taint team is engaged in are resolved; is that a fair statement?

MS. PENZA: Yes, and particularly once the motion in front of Judge Scanlon is resolved, we believe there will be buckets of documents.

THE COURT: Buckets?

MS. PENZA: Tens of thousands, hundreds of thousands -- tens of thousands.

THE COURT: I know they read fast but that's a concern for the Court.

MS. PENZA: And, Your Honor, if I may also just state for the record, the idea that the government held back and allowed the defendants to keep child pornography in its possession for months just so that we could return a superseding indictment when we did is ludicrous.

MR. AGNIFILO: Your Honor, Ms. Geragos is well versed in the discovery issues so I'm going to ask her to address you on this part.

MS. GERAGOS: Your Honor, Teny Geragos for Keith Raniere. What I heard the government just say is that -- which we are, we've told Judge Scanlon that we're going to make a motion to suppress the late-breaking discovery that they filed that they've had in their possession at least since December 4th, 2018. They filed a motion with Judge Scanlon to disclose that discovery to us six weeks before jury selection. That date was, according to our calculation, February 25th; according to the government's calculation, I think March 4th.

They told us at the appearance that we still didn't have all of that discovery, we still don't have all of that discovery and now they have represented to the Court that they

have turned it all over. We haven't received all of it and that is stuff that is heartland discovery from a year ago that's been relevant to this indictment, the complaint, all of the indictments and we don't have it yet.

So. I think that's mainly what we're trying -- what Mr. Agnifilo is saying, we just don't have it, so that's what the motion to suppress will be that we'll be filing on Friday.

THE COURT: I see.

MS. PENZA: So, Your Honor, in terms of standing, the government -- if there is a question as to how there could be a motion to suppress given that this is a device as to which every defendant disclaimed a privacy interest from the beginning of this case but putting that to the side, there was a --

THE COURT: That's including Ms. Bronfman?

MS. PENZA: Yes, this is a device that was recovered from 8 Hale which has been referred to in various papers as the library.

THE COURT: Is this a storage unit?

MS. PENZA: No, Your Honor.

THE COURT: This is something else?

MS. PENZA: This is separate, this is separate, but regarding -- actually now maybe I'm not speaking about the same thing but -- sorry -- what Ms. Geragos is speaking

about -- and I apologize for misspeaking just then. What Ms. Geragos is speaking about is, again, I do not believe that there will be standing to suppress but in addition to that, the government did actually, and we planned on contacting defense counsel today although defense counsel represented that certain disks were corrupted, we have reviewed those disks and we believe that it just requires them to go into different folders to actually see the materials that we are talking about.

THE COURT: Okay.

MS. PENZA: And then, sorry, one additional thing, there are privacy concerns that were raised by individual defendants, at least one individual defendant about some of the material that we did receive delayed disclosure over, we'd like the opportunity to talk to the attorney for that defendant and see if we can reach a resolution about making the remainder of the materials available but those are primarily images which should not take a significant amount of time to review.

THE COURT: So, I take it the defense would like to prioritize resolving the motion to suppress the documents from Ms. Bronfman's storage unit, is that a fair statement?

So, I need that as a separate motion, I need that as a separate submission.

MR. GERAGOS: Correct.

THE COURT: For Friday.

MS. PENZA: I believe that's fully briefed, Your Honor.

THE COURT: Actually it is briefed so --

MS. GERAGOS: Yes, I believe that is briefed. What we will be filing on Friday is to suppress -- Judge Scanlon set a deadline for the government to produce certain materials that was allowed under Rule 16 to defer disclosure to a certain date and our position is they've blown that deadline completely and they should be suppressed and they shouldn't be allowed to use it at trial.

MR. GERAGOS: In other words, it will be a very succinct submission.

THE COURT: Okay. And then the government will have a chance to respond to that submission a week from Friday.

MS. PENZA: Thank you, Your Honor.

THE COURT: And then I'll decide that, I'll make that a priority.

MR. BUCKLEY: Your Honor, if I may raise one point of clarification? We will be prepared to make any motions based upon the new superseder by this Friday but I just want to make sure that the Friday date does not apply to motions in limine because the motions in limine necessarily are going to be informed by Your Honor's rulings.

THE COURT: Right, that's right.

MR. BUCKLEY: Okay.

Thank you, Judge.

THE COURT: On the motions in limine, well, I'll set a date for that once I see what we have this Friday and next Friday, so that it's going to be a very close turnaround.

MR. BUCKLEY: Right.

THE COURT: We'll have to deal with it. I'm sure you've dealt with that problem before.

MR. BUCKLEY: Yes.

Thank you, Your Honor.

THE COURT: Okay. Anything else from the government?

MS. PENZA: No, Your Honor.

THE COURT: All right. Other issues from the defense?

You are not doing this alone, are you, Mr. Geragos?

I'm now concerned. Before Ms. Bronfman had like two or three attorneys and now, I know you're talented but it's just you. So, I want to protect her rights.

MR. GERAGOS: Yes, I'm not doing it alone, Ms. Cassidy will be joining me.

THE COURT: You and Ms. Cassidy?

MR. GERAGOS: Yes.

THE COURT: All right.

MR. GERAGOS: And I'm also hopeful that I won't be here on April 8th but we'll wait and see until you get the motion to sever.

THE COURT: Once again, my crystal ball is missing. So, anything else from any defense counsel for today?

(No response.)

THE COURT: All right.

MS. GERAGOS: I'm sorry, Your Honor. We put in a letter --

THE COURT: Ms. Geragos.

MS. GERAGOS: The government before our last court appearance filed a letter, docket number 386, requesting dates for witness lists, exhibit lists. I just think since we are operating under the assumption that we are going to trial on April 8th, if we could try to set the dates for the exhibit list because that's something we need to start preparing.

MS. PENZA: Your Honor, we proposed the 15th. We don't believe that the 1st or whatever Ms. Geragos requested is feasible especially given that we don't know what this trial is going to look like.

MS. GERAGOS: What I requested, Your Honor, was that we set April 1st as a deadline for all the parties to meet and confer regarding exhibits and witness lists because I think that's something that would be efficient and then the April 7th date, which would only be a week before what the

government requested, would be the deadline to exchange trial exhibits and witness lists and we agree as to the government's proposed date of April 15th for proposed final jury charges, final transcripts and translations. That's document number 422. And I think that's consistent with cases in this district that Mr. Agnifilo and I have both had.

MS. PENZA: Your Honor, respectfully, the government believes that we should defer any meeting and conferring on exhibits until we have more clarity as to who the parties are going to be and what counts are being charged. That is going to change what our witness list and exhibits are.

THE COURT: Let's meet on Thursday, April 4th at 11 a.m. and discuss it. I would suggest that you try to meet and confer before that time.

MR. AGNIFILO: Thank you.

THE COURT: That way we just move things along as best as possible. That gives you an opportunity to finish the briefing of the matters that I've asked you to brief and then to move on from there and perhaps we'll have some more clarity on the case going forward at that point.

MS. PENZA: Thank you, Your Honor.

THE COURT: All right.

Anything else from you, sir?

MR. AGNIFILO: No, I'm good. Nothing, Judge.

THE COURT: Mr. Diaz?

MR. DIAZ: No, Your Honor.

THE COURT: Mr. Buckley?

MR. BUCKLEY: No. Thank you, Your Honor.

THE COURT: Ms. Harris?

MS. HARRIS: No, Your Honor.

THE COURT: Mr. Geragos?

MR. GERAGOS: No, Your Honor. Thank you.

THE COURT: All right. Thank you very much, everybody. Have a nice day.

(Time noted: 11:50 a.m.)

(End of proceedings.)

