

U.S. Department of Justice

United States Attorney
Eastern District of New York

JMS:TH
F. #2017R01840

271 Cadman Plaza East
Brooklyn, New York 11201

September 29, 2021

<u>By ECF</u>

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Kathy Russell</u>
     <u>Criminal Docket No. 18-204 (S-4) (NGG) (VMS)</u>

Dear Judge Garaufis:

   The government respectfully submits this letter in advance of the defendant Kathy Russell's sentencing, which is scheduled for October 6, 2021 at 11:00 a.m.

   On April 19, 2019, the defendant pleaded guilty to a single count of a superseding information, which charged that between February 2014 and March 2015, she committed visa fraud in violation of 18 U.S.C. § 1546(a). The government respectfully requests that the Court impose a sentence within the applicable U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 6 to 12 months' imprisonment.

 I. <u>Background and Criminal Conduct</u>

   The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR") prepared by the United States Probation Department on February 28, 2020 and the Addendum to the PSR prepared on October 16, 2020.[1]

---

[1] The Court is familiar with the factual background and offense conduct in this case, having presided over the six-week trial of Kathy Russell's co-defendant Keith Raniere. The following factual summary is intended to provide an overview sufficient to situate the government's arguments with respect to Russell's sentencing.

As set forth in the PSR, the defendant participated in unlawful efforts to secure immigration status for non-citizens so that they could enter or remain in the United States and work in one or more Nxivm-affiliated organizations. PSR ¶¶ 18-36.

In 2014, the defendant presented false documents to the United States Consulate in Mexico in connection with a NAFTA professional (TN) visa on behalf of Loreta Garza, a citizen of Mexico.[2] PSR ¶ 25. The defendant signed a three-page letter addressed to the United States consulate that falsely stated that Garza was a management consultant for Nxivm, and that Garza had been hired to "observe, research, and analyze current marketing and sales activities," "assess existing and potential market opportunities and interpret strategic research and competitive intelligence" and "advise on direction, strategies, and promotional activities to drive product, customer growth, and quality," among other responsibilities. The letter further stated that Garza's "education and extensive experience in the development of marketing strategies for the Mexican market, in addition to her familiarity with our professional development programs, makes her an ideal candidate for this temporary consulting position." These statements were false when submitted. As the defendant was aware, Garza was not employed as a management consultant but managed a separate Nxivm entity, Rainbow Cultural Garden, LLC ("RCG"), which employed caretakers fluent in other languages to care for children. Garza used the amounts paid to her to pay RCG employees, who did not report their income, and RCG did not report the payroll for state employment taxes. Garza was subsequently recruited into the "first line" of DOS, a secret organization led by Keith Raniere.

As set forth in the PSR and as reflected in trial testimony, the defendant also participated in other criminal schemes at Keith Raniere's direction:

- In 2004, the defendant met Daniela, then nineteen years old, at the Canadian border and provided Daniela a false sheriff's identification card bearing the name "Lisa Chenoa," and drove Daniela across the border into the United States and back to the Nxivm community in Clifton Park, New York. Later, the defendant reminded Daniela of her assistance in transporting Daniela across the United States border while Raniere invited Daniela to engage in sexual activity with the defendant. PSR ¶ 20. Daniela testified at trial that she felt that she "owed" the defendant. Trial Transcript ("Tr.") at 2419.

---

[2]  A TN visa is a visa category enabling citizens of Canada and Mexico to enter the United States to engage in professional business activities on a temporary basis. In order to obtain a TN visa, a prospective employer must provide a letter of employment detailing the professional capacity in which the individual will work in the United States and their anticipated compensation. Lawyers, accountants, engineers, scientists and management consultants, among others, are the types of professionals eligible to seek admission into the United States as TN nonimmigrants. See 8 C.F.R. § 214.6.

- The defendant participated in a scheme to install keylogging software on the computer of James Loperfido, an accountant who had worked for Joseph O'Hara, an attorney who had previously done work for Nxivm, in order to monitor Loperfido's computer activity. The defendant invited Loperfido to Nxivm's offices and distracted him as Daniela installed the keylogging software on his computer. PSR ¶ 50.