**1**

**10** [3] - 5:20, 5:21, 6:6
**100,000** [1] - 25:14
**11** [1] - 34:12
**11201** [2] - 1:15, 2:7
**11:00** [1] - 1:8
**11:50** [1] - 35:10
**15-year** [4] - 4:25, 5:2, 9:5, 19:13
**15th** [2] - 33:17, 34:3
**16** [1] - 31:8
**18** [1] - 1:8
**18-CR-204(NGG** [1] - 1:3
**1st** [2] - 33:18, 33:22

**2**

**2002** [1] - 11:25
**2018** [1] - 28:19
**2019** [2] - 1:8, 8:10
**225** [1] - 2:6
**22nd** [1] - 21:25
**25th** [1] - 28:21
**26** [2] - 6:16, 26:11
**271** [1] - 1:14
**29th** [3] - 20:20, 20:23, 21:25

**3**

**30** [1] - 9:15
**35** [1] - 8:17
**386** [1] - 33:12

**4**

**40,000** [1] - 8:17
**422** [1] - 34:5
**43** [1] - 11:18
**43(a)(1** [2] - 12:1, 12:4
**4th** [4] - 22:13, 28:19, 28:22, 34:12

**5**

**5** [7] - 4:7, 6:1, 6:4, 6:10, 11:17, 11:22, 12:8
**5(c)(3** [1] - 11:7
**500** [4] - 6:17, 18:3, 24:15, 26:11
**57** [1] - 24:23
**5th** [1] - 22:11

**6**

**600** [1] - 6:17
**613-2274** [1] - 2:7
**6th** [1] - 21:10

**7**

**718** [1] - 2:7
**7th** [1] - 33:25

**8**

**8** [1] - 29:18
**8th** [13] - 7:4, 7:24, 9:4, 9:6, 18:4, 20:12, 20:14, 20:15, 20:24, 24:15, 26:20, 33:2, 33:15

**9**

**9th** [1] - 18:4

**A**

**a.m** [3] - 1:8, 34:13, 35:10
**ability** [1] - 5:24
**able** [2] - 19:25, 26:2
**absolute** [1] - 6:23
**absolutely** [2] - 6:22, 19:19
**accomplished** [1] - 13:21
**according** [2] - 28:21, 28:22
**act** [1] - 13:3
**active** [1] - 18:17
**acts** [7] - 4:15, 4:21, 6:20, 7:9, 18:1, 20:1, 20:3
**add** [1] - 12:21
**added** [1] - 23:13
**addition** [5] - 4:16, 5:1, 9:10, 18:16, 30:3
**additional** [11] - 4:25, 8:8, 18:18, 22:17, 23:21, 23:23, 23:25, 25:4, 25:6, 25:8, 30:11
**additionally** [2] - 18:14, 25:12
**address** [1] - 28:13
**adjustments** [3] - 22:19, 23:15, 23:18
**advise** [1] - 19:3
**AGNIFILO** [34] - 1:20, 2:23, 3:23, 4:2, 5:6, 5:13, 5:18, 7:18, 7:20, 7:23, 8:4, 8:16, 13:25, 14:5, 14:8, 14:12, 16:23, 17:6, 17:13, 20:9, 20:11, 20:17, 20:21, 20:25, 21:2, 21:6, 21:8, 24:13, 24:15, 24:18, 26:8, 28:11, 34:15, 34:24
**Agnifilo** [9] - 2:24, 3:21, 10:6, 12:16, 17:24, 19:3, 20:7, 29:6, 34:6
**ago** [4] - 8:3, 8:15, 26:1, 29:2
**agree** [2] - 21:6, 34:2
**agreed** [1] - 26:14
**agreement** [1] - 22:4
**ahead** [2] - 14:24, 21:7
**AL** [1] - 1:8
**alleged** [2] - 8:19, 20:1
**Allison** [2] - 3:6, 11:2
**allow** [1] - 19:21
**allowed** [3] - 28:8, 31:8, 31:11
**alone** [2] - 32:16, 32:21
**AMANDA** [1] - 2:2
**Amanda** [1] - 3:10
**amazing** [1] - 26:9
**amendments** [1] - 11:25
**AMERICA** [1] - 1:3
**amount** [1] - 30:18
**analysis** [2] - 9:4, 9:8
**Andrea** [1] - 3:2
**ANDREA** [1] - 2:4
**annoyingly** [1] - 6:15
**answers** [1] - 13:22
**anteing** [1] - 26:22
**anticipate** [1] - 11:4
**apologize** [3] - 14:1, 19:23, 30:1
**appeal** [1] - 24:22
**appearance** [7] - 6:25, 7:1, 11:15, 11:24, 12:9, 28:23, 33:12
**APPEARANCES** [1] - 1:12
**appearances** [1] - 2:16
**applies** [1] - 24:19
**apply** [5] - 11:7, 11:18, 12:8, 12:9, 31:22
**appreciate** [1] - 16:7
**appropriate** [1] - 4:8
**approved** [1] - 22:11
**April** [21] - 7:4, 7:24, 9:4, 9:6, 18:4, 20:12, 20:14, 20:15, 20:19, 20:23, 20:24, 22:12, 22:13, 24:15, 26:20, 33:2, 33:15, 33:22, 33:25, 34:3, 34:12
**argue** [4] - 6:13, 10:16, 10:18, 10:21
**argument** [2] - 6:10, 20:2
**arguments** [3] - 16:1, 16:3, 17:9
**arraign** [5] - 4:4, 5:24, 12:8, 13:12, 17:1
**arraigned** [4] - 4:6, 4:10, 5:7, 5:15
**arraigning** [1] - 12:11
**arraignment** [7] - 4:8, 6:3, 11:17, 11:24, 13:24, 14:3, 14:4
**arraignments** [3] - 12:1, 12:6, 22:23
**arrangements** [1] - 9:12
**Assistant** [1] - 1:17
**Assisted** [1] - 2:9
**assume** [2] - 22:3, 27:14
**assuming** [1] - 23:17
**assumption** [3] - 23:8, 23:10, 33:14
**attention** [1] - 10:3
**Attorney** [3] - 1:14, 12:21, 12:22
**attorney** [1] - 30:15
**attorneys** [1] - 32:19
**Attorneys** [1] - 1:17
**available** [1] - 30:17
**aware** [1] - 4:5

**B**

**baby** [1] - 21:3
**ball** [2] - 23:6, 33:4
**banter** [1] - 7:21
**based** [7] - 4:18, 11:3, 12:6, 13:3, 22:18, 24:12, 31:21
**basic** [1] - 13:19
**basis** [5] - 4:20, 8:8, 17:1, 26:13
**BEFORE** [1] - 1:11
**begin** [1] - 10:11
**beginning** [1] - 29:14
**behalf** [5] - 10:5, 11:2, 15:12, 15:18, 27:3
**belabor** [1] - 16:23
**believes** [2] - 13:4, 34:8
**best** [2] - 20:22, 34:17
**better** [2] - 6:16, 26:23
**blame** [1] - 13:22
**blew** [1] - 21:11
**blown** [2] - 26:14, 31:9
**bold** [1] - 21:20
**brand** [2] - 6:19, 7:25
**breaking** [2] - 27:5, 28:17
**brief** [3] - 13:25, 26:15, 34:18
**briefed** [3] - 31:2, 31:4, 31:5
**briefing** [1] - 34:18
**bring** [2] - 10:3, 17:17
**bronfman** [1] - 1:23
**Bronfman** [13] - 3:13, 10:5, 10:8, 10:10, 15:23, 15:25, 16:12, 16:17, 21:22, 27:3, 27:11, 29:16, 32:18
**Bronfman's** [2] - 25:18, 30:22
**Brooklyn** [3] - 1:5, 1:15, 2:7
**brought** [3] - 11:10, 12:25, 25:25
**buckets** [2] - 27:25, 28:1
**BUCKLEY** [10] - 1:25, 3:5, 10:25, 11:2, 15:11, 31:19, 32:1, 32:6, 32:9, 35:3
**Buckley** [4] - 3:5, 11:2, 15:11, 35:2
**building** [1] - 7:4
**busy** [2] - 22:21, 25:8
**BY** [1] - 1:15