- In approximately 2015, the defendant participated in a scheme in which Adrian sought and obtained an L1 visa application based on the claim that he was employed by Sagitta LLC. Sagitta LLC, a company based in Clifton Park, New York, purported to be an affiliate of Adrian's father's rock-drilling company in Mexico, but in fact existed solely as a vehicle for obtaining Adrian's visa. Id. Adrian in fact worked in film production for Moving Pixels, Inc., a company owned by Clare Bronfman, and paid rent to Nancy Salzman. PSR ¶ 31. As part of the scheme, the defendant, Bronfman, and Nancy Salzman arranged for Adrian to be compensated through Sagitta LLC for work that he actually performed for Moving Pixels, Inc. Id. Adrian was provided with false Sagitta LLC invoices and paystubs as part of the scheme. Id.

II. Applicable Law

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted); see also United States v. Booker, 125 S. Ct. 738, 743 (2005) (although the Guidelines are advisory, district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence).

Significantly, however, the Court "may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50. Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

Title 18, United States Code, Section 3661 directs the Court to consider all relevant conduct and information about the defendant when sentencing him or her: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." As a result, "the court is

virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).

### III.  Sentencing Guidelines

The government agrees with the Probation Department's calculation of the Guidelines, which is also set forth in the plea agreement, as follows:

| | | |
|---|---|---:|
| | Base Offense Level (§2L2.1(a)) | 11 |
| Less: | Offense Committed Other Than For Profit (§ 2L2.1(b)(1)) | -3 |
| Plus: | Visa Used to Facilitate Commission of a Felony Offense (§ 2L2.1(b)(3)) | +4 |
| Less: | Acceptance of Responsibility | -2 |
| Total: | | 10 |

Based on a total offense level of 10 and a criminal history category of I, the applicable Guidelines range is 6 to 12 months' imprisonment.

### IV.  Argument

The government respectfully submits that a sentence within applicable Guidelines range of 6 to 12 months' imprisonment is necessary to meet the goals of 18 U.S.C. § 3553(a). The offense conduct reflects that for years, the defendant facilitated Keith Raniere's criminal conduct and furthered his schemes. She was willing to undertake nearly any task assigned to her, from transporting a teenager across the Canadian border with a false identification card to defrauding United States immigration authorities by signing and presenting false documents in support of a visa application.

The defendant was not the most culpable member of the criminal enterprise charged in this case, but her willingness to obey Raniere's directives without question caused real and significant harm to others.[3] For example, in approximately August 2011, the defendant leased 120 Victory Way, a property in Clifton Park, New York, under the assumed name Kathleen O'Sullivan. Tr. at 3331-32. The defendant told the landlord a fictitious

---

[3] The defendant was the last of Raniere's co-defendants to plead guilty, and the PSR does not specifically indicate whether the defendant's support and loyalty to Raniere and Nxivm continues. As the need for specific and general deterrence is of particular concern in this case, the government respectfully submits that the defendant's efforts at rehabilitation and expressions of remorse, if any, warrant significant consideration by the Court at the sentencing hearing.

4

story—that "she had received a lot of money after her husband died" and would pay the rent upfront in cash and in full. Id. For the next seven years, until September 2018, the defendant leased the property at Raniere's direction, and Raniere used the property to house Camila, with whom he had a secret and abusive sexual relationship. Although the defendant may have been unaware of the relationship, her actions—and blind loyalty to Raniere—facilitated the abuse of Raniere's victims.

The government respectfully submits that the nature and circumstances of the offense, as well as the need for deterrence, weighs in favor of a sentence of imprisonment within the applicable Guidelines range.

V.    Conclusion

For the reasons above, the government respectfully submits that a sentence within the applicable Guidelines range is sufficient, but no greater than necessary, to achieve the goals of sentencing in this case.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:   /s/ Tanya Hajjar
Tanya Hajjar
Assistant U.S. Attorney
(718) 254-7000

cc:    Counsel of Record (by ECF)