**C**

**cache** [1] - 8:16
**Cadman** [2] - 1:14, 2:6
**calculation** [2] - 28:21, 28:22
**cannot** [1] - 17:25
**caption** [1] - 24:6
**cards** [1] - 23:11
**case** [14] - 4:23, 6:7, 6:25, 7:23, 9:5, 10:12, 13:19, 18:16, 18:19, 18:24, 22:9, 26:9, 29:14, 34:20
**cases** [1] - 34:5
**Cassidy** [2] - 32:22, 32:23
**certain** [5] - 10:12, 18:12, 30:6, 31:7, 31:9
**certainly** [4] - 12:10, 12:22, 19:20, 24:8
**chance** [1] - 31:15
**change** [1] - 34:11
**changes** [3] - 22:8, 23:17
**changing** [1] - 18:15

**charge** [4] - 6:9, 12:13, 12:17, 18:1
**charged** [2] - 4:16, 34:10
**charges** [19] - 5:8, 6:1, 6:4, 6:5, 6:19, 7:2, 7:3, 7:25, 8:8, 8:14, 9:11, 9:14, 9:17, 12:11, 18:10, 19:4, 19:11, 34:3
**charging** [1] - 11:4
**chicken** [3] - 7:5, 7:6, 7:8
**Chief** [1] - 2:6
**child** [12] - 4:20, 8:19, 12:23, 13:3, 17:25, 18:1, 18:10, 18:23, 19:4, 19:11, 19:15, 28:8
**chooses** [2] - 12:23, 19:10
**cited** [1] - 19:20
**cites** [1] - 4:7
**Clare** [1] - 3:13
**clarification** [1] - 31:20
**clarify** [1] - 20:11
**clarity** [4] - 17:23, 18:21, 34:9, 34:19
**clear** [4] - 4:1, 5:3, 26:19, 27:10
**clearly** [1] - 6:1
**client** [3] - 19:3, 24:17, 26:23
**close** [1] - 32:5
**closed** [1] - 24:5
**collateral** [2] - 10:14, 12:12
**coming** [6] - 6:17, 7:3, 7:24, 18:3, 18:7
**comments** [1] - 11:24
**complaint** [1] - 29:3
**completely** [1] - 31:10
**component** [1] - 9:11
**Computer** [1] - 2:9
**computer** [3] - 9:2, 9:8, 20:13
**Computer-Assisted** [1] - 2:9
**concedes** [1] - 19:9
**conceivable** [1] - 18:9
**concern** [3] - 19:14, 23:22, 28:5
**concerned** [1] - 32:18
**concerns** [1] - 30:12
**confer** [2] - 33:23, 34:14
**CONFERENCE** [1] - 1:6
**conference** [1] - 23:24
**conferring** [1] - 34:8
**consent** [1] - 19:4
**consider** [1] - 22:6
**consideration** [1] - 19:6
**consistent** [1] - 34:5
**conspiracy** [4] - 4:17, 4:18, 4:22, 19:16
**contact** [1] - 12:21
**contacting** [1] - 30:4
**contraband** [2] - 8:22, 9:2
**conversation** [1] - 22:17
**copy** [1] - 14:15
**correct** [5] - 3:18, 5:13, 12:14, 12:20, 30:25
**corrupted** [1] - 30:6
**counsel** [5] - 4:7, 25:18, 30:5, 33:5
**Count** [3] - 12:13, 19:5
**Counts** [1] - 16:24
**counts** [3] - 12:24, 16:25, 34:10
**couple** [1] - 22:14
**course** [3] - 8:21, 18:10
**Court** [13] - 2:5, 2:6, 4:4, 4:19, 5:24, 12:7, 12:10, 13:2, 13:5, 16:25, 22:11, 28:5, 28:25
**court** [5] - 2:25, 5:22, 24:1, 24:2, 33:11
**COURT** [106] - 1:1, 2:15, 2:20, 3:1, 3:4, 3:8, 3:11, 3:15, 3:19, 3:24, 5:11, 5:14, 7:13, 7:19, 7:21, 8:2, 8:7, 9:19, 9:24, 10:17, 10:20, 10:22, 10:24, 11:1, 11:6, 11:20, 12:3, 12:12, 12:15, 13:7, 14:2, 14:6, 14:9, 14:13, 14:18, 14:20, 14:22, 15:3, 15:6, 15:8, 15:15, 15:21, 16:3, 16:5, 16:9, 16:11, 16:15, 16:19, 16:22, 17:4, 17:7, 17:14, 18:3, 19:2, 19:17, 19:22, 20:6, 20:10, 20:16, 20:19, 20:22, 21:1, 21:3, 21:7, 21:15, 21:17, 22:7, 23:3, 24:14, 24:17, 24:19, 24:22, 25:2, 25:5, 27:8, 27:16, 28:1, 28:4, 29:9, 29:16, 29:20, 29:22, 30:10, 30:20, 31:1, 31:4, 31:14, 31:17, 31:25, 32:3, 32:7, 32:11, 32:14, 32:23, 32:25, 33:4, 33:7, 33:10, 34:12, 34:16, 34:22, 34:25, 35:2, 35:4, 35:6, 35:8
**Court's** [2] - 6:23, 10:3
**Courthouse** [1] - 1:4
**courtroom** [1] - 2:22
**Criminal** [4] - 5:9, 5:20, 11:9, 11:19
**crystal** [3] - 4:1, 23:6, 33:4
**CSR** [1] - 2:5
**curious** [1] - 24:24
**current** [3] - 4:5, 23:22, 24:12
**cut** [1] - 25:23
**cynic** [2] - 10:16, 10:17

## D

**damage** [1] - 10:14
**DANIELLE** [1] - 1:22
**Danielle** [1] - 2:24
**date** [12] - 9:3, 17:24, 21:4, 21:5, 23:22, 26:21, 28:21, 31:9, 31:22, 32:4, 33:25, 34:3
**dates** [2] - 33:12, 33:15
**days** [4] - 6:16, 8:1, 22:22, 26:11
**deadline** [6] - 18:2, 21:12, 31:7, 31:9, 33:22, 34:1
**deadlines** [1] - 26:14
**deal** [2] - 22:1, 32:7
**dealt** [1] - 32:8
**December** [1] - 28:19
**decide** [1] - 31:17
**decision** [1] - 13:6
**defeat** [2] - 19:25, 26:20
**DEFENDANT** [5] - 14:17, 14:19, 14:21, 16:18, 16:21
**defendant** [20] - 2:22, 4:4, 4:6, 4:23, 12:2, 12:5, 12:8, 12:11, 12:23, 13:1, 13:6, 18:22, 19:10, 19:20, 23:8, 24:4, 25:11, 29:13, 30:13, 30:16
**Defendant** [1] - 1:20
**defendant's** [5] - 4:18, 5:3, 11:21, 11:23, 19:12
**defendants** [14] - 1:9, 4:10, 7:16, 13:12, 13:14, 18:18, 23:22, 24:11, 25:24, 26:3, 27:19, 27:20, 28:8, 30:13
**defense** [11] - 4:7, 8:24, 13:23, 18:11, 22:20, 23:9, 30:5, 30:20, 32:15, 33:5
**defer** [2] - 31:8, 34:8
**definitively** [1] - 22:10
**delayed** [1] - 30:14
**delete** [1] - 8:20
**deletion** [1] - 22:18
**deletions** [1] - 22:18
**depositions** [2] - 24:6, 24:9
**Derohannesian** [1] - 2:24
**DEROHANNESIAN** [1] - 1:21
**determinant** [1] - 18:25
**determining** [1] - 4:8
**device** [3] - 6:16, 29:12, 29:17
**DIAZ** [6] - 2:3, 3:2, 14:25, 15:5, 15:7, 35:1
**Diaz** [2] - 3:2, 34:25
**different** [2] - 20:3, 30:8
**difficult** [1] - 20:13
**disclaimed** [1] - 29:13
**disclose** [3] - 26:17, 27:14, 28:20
**disclosure** [2] - 30:14, 31:8
**disclosures** [2] - 21:12, 26:15
**discovered** [1] - 8:18
**discovery** [17] - 8:2, 8:7, 8:12, 8:13, 8:16, 8:19, 24:23, 26:12, 26:18, 26:25, 27:4, 28:12, 28:17, 28:20, 28:24, 28:25, 29:2
**discuss** [3] - 3:22, 11:25, 34:13
**discussion** [1] - 13:19
**disks** [2] - 30:6, 30:7
**dismiss** [3] - 4:13, 17:8, 22:22
**DISTRICT** [2] - 1:1, 1:1
**District** [15] - 4:25, 5:8, 5:25, 6:4, 6:5, 6:9, 6:19, 12:18, 12:22, 12:25, 13:15, 16:25, 18:24, 19:5, 19:12
**district** [4] - 11:9, 11:10, 20:4, 34:6
**districts** [1] - 20:2
**docket** [1] - 33:12
**document** [1] - 34:4
**documents** [14] - 8:17, 9:1, 25:9, 25:12, 25:16, 25:17, 25:20, 26:1, 26:6, 27:11, 27:14, 27:17, 27:25, 30:21
**done** [1] - 22:10
**DONOGHUE** [1] - 1:13
**down** [1] - 18:7
**Driscoll** [1] - 2:5
**due** [3] - 13:17, 17:19

## E

**earth** [1] - 20:14
**East** [2] - 1:14, 2:6
**Eastern** [3] - 5:8, 6:3, 18:24
**EASTERN** [1] - 1:1
**ECF** [1] - 9:22
**effectively** [1] - 6:4
**efficient** [1] - 33:24
**either** [1] - 24:5
**Eleven** [3] - 12:13, 16:24, 19:5
**end** [9] - 5:18, 6:2, 7:8, 21:21, 23:1, 23:13, 27:20, 35:11
**engaged** [1] - 27:21
**enlightened** [1] - 20:8
**enter** [5] - 5:14, 14:20, 15:6, 15:14, 22:3
**entered** [6] - 6:7, 14:23, 15:8, 15:15, 15:21, 16:11
**enters** [3] - 2:22, 15:1, 15:20
**entitled** [1] - 7:19
**especially** [2] - 4:15, 33:19
**ESQ** [15] - 1:13, 1:15, 1:16, 1:16, 1:20, 1:21, 1:21, 1:22, 1:23, 1:25, 1:25, 2:1, 2:2, 2:3, 2:4
**essence** [1] - 10:15
**essentially** [1] - 10:15
**ET** [1] - 1:8
**eve** [1] - 24:8
**evidence** [1] - 24:1

**exact** [1] - 25:15
**exactly** [1] - 20:19
**example** [3] - 18:12, 24:4, 25:9
**exchange** [1] - 34:1
**excuse** [2] - 12:4, 19:2
**exhibit** [2] - 33:13, 33:15
**exhibits** [4] - 33:23, 34:2, 34:9, 34:11
**expect** [1] - 18:11
**expert** [5] - 9:2, 20:13, 21:11, 21:12, 26:15
**experts** [3] - 26:16, 27:5, 27:6
**extent** [3] - 13:14, 13:16, 17:11

**F**

**face** [2] - 4:24, 20:4
**facing** [3] - 5:1, 19:13, 24:9
**fact** [3] - 10:2, 11:25, 17:23
**factor** [1] - 18:25
**fair** [3] - 12:19, 27:21, 30:22
**fairly** [1] - 26:24
**famously** [1] - 6:14
**farfetched** [1] - 25:25
**fast** [1] - 28:4
**favor** [1] - 26:5
**FBI** [2] - 8:24, 8:25
**FCRR** [1] - 2:5
**feasible** [1] - 33:19
**February** [1] - 28:21
**federal** [1] - 5:22
**Federal** [4] - 5:9, 5:19, 11:8, 11:19
**few** [1] - 22:22
**figure** [1] - 20:22
**filed** [5] - 9:21, 9:24, 28:18, 28:19, 33:12
**filing** [3] - 11:5, 29:7, 31:6
**fill** [1] - 18:5
**final** [2] - 34:3, 34:4
**fine** [5] - 7:23, 11:6, 14:5, 19:14, 27:15
**finish** [2] - 8:23, 34:17
**first** [5] - 4:3, 4:9, 6:11, 13:8, 21:3
**fit** [1] - 17:3
**five** [1] - 8:1
**Five** [1] - 16:24
**flies** [1] - 20:4
**folders** [1] - 30:8
**follow** [1] - 11:3
**following** [2] - 17:15, 21:25
**forensic** [3] - 9:2, 9:4, 9:8
**forget** [1] - 7:21
**formal** [1] - 13:17
**forward** [9] - 4:12, 4:14, 16:6, 17:2, 18:13, 18:21, 19:17, 23:16, 34:20
**Four** [1] - 16:24
**four** [3] - 5:22, 7:2, 8:24
**Friday** [26] - 8:24, 8:25, 9:3, 13:16, 13:17, 13:18, 17:5, 17:8, 17:15, 20:7, 21:24, 21:25, 23:3, 24:11, 24:13, 24:20, 25:2, 26:15, 29:8, 31:1, 31:6, 31:15, 31:21, 31:22, 32:4, 32:5
**front** [2] - 25:15, 27:24
**fully** [1] - 31:2

**G**

**gamble** [2] - 26:21, 26:22
**GARAUFIS** [1] - 1:11
**Geragos** [15] - 2:24, 3:13, 9:20, 11:3, 15:24, 16:15, 21:17, 28:11, 28:14, 29:25, 30:2, 32:17, 33:10, 33:18, 35:6
**GERAGOS** [32] - 1:21, 1:23, 3:12, 3:13, 9:21, 10:1, 10:19, 10:21, 10:23, 15:24, 15:25, 16:4, 16:7, 16:10, 16:14, 16:20, 19:23, 21:16, 21:18, 27:2, 27:13, 28:14, 30:25, 31:5, 31:12, 32:21, 32:24, 33:1, 33:8, 33:11, 33:21, 35:7
**given** [9] - 12:6, 17:20, 17:21, 17:23, 17:24, 22:5, 23:22, 29:12, 33:19
**Glecier** [1] - 4:16
**Government** [1] - 1:13
**government** [27] - 4:5, 4:18, 6:15, 7:5, 7:6, 8:11, 12:19, 13:1, 13:4, 17:14, 18:11, 19:9, 22:2, 23:21, 24:8, 25:21, 27:17, 28:7, 28:15, 29:11, 30:4, 31:7, 31:14, 32:12, 33:11, 34:1, 34:7
**government's** [7] - 11:13, 11:14, 12:7, 18:8, 19:1, 28:22, 34:2
**granted** [1] - 16:19
**gravity** [1] - 9:14
**great** [1] - 6:24
**guarantee** [1] - 24:24
**guaranteed** [1] - 21:1
**guess** [1] - 25:5
**guilty** [17] - 5:24, 5:25, 6:8, 6:9, 14:21, 14:22, 15:2, 15:7, 15:8, 15:14, 15:15, 15:20, 15:21, 16:8, 16:9, 16:11, 18:17
**guy** [1] - 10:9

**H**

**HAJJAR** [1] - 1:16
**Hajjar** [1] - 2:17
**Hale** [1] - 29:18
**hampered** [1] - 18:20
**hands** [2] - 27:19, 27:20
**hard** [1] - 25:14
**harm** [1] - 12:10
**Harris** [2] - 3:10, 35:4
**HARRIS** [4] - 2:1, 3:9, 15:18, 35:5
**hear** [5] - 9:19, 10:24, 20:6, 20:7, 26:8
**heard** [1] - 28:15
**hearing** [1] - 27:6
**heart** [2] - 6:12, 19:15
**heartland** [1] - 29:2
**heaven** [1] - 20:14
**HECTOR** [1] - 2:3
**Hector** [1] - 3:2
**held** [1] - 28:7
**helpful** [1] - 13:20
**hold** [1] - 8:20
**Holly** [1] - 2:5
**Honor** [68] - 2:19, 2:23, 3:5, 3:9, 3:12, 3:18, 4:3, 5:6, 6:13, 6:22, 6:23, 6:24, 6:25, 7:8, 8:6, 9:10, 9:23, 10:25, 11:18, 11:22, 12:7, 12:14, 12:20, 14:17, 14:19, 14:21, 14:25, 15:5, 15:11, 15:18, 15:24, 16:14, 16:18, 16:20, 17:2, 17:22, 18:8, 19:8, 19:19, 20:17, 23:20, 24:10, 24:12, 24:21, 25:6, 26:7, 26:8, 26:11, 27:10, 28:6, 28:11, 28:14, 29:10, 29:21, 31:3, 31:16, 31:19, 32:10, 32:13, 33:8, 33:17, 33:21, 34:7, 34:21, 35:1, 35:3, 35:5, 35:7
**Honor's** [2] - 7:6, 31:24
**HONORABLE** [1] - 1:11
**hope** [1] - 25:22
**hopeful** [1] - 33:1
**hundreds** [1] - 28:2

**I**

**idea** [3] - 18:23, 19:25, 28:7
**II** [1] - 1:21
**images** [2] - 9:3, 30:18
**immediately** [1] - 26:12
**import** [1] - 27:16
**important** [1] - 5:4
**impossible** [2] - 7:11, 25:16
**include** [1] - 18:11
**including** [1] - 29:16
**incumbent** [1] - 5:11
**indicated** [1] - 12:16
**indicating** [1] - 4:6
**indictment** [29] - 3:17, 3:20, 4:5, 4:9, 4:11, 5:15, 6:19, 10:4, 11:16, 11:17, 12:6, 12:10, 13:8, 13:10, 13:13, 14:16, 14:23, 15:1, 15:4, 15:9, 15:13, 15:19, 16:12, 18:16, 24:12, 26:11, 26:20, 28:10, 29:3
**indictments** [1] - 29:4
**individual** [2] - 30:12, 30:13
**information** [2] - 8:13
**informed** [1] - 31:24
**initial** [6] - 11:15, 11:23, 11:24, 12:1, 12:9, 19:21
**injury** [1] - 5:17
**inserting** [1] - 11:25
**instance** [1] - 4:9
**instrument** [1] - 11:4
**intend** [3] - 4:19, 24:12, 26:5
**intending** [1] - 13:2
**intends** [2] - 4:23, 24:5
**interest** [2] - 6:23, 29:13
**investigation** [1] - 9:12
**issues** [16] - 3:19, 10:9, 10:13, 16:4, 17:16, 17:18, 22:1, 22:23, 25:23, 25:24, 27:20, 28:12, 32:14
**items** [1] - 27:15

**J**

**jail** [1] - 26:23
**joining** [1] - 32:22
**judge** [1] - 21:3
**Judge** [13] - 6:20, 7:7, 21:8, 23:24, 25:7, 25:13, 25:22, 27:24, 28:16, 28:19, 31:6, 32:2, 34:24
**judge's** [1] - 24:23
**jumped** [1] - 8:9
**jurisdictional** [1] - 16:4
**jurors** [3] - 6:17, 24:15, 26:11
**jury** [12] - 7:3, 7:24, 17:19, 20:24, 21:9, 21:10, 21:13, 22:5, 23:14, 23:15, 28:20, 34:3
**JUSTINE** [1] - 2:1
**Justine** [1] - 3:9

**K**

**Kathy** [1] - 3:10
**keep** [1] - 28:8
**KEITH** [1] - 1:8
**Keith** [2] - 2:25, 28:14
**KIM** [1] - 1:15
**kind** [3] - 9:8, 22:4, 27:6
**known** [1] - 8:14
**knows** [2] - 13:20, 21:4

**L**

**landscape** [2] - 18:15, 18:19
**last** [4] - 18:17, 21:22, 23:23, 33:11
**late** [4] - 10:8, 26:18, 27:5, 28:17
**late-breaking** [2] -

27:5, 28:17
**latecomer** [1] - 21:20
**Lauren** [2] - 3:3, 15:3
**law** [4] - 4:6, 4:14, 6:21, 13:19
**lawyers** [2] - 8:25, 13:20
**lays** [1] - 6:1
**least** [2] - 28:18, 30:13
**leaves** [1] - 22:1
**left** [3] - 3:3, 3:7, 22:9
**legal** [1] - 4:20
**LESKO** [1] - 1:16
**Lesko** [1] - 2:17
**less** [1] - 9:8
**letter** [15] - 3:20, 3:24, 3:25, 4:19, 9:21, 9:24, 9:25, 10:2, 10:7, 10:15, 10:16, 12:16, 33:9, 33:12
**letters** [1] - 9:25
**library** [1] - 29:19
**life** [1] - 5:22
**likely** [1] - 24:25
**limine** [3] - 31:23, 32:3
**linked** [1] - 5:19
**list** [2] - 33:16, 34:11
**listening** [1] - 10:6
**lists** [4] - 33:13, 33:23, 34:2
**live** [1] - 21:5
**locker** [1] - 25:10
**look** [6] - 9:1, 18:20, 22:7, 22:16, 22:21, 33:20
**looking** [1] - 9:5
**lord** [1] - 13:20
**loud** [1] - 7:11
**loudly** [1] - 6:14
**ludicrous** [1] - 28:10

## M

**Mack** [8] - 1:25, 3:6, 11:3, 11:5, 15:10, 15:12, 15:13, 15:16
**magistrate** [1] - 24:23
**mandatory** [5] - 4:25, 5:2, 9:6, 9:16, 19:13
**Marc** [1] - 2:23
**MARC** [1] - 1:20
**March** [4] - 1:8, 8:9, 21:10, 28:22
**Mark** [3] - 2:17, 3:12, 15:24
**MARK** [2] - 1:16, 1:23
**material** [1] - 30:14
**materials** [3] - 30:8, 30:17, 31:7
**matters** [2] - 17:10, 34:18
**MATTHEW** [1] - 1:25
**Matthew** [1] - 3:6
**mean** [8] - 8:10, 9:15, 20:1, 24:16, 26:14, 26:23, 27:5, 27:16
**mechanical** [1] - 2:8
**meet** [3] - 33:23, 34:12, 34:13
**meeting** [1] - 34:8
**MENCHEL** [1] - 1:25
**Menchel** [1] - 3:6
**Mexico** [3] - 9:12, 24:6, 24:9
**middle** [1] - 10:11
**might** [2] - 10:16, 10:18
**minimum** [3] - 5:1, 5:2, 19:13
**minimums** [1] - 9:6
**minute** [1] - 7:13
**missing** [1] - 33:4
**misspeaking** [1] - 30:1
**MOIRA** [1] - 1:15
**moira** [1] - 2:17
**moment** [3] - 2:21, 11:13, 17:18
**months** [3] - 8:15, 25:25, 28:9
**monumental** [1] - 9:15
**moot** [1] - 13:9
**morning** [14] - 2:19, 2:20, 2:23, 3:1, 3:2, 3:4, 3:5, 3:8, 3:9, 3:11, 3:12, 3:15, 9:21, 15:18
**most** [1] - 16:25
**motion** [17] - 4:13, 11:5, 13:7, 16:19, 17:7, 17:11, 19:21, 25:13, 25:22, 27:23, 28:17, 28:19, 29:7, 29:12, 30:21, 30:23, 33:3
**motions** [17] - 13:8, 13:17, 22:22, 23:23, 23:25, 24:3, 24:5, 24:7, 24:11, 25:7, 25:8, 27:3, 31:20, 31:22, 31:23, 32:3
**move** [5] - 7:10, 20:14, 23:16, 34:16, 34:19
**MR** [70] - 2:23, 3:2, 3:5, 3:12, 3:23, 4:2, 5:6, 5:13, 5:18, 7:18, 7:20, 7:23, 8:4, 8:16, 9:21, 10:1, 10:19, 10:21, 10:23, 10:25, 11:2, 13:25, 14:5, 14:8, 14:12, 14:25, 15:5, 15:7, 15:11, 15:24, 16:4, 16:7, 16:10, 16:14, 16:20, 16:23, 17:6, 17:13, 19:23, 20:9, 20:11, 20:17, 20:21, 20:25, 21:2, 21:6, 21:8, 21:16, 21:18, 24:13, 24:15, 24:18, 26:8, 27:2, 27:13, 28:11, 30:25, 31:12, 31:19, 32:1, 32:6, 32:9, 32:21, 32:24, 33:1, 34:15, 34:24, 35:1, 35:3, 35:7
**MS** [42] - 2:17, 3:9, 3:18, 4:3, 8:6, 11:14, 11:21, 12:4, 12:14, 12:20, 15:18, 17:22, 18:8, 19:8, 19:19, 19:24, 23:1, 23:20, 24:21, 25:4, 25:6, 27:10, 27:23, 28:2, 28:6, 28:14, 29:10, 29:17, 29:21, 29:23, 30:11, 31:2, 31:5, 31:16, 32:13, 33:8, 33:11, 33:17, 33:21, 34:7, 34:21, 35:5
**multiple** [1] - 20:2
**must** [1] - 9:4

## N

**Nancy** [1] - 18:16
**necessarily** [1] - 31:23
**necessary** [1] - 22:9
**necessitated** [1] - 10:5
**Necheles** [1] - 16:16
**need** [14] - 10:12, 10:14, 12:2, 12:5, 13:18, 13:22, 22:12, 22:13, 22:15, 26:12, 30:23, 33:16
**needs** [1] - 5:15
**negotiations** [2] - 18:18, 23:6
**never** [2] - 20:2, 24:7
**new** [7] - 6:19, 7:25, 9:11, 9:14, 9:17, 11:4, 31:21
**NEW** [1] - 1:1
**New** [17] - 1:5, 1:15, 2:7, 4:25, 5:8, 5:25, 6:4, 6:5, 6:9, 12:18, 12:22, 12:25, 13:15, 16:25, 18:24, 19:6, 19:12
**next** [3] - 22:19, 22:21, 32:4
**nice** [1] - 35:9
**NICHOLAS** [1] - 1:11
**none** [2] - 19:20, 25:10
**Northern** [12] - 4:24, 5:25, 6:5, 6:9, 6:19, 12:18, 12:22, 12:25, 13:15, 16:25, 19:5, 19:12
**noted** [1] - 35:10
**nothing** [1] - 34:24
**nowhere** [1] - 8:9
**number** [5] - 13:11, 13:12, 25:15, 33:12, 34:4

## O

**obligation** [1] - 26:25
**obviously** [2] - 18:8, 25:7
**occur** [1] - 23:17
**occurred** [1] - 11:11
**October** [1] - 8:8
**OF** [3] - 1:1, 1:3, 1:6
**offense** [2] - 11:9, 11:11
**old** [3] - 7:3, 8:1, 12:13
**omnibus** [2] - 4:13, 24:23
**once** [5] - 22:9, 27:20, 27:23, 32:4, 33:4
**one** [13] - 2:21, 5:19, 13:12, 21:8, 21:19, 22:2, 25:4, 25:17, 27:11, 30:11, 30:13, 31:19
**operating** [3] - 23:8, 23:9, 33:14
**opinion** [1] - 7:7
**opportunity** [3] - 18:5, 30:15, 34:17
**opposition** [2] - 4:12, 4:13
**order** [5] - 14:6, 14:7, 22:1, 24:1, 24:2
**organized** [1] - 23:13
**original** [1] - 4:12
**originally** [1] - 11:11
**outstanding** [2] - 25:6, 25:9

## P

**page** [2] - 20:18, 24:23
**pains** [1] - 6:24
**pan** [1] - 23:7
**paper** [1] - 17:5
**papers** [1] - 29:18
**part** [5] - 5:15, 6:12, 6:16, 26:23, 28:13
**particularly** [1] - 27:23
**parties** [2] - 33:22, 34:9
**parts** [1] - 5:19
**party** [1] - 10:8
**PAUL** [1] - 1:21
**Paul** [1] - 2:24
**pending** [1] - 6:7
**Penza** [1] - 2:17
**PENZA** [35] - 1:15, 2:17, 3:18, 4:3, 8:6, 11:14, 11:21, 12:4, 12:14, 12:20, 17:22, 18:8, 19:8, 19:19, 19:24, 23:1, 23:20, 24:21, 25:4, 25:6, 27:10, 27:23, 28:2, 28:6, 29:10, 29:17, 29:21, 29:23, 30:11, 31:2, 31:16, 32:13, 33:17, 34:7, 34:21
**people** [2] - 18:3, 21:22
**perfect** [1] - 14:12
**perhaps** [1] - 34:19
**peril** [1] - 19:12
**personally** [1] - 7:16
**picking** [1] - 20:24
**place** [3] - 9:1, 23:11, 24:7
**placed** [1] - 27:19
**planned** [1] - 30:4
**play** [1] - 7:8
**playing** [2] - 7:5, 7:6
**Plaza** [2] - 1:14, 2:6
**plea** [17] - 5:25, 6:6, 6:8, 6:9, 11:24, 14:20, 14:22, 15:1, 15:6, 15:8, 15:14, 15:15, 15:20, 15:21, 16:11, 18:17
**pleaded** [1] - 18:17
**pleased** [1] - 8:11
**plenty** [1] - 23:14
**point** [12] - 7:22, 8:11, 8:18, 10:12, 11:13, 13:6, 16:23, 17:8, 20:5, 20:6, 31:19, 34:20
**pointed** [1] - 12:16
**pointing** [1] - 8:10
**pornography** [12] - 4:21, 8:19, 12:24, 13:3, 18:1, 18:10, 18:24, 19:4, 19:11, 19:15, 28:8
**position** [12] - 4:4,

5:4, 5:6, 7:12, 7:25, 9:17, 12:7, 16:24, 18:9, 19:1, 25:20, 31:9
**possession** [2] - 28:9, 28:18
**possible** [2] - 27:1, 34:17
**power** [1] - 5:23
**precedent** [3] - 13:5, 19:20, 20:4
**precluded** [1] - 26:16
**predicate** [1] - 8:14
**predicates** [1] - 19:9
**prediction** [1] - 21:20
**preexisting** [2] - 7:2, 7:3
**prejudice** [1] - 22:6
**premature** [1] - 18:2
**prepared** [3] - 17:2, 17:25, 31:20
**preparing** [3] - 26:2, 26:4, 33:16
**prepping** [1] - 25:19
**presence** [2] - 11:22, 11:23
**present** [2] - 3:14, 12:5
**presented** [1] - 25:21
**presses** [1] - 8:20
**presumptively** [1] - 25:21
**previous** [1] - 17:10
**previously** [1] - 24:5
**primarily** [1] - 30:18
**print** [1] - 22:13
**prioritize** [1] - 30:21
**priority** [1] - 31:18
**prison** [1] - 9:16
**privacy** [2] - 29:13, 30:12
**privilege** [4] - 25:16, 25:17, 25:23, 25:24
**privileged** [2] - 25:12, 25:21
**problem** [6] - 9:22, 19:22, 21:18, 21:24, 22:6, 32:8
**Procedure** [4] - 5:9, 5:20, 11:9, 11:19
**proceed** [4] - 12:19, 13:14, 13:22, 20:3
**proceeding** [3] - 6:3, 6:5, 11:8
**proceedings** [1] - 35:11
**Proceedings** [1] - 2:8
**process** [1] - 6:10
**produce** [1] - 31:7
**produced** [3] - 2:9, 24:1, 24:2
**promises** [1] - 21:5
**promptly** [1] - 6:25
**proposed** [5] - 17:19, 22:20, 33:17, 34:3
**protect** [1] - 32:20
**provide** [1] - 26:2
**public** [2] - 15:13, 15:20
**punted** [1] - 24:6
**pursuant** [2] - 24:1, 24:2
**pushing** [1] - 6:14
**put** [8] - 4:12, 4:13, 7:12, 9:18, 16:6, 26:6, 27:8, 33:8
**puts** [1] - 9:17
**putting** [1] - 29:14

### Q

**questionnaire** [4] - 18:19, 22:5, 22:11, 22:20
**questionnaires** [5] - 17:19, 18:5, 21:9, 21:10, 21:13
**questions** [5] - 18:6, 18:12, 22:8, 22:17, 22:25

### R

**racketeering** [13] - 4:15, 4:17, 4:21, 4:22, 6:20, 7:9, 13:3, 18:1, 19:15, 20:1, 20:3
**Raineri** [2] - 7:10, 24:4
**raise** [4] - 23:23, 24:11, 25:4, 31:19
**raised** [3] - 3:20, 25:25, 30:12
**RANIERE** [1] - 1:8
**Raniere** [11] - 1:20, 2:22, 2:25, 5:7, 5:25, 8:25, 13:24, 14:14, 17:1, 21:22, 28:15
**rather** [1] - 18:5
**Ravich** [1] - 3:10
**RAVICH** [1] - 2:2
**reach** [1] - 30:16
**read** [7] - 5:20, 5:21, 6:6, 10:17, 14:18, 18:6, 28:4
**reading** [4] - 15:4, 15:13, 15:20, 15:25
**ready** [9] - 5:7, 7:1, 7:23, 9:14, 20:12, 20:13, 20:14, 26:9
**really** [4] - 5:19, 6:12, 18:25, 19:9
**reason** [1] - 5:10
**receive** [1] - 30:14
**received** [4] - 8:2, 8:7, 14:15, 29:1
**record** [6] - 13:25, 14:2, 14:3, 16:22, 18:15, 28:7
**recorded** [1] - 2:8
**recovered** [1] - 29:17
**refer** [1] - 11:18
**reference** [2] - 4:8, 17:10
**referred** [1] - 29:18
**reflects** [2] - 12:2, 12:4
**regard** [1] - 26:14
**regarding** [6] - 4:14, 8:12, 12:23, 24:1, 29:24, 33:23
**regurgitate** [1] - 17:9
**related** [2] - 4:21, 25:10
**relevant** [2] - 17:11, 29:3
**remainder** [1] - 30:17
**remark** [1] - 10:17
**removed** [1] - 16:16
**Reporter** [2] - 2:5, 2:6
**representation** [1] - 16:16
**represented** [2] - 28:25, 30:5
**representing** [2] - 8:25, 17:25
**request** [2] - 5:18, 16:15
**requested** [3] - 33:18, 33:21, 34:1
**requesting** [1] - 33:12
**require** [2] - 9:11, 24:10
**required** [2] - 11:22, 11:23
**requires** [1] - 30:7
**resolution** [1] - 30:16
**resolve** [1] - 22:18
**resolved** [2] - 27:21, 27:24
**resolving** [1] - 30:21
**respectfully** [4] - 10:21, 13:4, 17:1, 34:7
**respond** [3] - 17:15, 27:7, 31:15
**responds** [1] - 22:3
**response** [2] - 25:1, 33:6
**responsibly** [2] - 9:5, 9:13
**result** [1] - 5:16
**return** [2] - 8:20, 28:9
**returned** [1] - 8:22
**returning** [2] - 26:10, 26:19
**review** [1] - 30:19
**reviewed** [7] - 15:1, 15:3, 15:12, 15:19, 16:1, 27:18, 30:6
**revised** [1] - 12:1
**RICHARD** [1] - 1:13
**RICO** [4] - 4:21, 19:9, 19:25, 20:5
**rights** [1] - 32:20
**roll** [1] - 6:18
**room** [1] - 23:14
**root** [1] - 25:23
**Rule** [15] - 4:7, 5:20, 5:21, 6:1, 6:4, 6:6, 6:10, 11:7, 11:17, 11:18, 11:22, 12:1, 12:4, 12:8, 31:8
**rule** [1] - 24:19
**Rules** [4] - 5:9, 5:19, 11:8, 11:19
**rules** [1] - 12:8
**ruling** [2] - 26:5
**rulings** [1] - 31:24
**run** [1] - 9:15
**Russell** [5] - 2:1, 3:10, 15:17, 15:19, 15:22

### S

**sacrificing** [1] - 16:1
**Salzman** [5] - 2:3, 3:3, 14:25, 15:3, 18:16
**saw** [1] - 9:3
**Scanlon** [8] - 23:24, 25:7, 25:13, 25:22, 27:24, 28:16, 28:19, 31:6
**schedule** [3] - 6:23, 7:4, 7:7
**school** [1] - 21:4
**Sean** [2] - 3:5, 15:11
**sean** [1] - 11:2
**SEAN** [1] - 1:25
**seated** [3] - 2:15, 3:16, 23:8
**second** [12] - 3:17, 4:12, 6:12, 13:9, 13:13, 14:15, 14:23, 15:3, 15:9, 15:12, 15:19, 16:12
**see** [7] - 9:13, 18:7, 29:9, 30:8, 30:16, 32:4, 33:2
**seek** [1] - 12:24
**sees** [1] - 17:3
**selection** [1] - 28:20
**sent** [2] - 5:16, 12:18
**separate** [6] - 4:24, 19:13, 29:23, 30:23, 30:24
**set** [6] - 18:2, 21:4, 31:7, 32:3, 33:15, 33:22
**Seven** [1] - 12:13
**sever** [11] - 4:20, 6:21, 6:22, 7:9, 10:7, 11:5, 13:3, 13:7, 13:16, 33:3
**several** [1] - 25:25
**severance** [6] - 4:15, 10:5, 18:10, 19:21, 22:1, 22:22
**severed** [2] - 5:16, 10:23
**severing** [1] - 10:10
**shall** [1] - 3:22
**shown** [1] - 6:25
**side** [4] - 3:10, 13:23, 22:16, 29:14
**sides** [1] - 7:15
**significant** [1] - 30:18
**sit** [1] - 23:12
**situation** [1] - 10:4
**six** [2] - 8:14, 28:20
**slightly** [1] - 18:20
**slowly** [2] - 12:3
**Smith** [1] - 2:24
**SMITH** [1] - 1:22
**solution** [1] - 10:7
**solved** [1] - 10:10
**someone** [1] - 9:5
**somewhere** [1] - 5:16
**soon** [1] - 26:25
**sorry** [5] - 19:23, 23:20, 29:25, 30:11, 33:8
**sort** [2] - 5:11, 6:14
**sought** [1] - 12:19
**soul** [1] - 6:12
**speaking** [3] - 29:24, 29:25, 30:2
**spoken** [2] - 9:2, 23:7
**squeaky** [3] - 7:11, 7:13, 7:15
**stand** [2] - 14:14, 23:20
**standing** [5] - 3:3, 3:6, 21:23, 29:10, 30:3
**standpoint** [1] - 22:5
**stands** [2] - 4:11, 20:1
**start** [2] - 20:24, 33:16
**starting** [1] - 26:8
**state** [2] - 18:14, 28:7

**statement** [3] - 12:19, 27:22, 30:22
**statements** [1] - 23:25
**STATES** [2] - 1:1, 1:3
**States** [2] - 1:14, 2:18
**status** [1] - 23:23
**STATUS** [1] - 1:6
**stayed** [1] - 17:22
**stenography** [1] - 2:8
**still** [5] - 4:23, 13:1, 27:14, 28:23, 28:24
**storage** [3] - 25:10, 29:20, 30:22
**strikes** [1] - 10:6
**stuff** [1] - 29:2
**subject** [1] - 9:25
**submission** [3] - 30:24, 31:13, 31:15
**submissions** [1] - 17:10
**submit** [1] - 23:1
**submitted** [1] - 25:13
**subsequent** [1] - 12:5
**substantive** [5] - 4:17, 4:22, 12:24, 19:4, 19:11
**succinct** [1] - 31:13
**suggest** [2] - 19:24, 34:13
**suggested** [1] - 10:7
**superseder** [1] - 31:21
**superseding** [25] - 3:17, 4:5, 4:9, 4:10, 6:18, 10:4, 11:16, 11:17, 12:6, 12:9, 13:8, 13:10, 13:13, 14:15, 14:23, 15:1, 15:4, 15:9, 15:12, 15:19, 16:12, 18:16, 26:10, 26:20, 28:10
**supposed** [1] - 6:1
**suppress** [7] - 25:9, 28:17, 29:7, 29:12, 30:3, 30:21, 31:6
**suppressed** [1] - 31:10
**surprisingly** [1] - 10:20
**systems** [1] - 8:20

**T**

**table** [2] - 23:9, 23:13
**taint** [2] - 27:18, 27:21
**talented** [1] - 32:19
**talks** [1] - 11:21
**Tanya** [1] - 2:17
**TANYA** [1] - 1:16
**Tazioli** [1] - 3:3
**TAZIOLI** [1] - 2:4
**teach** [1] - 21:4
**team** [5] - 25:16, 25:17, 25:20, 27:18, 27:21
**tend** [1] - 5:8
**tens** [2] - 28:2, 28:3
**TENY** [1] - 1:21
**Teny** [2] - 2:24, 28:14
**terms** [7] - 18:15, 18:18, 18:20, 25:12, 26:1, 26:4, 29:10
**terrific** [1] - 20:25
**THE** [110] - 2:15, 2:20, 3:1, 3:4, 3:8, 3:11, 3:15, 3:19, 3:24, 5:11, 5:14, 7:13, 7:19, 7:21, 8:2, 8:7, 9:19, 9:24, 10:17, 10:20, 10:22, 10:24, 11:1, 11:6, 11:20, 12:3, 12:12, 12:15, 13:7, 14:2, 14:6, 14:9, 14:13, 14:17, 14:18, 14:19, 14:20, 14:21, 14:22, 15:3, 15:6, 15:8, 15:15, 15:21, 16:3, 16:5, 16:9, 16:11, 16:15, 16:18, 16:19, 16:21, 16:22, 17:4, 17:7, 17:14, 18:3, 19:2, 19:17, 19:22, 20:6, 20:10, 20:16, 20:19, 20:22, 21:1, 21:3, 21:7, 21:15, 21:17, 22:7, 23:3, 24:14, 24:17, 24:19, 24:22, 25:2, 25:5, 27:8, 27:16, 28:1, 28:4, 29:9, 29:16, 29:20, 29:22, 30:10, 30:20, 31:1, 31:4, 31:14, 31:17, 31:25, 32:3, 32:7, 32:11, 32:14, 32:23, 32:25, 33:4, 33:7, 33:10, 34:12, 34:16, 34:22, 34:25, 35:2, 35:4, 35:6, 35:8
**themselves** [1] - 8:11
**they've** [5] - 10:13, 21:25, 26:14, 28:18, 31:9
**thousands** [3] - 28:2, 28:3
**three** [8] - 5:22, 6:18, 9:9, 9:16, 9:17, 18:18, 22:3, 32:19
**Three** [1] - 16:24
**Thursday** [1] - 34:12
**today** [7] - 6:13, 6:18, 17:19, 17:23, 18:2, 30:5, 33:5
**today's** [1] - 6:2
**together** [1] - 9:15
**tortured** [1] - 13:19
**TRANSCRIPT** [1] - 1:6
**transcript** [1] - 2:8
**Transcript** [1] - 2:9
**transcripts** [1] - 34:4
**transferred** [1] - 19:5
**translations** [1] - 34:4
**trial** [30] - 4:24, 5:1, 6:14, 6:23, 6:25, 7:2, 7:6, 7:10, 7:17, 7:19, 9:3, 17:24, 17:25, 20:19, 20:23, 21:13, 21:14, 23:9, 23:22, 24:9, 25:19, 26:2, 26:6, 26:20, 26:24, 27:8, 31:11, 33:14, 33:20, 34:1
**trials** [1] - 7:15
**try** [12] - 6:24, 7:23, 7:25, 9:14, 9:17, 10:12, 10:13, 19:11, 26:9, 33:15, 34:13
**trying** [2] - 11:12, 29:5
**turn** [1] - 21:17
**turnaround** [1] - 32:5
**turned** [1] - 29:1
**TV** [1] - 24:6
**two** [5] - 5:19, 9:6, 21:22, 22:19, 32:18

**U**

**U.S** [4] - 1:4, 1:17, 12:21
**U.S.D.J** [1] - 1:11
**unclear** [1] - 13:1
**under** [4] - 11:7, 11:8, 31:8, 33:14
**understandable** [1] - 8:18
**understood** [1] - 18:22
**undertaken** [1] - 11:8
**unit** [2] - 29:20, 30:22
**UNITED** [2] - 1:1, 1:3
**United** [2] - 1:14, 2:18
**unless** [1] - 5:10
**unsure** [1] - 4:18
**up** [10] - 11:3, 12:18, 14:14, 17:17, 21:5, 21:21, 25:25, 26:22, 27:20

**V**

**various** [1] - 29:18
**venue** [7] - 4:24, 6:7, 12:23, 13:2, 16:1, 19:10, 22:23
**venued** [1] - 20:3
**versed** [1] - 28:12
**view** [3] - 11:13, 12:2, 12:5

**W**

**wait** [3] - 7:13, 26:13, 33:2
**waive** [6] - 4:23, 12:23, 13:2, 15:4, 15:25, 19:10
**waives** [2] - 15:13, 15:20
**watch** [2] - 23:14, 23:15
**weeds** [1] - 5:9
**week** [6] - 18:17, 22:2, 22:8, 23:2, 31:15, 33:25
**weekend** [1] - 9:25
**weeks** [6] - 6:18, 9:16, 9:17, 22:14, 22:19, 28:20
**weeks'** [1] - 9:9
**wheel** [2] - 7:11, 7:13
**wheels** [1] - 7:15
**whole** [1] - 20:5
**wish** [5] - 14:20, 15:6, 16:17, 17:7, 17:12
**witness** [4] - 33:13, 33:23, 34:2, 34:11
**word** [1] - 12:1
**words** [1] - 31:12

**Y**

**year** [3] - 6:16, 26:24, 29:2
**years** [1] - 9:16
**YORK** [1] - 1:1
**York** [17] - 1:5, 1:15, 2:7, 4:25, 5:8, 5:25, 6:4, 6:5, 6:9, 12:18, 12:22, 12:25, 13:15, 16:25, 18:24, 19:6, 19:12